# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

JANE DOE,

              Plaintiff,

v.

GEORGIA DEPARTMENT OF CORRECTIONS, et al.,

              Defendants.

Case No. 1:23-cv-05578-MLB

# BRIEF OF AMICUS CURIAE ACLU OF GEORGIA IN SUPPORT OF PLAINTIFF'S <u>MOTION FOR PRELIMINARY INJUNCTION</u>

## AMICUS CURIAE'S IDENTITY AND INTERESTS

Founded in 1963, the American Civil Liberties Union ("ACLU") of Georgia is a non-profit organization that works to enhance and defend the civil liberties and rights of all Georgians through legal action, legislative and community advocacy, and civic education and engagement. In furtherance of its mission, the ACLU of Georgia regularly represents parties seeking to vindicate their civil and constitutional rights in state and federal courts.[1]

Part of the ACLU of Georgia's commitment to upholding civil rights and civil liberties includes a longstanding interest in safeguarding the constitutional rights of people who are incarcerated and of LGBTQ+ individuals. These interests intersect where, as here, a transgender individual in state custody is denied adequate medical treatment and protection in violation of their Eighth Amendment and other rights. The ACLU of Georgia, therefore, submits this amicus brief to underscore the importance of Jane Doe's claims and to place Ms. Doe's treatment in the context of widespread failings in Georgia prisons.

---

[1] *See, e.g.*, *Koe et al v. Noggle et al*, 1:23-cv-02904 (N.D. Ga.) (challenge to gender-affirming treatment ban); *Cobb v. Georgia Department of Community Supervision*, 1:19-cv-03285 (N.D. Ga.) (class action on behalf of deaf and hard of hearing people on probation or parole); *Harris v. Georgia Department of Corrections*, 5:18-cv-00365 (M.D. Ga.) (class action on behalf of deaf and hard of hearing people in Georgia prisons); *Thomas v. Georgia Department of Community Health*, 1:21-cv-02558 (N.D. Ga.) (challenge to Medicaid's gender-affirming surgery ban).

# **INTRODUCTION**

It has been almost sixty years since the United States Supreme Court ruled that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (cleaned up). It has been almost thirty years since the Supreme Court held that under the Eighth Amendment "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Despite these clear mandates, individuals in Georgia's custody continue to suffer extensive abuse and maltreatment. A recent investigative report in The Atlanta Journal-Constitution painted a gruesome picture of the current state of Georgia prisons:

> Massive understaffing plagues facilities that house some of the state's most violent prisoners, and the result can be prisons awash in blood. Gangs are free to carry out increasingly brazen attacks, with beatings and stabbings now routine. Prisoners driven to suicide are left unwatched and able to accomplish their desperate acts.[2]

---

[2] Carrie Teegardin and Danny Robbins, *Violence, suicides mount in Georgia's woefully understaffed prisons*, The Atlanta Journal-Constitution (Nov. 16, 2023), https://www.ajc.com/news/investigations/prisons-understaffed/.

Jane Doe's experience is a grievous case in point. In her more than thirty years of incarceration in the Georgia Department of Corrections ("GDC"), Ms. Doe, a transgender woman suffering from gender dysphoria,[3] has been repeatedly raped;[4] assaulted;[5] denied medically necessary hormone treatments, gender affirming surgery, and gender expression, resulting in repeated attempts at self-castration and self-harm;[6] and improperly confined to unsafe segregation akin to solitary confinement,[7] resulting in abuse and extreme distress,[8] all in violation of her Eighth Amendment rights. This

---

[3] Affidavit of Jane Doe, filed at Doc. #4-2 at Exhibit Pages 8–54 ("Doe Affidavit'), at ¶¶ 1, 15.

[4] Doe Affidavit, at ¶¶ 86, 90, 92.

[5] Doe Affidavit at ¶ 92.

[6] Expert Declaration of Isabel S. Lowell, M.D., M.B.A., filed at Doc. #4-2 at Exhibit Pages 56–78 ("Lowell Declaration"), at ¶ 56; Expert Declaration Jeehea Sonya Haw, M.D., filed at Doc. #4-2 at Exhibit Pages 83–100 ("Haw Declaration") at ¶¶ 33–41; Doe Affidavit at ¶¶ 13, 38, 61.

Gender expression in this context "refers to people having hairstyles, grooming products, clothing, names, and pronouns associated with their gender identity in their culture and/or community." Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, 23 Int'l J. of Transgender Health S1, S107 (2022) ("WPATH Standards").

[7] Doe Affidavit at ¶¶ 86–107.

[8] Doe Affidavit at ¶¶ 86–118.

mistreatment is endemic to the incarceration of transgender individuals in Georgia and throughout the country.[9]

Granting Ms. Doe's requested injunctive relief is necessary not only to prevent the irreparable and ongoing harm being inflicted on her each day but to affirm the longstanding principle, still unrealized in Georgia's prisons, that a "prisoner does not surrender [her] constitutional rights at the prison gates." *Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019).

## **DISCUSSION**

According to State Senator Josh McLaurin, the Georgia prison system is "very broken"[10] and "[t]he level of human rights abuses is intolerable."[11] T. Wright Barksdale, the district attorney for Ocmulgee Judicial Circuit, has echoed Senator McLaurin's concerns, describing Georgia's prisons as "the wild,

---

[9] Movement Advancement Project and Center for American Progress. May 2016. *Unjust: How the Broken Criminal Justice System Fails Transgender People*, at 3–12. Available at https://www.lgbtmap.org/policy-and-issue-analysis/criminal-justice-trans (last accessed Dec. 31, 2023) ("*Unjust*").

[10] Carrie Teegardin, *Georgia prison conditions at crisis level, protesters say*, The Atlanta Journal-Constitution (Oct. 3, 2023), https://www.ajc.com/news/georgia-prison-conditions-at-crisis-level-protesters-say/NPLFPLXN5JCVBHMJLKFM76DOOE/#.

[11] Dave Williams, *Witnesses Slam Georgia Prison System at Legislative Hearing*, Ga. Pub. Broad. (Sept. 24, 2021), https://www.gpb.org/news/2021/09/24/witnesses-slam-georgia-prison-system-at-legislative-hearing.

wild West" with gangs, "extreme violence," and "sexual assaults" throughout its facilities.[12]

Ms. Doe, like many others, is a victim of this very broken system.

**I.     Ms. Doe and other incarcerated persons in Georgia have been denied constitutionally required medical care.**

**A. Georgia prisons routinely fail to provide constitutionally adequate medical care.**

The deliberate indifference to Ms. Doe's serious medical needs is consistent with the treatment of incarcerated persons, both transgender and not, throughout Georgia's prison system.

1. GDC regularly fails to provide necessary medical care to the incarcerated people in its custody.

Countless people in the GDC system are regularly deprived of medical care and otherwise exposed to harm. In 2018, Dr. Timothy Young, a former physician at Augusta State Medical Prison, called the prison healthcare "disgustingly mismanaged."[13] And it is. In 2014, for example, an Atlanta Journal-Constitution investigation "found that one in every five physicians working in Georgia's public prisons was hired despite medical board orders

---

[12] Teegardin and Robbins, *supra* note 2.

[13] Danny Robbins, *Settlements in prison doctor lawsuits top $3 million could go higher*, The Atlanta Journal-Constitution (Dec. 28, 2018), https://www.ajc.com/news/state--regional-govt--politics/settlements-prison-doctor-lawsuits-top-million-could-higher/gTGdogyPngTMIKraPuJPSM/.

citing them for various forms of misconduct."[14] From 2009 to 2019, at least twelve incarcerated persons in Georgia jails or prisons died from diabetic ketoacidosis, "a condition that is fatal only when diabetes is left untreated."[15] In at least seven of these cases, officials failed to or refused to provide medicine or treatment.[16]

Other cases of deliberate indifference abound. GDC has settled cases where doctors and other health officials: (1) failed to recognize signs of a pulmonary embolism, causing a vegetative state in an incarcerated person;[17] (2) failed to properly care for a minor cut of an incarcerated person, resulting in amputation of a leg;[18] (3) cut an incarcerated person off from his anti-anxiety

---

[14] Danny Robbins, *Georgia hires prison doctors with troubled pasts*, The Atlanta Journal-Constitution (Dec. 13, 2014), https://www.ajc.com/news/state--regional-govt--politics/georgia-hires-prison-doctors-with-troubled-pasts/ihz49tyMbWg9dKLu1vt2CI/.

[15] Danny Robbins, *Twelve who died from diabetes in jail or prison*, The Atlanta Journal-Constitution (Apr. 12, 2019), https://www.ajc.com/news/crime--law/twelve-who-died/Qd6dqtoOx51Uzj7HYUIGuL/#.

[16] *See id.*

[17] Danny Robbins, *State pays $1.5 million to parents of ex-inmate*, The Atlanta Journal-Constitution (Aug. 31, 2018), https://www.ajc.com/news/state--regional-govt--politics/state-pays-million-parents-inmate/k83A4NvDOQJq2JIy1G6WZP/.

[18] Danny Robbins, *Georgia to pay $550,000 to convicted murderer because of amputation*, The Atlanta-Journal Constitution (Sept. 25, 2017), https://www.ajc.com/news/state--regional/georgia-pay-550-000-convicted-murderer-because-amputation/B2QOf4JPKTNbvHXbmU0GEJ/.

drug, causing a seizure.[19] A 2015 report by Augusta University found that at least three female incarcerated persons had died from improper medical treatment.[20] And, at a 2021 state senate hearing, a nonprofit worker testified that a woman, after being "repeatedly denied help by prison staff," chose to use a pair of nail clippers to remove her own stitches following childbirth.[21]

Unfortunately, the trends are getting worse, not better. When, as a cost-cutting measure, Wellpath took over responsibility for the already deficient health services in Georgia prisons in 2021, Madie LaMarre, who oversaw health care at Georgia prisons for more than two decades, called the idea a "recipe for disaster" and opined that "[w]hen the budget is already low and you introduce a profit motive, you introduce the possibility of denied needed health care."[22] Consistent with Ms. LaMarre's prediction, a nurse practitioner with

---

[19] Robbins, *supra* note 13.

[20] Danny Robbins, *Report rebukes prison doctor, says female inmates get lesser care*, The Atlanta Journal-Constitution, (Dec. 30, 2015), https://www.ajc.com/news/public-affairs/report-rebukes-prison-doctor-says-female-inmates-get-lesser-care/Y0FJzG1r73JKm9JON8rCFK/.

[21] Joshua Sharpe, *Witnesses describe inhumane conditions in Georgia prisons, call for change*, The Atlanta Journal-Constitution (Sept. 23, 2021), https://www.ajc.com/news/crime/witnesses-detail-georgia-prisons-conditions-as-feds-begin-probe/H6GSG4XK6ZGFZM2NBYSYXNUW5I/.

[22] Joshua Sharpe, *Georgia prison workers told of plan to privatize health care; hundreds of jobs in limbo*, The Atlanta Journal-Constitution (Dec. 17, 2020), https://www.ajc.com/news/crime/georgia-prison-workers-told-of-plan-to-privatize-health-care-hundreds-of-jobs-in-limbo/DGGQ5345EJCNBOBJPXPG32HXJQ/.

GDC estimated that, following Wellpath's takeover, "his approved treatment referrals drop[ped] from 90 percent to around 30 percent."[23] In the denials, Wellpath would include directions for what the nurse practitioner deemed to be "an alternative, likely less effective, treatment."[24] These dangerous cost-cutting measures are typical of private correctional health contractors.[25]

Given GDC's history of appalling healthcare and its move to outsourcing care, it is unsurprising that Ms. Doe has been denied the treatment she needs.

      2.   <u>GDC has a long history of failing to adequately treat transgender people in its custody.</u>

For years, GDC maintained what was known as a "freeze-frame" policy, under which "transgender inmates could not start or expand treatment in prison but could be maintained on medication they were using when they entered the system."[26]

---

[23] C. Dreams, *Georgia Privatizes Prison Medical Care—With Contractor's Goal to Cut Costs*, Filter Magazine (Nov. 7, 2022), https://filtermag.org/wellpath-private-contractor-prisons/.

[24] *Id.*

[25] *See, e.g.*, Micaela Gelman, *Mismanaged Care: Exploring the Cost and Benefits of Private vs. Public Healthcare in Correctional Facilities*, 95 N.Y.U. L. Rev. 1387, https://www.nyulawreview.org/wp-content/uploads/2020/11/NYULawReview-Volume-95-Issue-5-Gelman.pdf.

[26] Deborah Sontag, *Georgia Says It Will Allow Hormones for Transgender Inmates*, N.Y. Times (Apr. 9, 2015), https://www.nytimes.com/2015/04/10/us/georgia-says-it-will-allow-hormones-for-transgender-inmate.html.

In 2015, following years of neglect in custody, Ashley Diamond, a transgender woman with gender dysphoria, filed a lawsuit against GDC officials alleging that, "officials in four different [Georgia] prisons repeatedly violated her constitutional rights by failing to provide her with medical treatment for her gender dysphoria and by failing to protect her from sexual assaults." *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1353 (M.D. Ga. 2015). Ms. Diamond alleged that she was denied hormone therapy and female gender expression and was otherwise exposed to assaults, and that, as a result of these violations, "on many different occasions she attempted suicide, attempted to castrate herself, was raped, and was otherwise sexually assaulted by inmates at the maximum security prisons in which she was housed." *Id.* at 1353, 1372–73. Ms. Diamond's lawsuit led to the reversal of the freeze-frame policy.[27]

In 2016, ostensibly prompted by Ms. Diamond's case, GDC became the target of the first United States Department of Justice ("DOJ") investigation into the treatment of gay and transgender people in custody.[28] Circumstances, unfortunately, have not improved. In the ensuing years, GDC has continued to delay or deny gender-affirming care to transgender individuals in its custody

---

[27] *Id.*

[28] Elisha Fieldstadt, *$2.2 million settlement for family of transgender woman who dies in Georgia men's prison*, NBC News (Dec. 7, 2021), https://www.nbcnews.com/news/us-news/22-million-settlement-family-transgender-woman-died-georgia-mens-priso-rcna7867.

and has continued to put those individuals in dangerous and torturous circumstances. Transgender individuals held by GDC have, like Ms. Doe, continued to suffer mal- and mistreatment, and have attempted self-harm after being denied medically necessary care.[29] For example, on New Year's Eve of 2016, Robbin Amanda Bayse, a transgender woman in the custody of GDC, attempted to castrate herself after being denied the ability to express her gender.[30] On December 4, 2017, Jenna Mitchell, a transgender woman in GDC custody, hung herself while in solitary confinement at Valdosta State Prison.[31] Ms. Mitchell, like Ms. Doe, had been identified as a candidate for gender-affirming surgery but had not received the medically necessary operation.[32] The lawsuit arising from GDC's failure to prevent Ms. Mitchell's suicide settled for $2.2 million.[33] Aries Hinson, a transgender woman, waited two years for a surgery evaluation, and has been waiting approximately six months just for the results of her evaluation.[34] And, despite being approved as a candidate for

---

[29] Brief of Amici Curiae Civil Rights and Legal Services Organizations on behalf of Plaintiff-Appellee Reiyn Keohane, at 18–25 (Jan. 9, 2019), *Keohane v. Fl. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1270, 1274 (11th Cir. 2020).

[30] *Id.* at 20–21.

[31] Fieldstadt, *supra* note 28.

[32] *Id.*

[33] *Id.*

[34] Declaration of Aries Hinson, filed at Doc. #4-4 at Exhibit Pages 217–235, at ¶¶ 50–52, 55–56.

gender-affirming surgery, Ronnie Fuller, a transgender man, has been waiting more than a year for approval for a surgical evaluation.[35]

Beyond the constant denial of necessary medical care, GDC has developed a "practice of . . . covering up violent sexual assaults on trans women in men's prisons by throwing the survivors into solitary."[36] For example, C. Dreams, a transgender woman and former incarcerated person in Georgia prisons who now writes for Filter Magazine,[37] was placed in solitary isolation after reporting a physical and sexual assault.[38] Haiti Zoe'elle Hayes-Turner, another transgender woman, was similarly placed in segregation after being attacked.[39] This policy, which forces transgender incarcerated persons to choose between their safety and mental health, "can cause severe psychological harm and gross disturbances of functioning" to people it targets.[40]

---

[35] Declaration of Ronnie Fuller, filed at Doc. #4-4 at Exhibit Pages 236–246, at ¶¶ 11, 12, 15, 17.

[36] C. Dreams, *Georgia Prisons Are in Crisis—and Punishing Trans Women for It*, Filter Magazine (Mar. 28, 2022), https://filtermag.org/trans-prisoners-georgia-sexual-assault/.

[37] Two articles from Filter Magazine were recently cited in a published Fifth Circuit opinion. *See R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182, 191–92, 193 (5th Cir. 2023).

[38] Dreams, *supra* note 36.

[39] *Id.*

[40] WPATH Standards, *supra* note 6, at 23 Int'l J. of Transgender Health at S108.

### B. The defendants' failure to provide medically necessary care to Ms. Doe is a violation of the Eighth Amendment

"Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment." *Johnson v. Lewis*, 83 F.4th 1319, 1327 (11th Cir. 2023). The United States Department of Justice has recognized that the constitutionally required duty to provide medical care includes "the treatment of gender dysphoria." *Diamond v. Ward*, No. 5:20-cv-453, at Doc. 65 at 1 (citing *Kothmann v. Rosario*, 558 F. App'x 907, 912 (11th Cir. 2014)).

As noted in Ms. Doe's brief, there can be no serious dispute that gender dysphoria is a serious medical need. *See* (Doc. #2-1 at 14–15) (collecting cases); *see also Hayes v. Houser*, No. 4:22-cv-1939, 2023 WL 5655534, at *8 & n.66 (M.D. Pa. Aug. 31, 2023) (collecting cases). Accordingly, the denial of a medically necessary gender-affirming surgery is deliberate indifference when a current treatment plan for gender dysphoria is obviously ineffective. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 792–94 (9th Cir. 2019). And, the denial of hormone therapy or social transitioning may rise to the level of deliberate indifference when the treatments are medically necessary and it is known that the denial would threaten a "serious risk of self-harm." *See generally Keohane v. Fl. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1270, 1274 (11th Cir. 2020); *see also Kothmann v. Rosario*, 558 F. App'x 907, 912 (11th Cir. 2014). A defendant may also be deliberately indifferent if he has "subjective knowledge of the risks that

extended periods of solitary confinement may have on an individual's mental health," he observed a plaintiff's deterioration in solitary confinement, and he acted with more than gross negligence. *See Hutchinson v. Cunningham*, No. 2:17-cv-185, 2018 WL 1474906, at *12 (M.D. Ala. Jan. 23, 2018).

In this case, various GDC doctors recommended that Ms. Doe receive or be evaluated for gender-affirming surgery and that she be allowed to express her gender.[41] The defendants necessarily know of these recommendations and that the failure to provide them was harming Ms. Doe, as evidenced by her repeated attempts at self-harm.[42] The defendants further know that Ms. Doe benefitted from her previous hormone treatment of biweekly 10mg of transdermal estradiol, and daily 200mg of spironolactone, and that lower dosages cause her extreme distress.[43] And, the defendants know that Ms. Doe is suffering from numerous medical problems, both physical and psychological, arising from her placement in solitary confinement.[44] Finally, the defendants are necessarily aware of the myriad of expert opinions in this case stating that, to prevent serious harm, Ms. Doe must be given appropriate hormonal

---

[41] Doe Affidavit at ¶¶ 26–27, 68–70, 73–74.

[42] Doe Affidavit at ¶¶ 28, 47–48, 59, 61–68.

[43] Doe Affidavit at ¶¶ 19, 24, 36, 38, 44, 47–48, 80–85.

[44] Doe Affidavit at ¶¶ 109–110.

treatment, be evaluated for gender-affirming surgery, be allowed to express her gender identity, and be moved to a women's facility.[45]

Like in so many instances throughout GDC, the defendants have acted, and continue to act, with deliberate indifference to Ms. Doe's serious medical needs. They have failed to abide by the recommendations for surgery (or surgery evaluation) and gender expression, have failed to attempt to remedy the psychological effects of Ms. Doe's solitary confinement, and have failed to return Ms. Doe's hormone dosages to their previous levels, all as Ms. Doe's condition continues to deteriorate to the point of repeated attempts at suicide and self-castration.[46] *See H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) ("[T]he failure to provide diagnostic care and medical treatment known to be necessary [is] deliberate indifference.").

---

[45] In seeking injunctive relief, "the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction." *Farmer*, 511 U.S. at 846.

[46] It is also a violation of Ms. Doe's rights under Title II of the Americans with Disabilities Act and the Rehabilitation Act.

## II.   Incarcerated persons in Georgia prisons, particularly transgender individuals, are subject to sexual violence and other assaults.

### A. Georgia prison officials routinely fail to protect Georgia incarcerated persons.

As with the medical failures discussed above, the defendants' failure to offer constitutionally required protection to Ms. Doe is not an anomaly in the Georgia prison system. To the contrary, Georgia prisoners suffer harm at alarming rates.

The incidents that have occurred in recent years alone are egregious and staggering. An incarcerated person suffering from gender dysphoria was stabbed to death after being placed in an inadequately staffed dorm with "known gang members who were hostile to LGBTQ inmates."[47] Another incarcerated person was murdered when he was attacked by "a flood of people" with "no guards anywhere to be seen."[48] A third incarcerated person was killed after being placed in a holding cell with a man who had "threatened to kill anyone placed in a cell with him."[49] Still another was killed by a gang while a single guard covering the dorm of 96 men, "did little more than radio for help

---

[47] Jeff Cox, *Mother sues Georgia prison officials over son's death, alleges civil rights violations and failure to protect*, WXGA News (Sept. 15, 2023), https://wgxa.tv/news/local/mother-sues-georgia-prison-officials-over-sons-death-alleges-civil-rights-violations-and-failure-to-protect.

[48] Teegardin and Robbins, *supra* note 2.

[49] *Id.*

and watch it play out."[50] These are not aberrations, but examples of the violence and neglect that is commonplace in Georgia prisons.

Phillips State Prison, where Ms. Doe is housed, is particularly dangerous. In 2022, there were more killings at Phillips than any other GDC facility.[51] But GDC has done little to stop the violence, and little to stem the role that its employees play in it. One incarcerated person at Phillips was killed as a part of an orchestrated murder with the help of prison guards who allegedly utilized a rigged lock,[52] just one example of the systemic failures within GDC's ranks. "The corruption within Georgia's prison system is so pervasive, employees of all stripes — from cooks to lieutenants — are arrested on an almost weekly basis for moving drugs, phones and other contraband."[53] Since 2018, more than 425 GDC employees have been arrested for crimes on the job, including for assault and other felonies.[54]

---

[50] *Id.*

[51] Danny Robbins and Jennifer Peebles, *Deadly gang attack set in motion by guards at Phillips State Prison*, The Atlanta-Journal Constitution (Mar. 2, 2023), https://www.ajc.com/news/investigations/deadly-gang-attack-set-in-motion-by-guards-at-phillips-state-prison/YTPE3POKPZA5PAVL4L2QAGV6ZQ/.

[52] *Id.*

[53] Danny Robbins and Carrie Teegardin, *Hundreds of GA prison employees had a lucrative side hustle: They aided prisoners' criminal schemes*, The Atlanta Journal-Constitution (Sept. 21, 2023), https://www.ajc.com/news/investigations/prisons-inside-job/.

[54] *Id.*

Between 2020 and 2022, at least 90 people were killed in Georgia's prisons.[55] In the last three years, 99 incarcerated persons died by suicide, including 43 people in 2022.[56] Deaths at Georgia prisons are only increasing. Six incarcerated persons died in Georgia state prisons in December 2023 alone.[57]

Given all of this, it is unsurprising that in 2021 the DOJ opened another investigation[58] into the conditions of confinement in Georgia prisons.[59] But until the DOJ acts or courts otherwise intervene, "prisoners in Georgia are

---

[55] Danny Robbins and Carrie Teegardin, *Death toll sets new records amid staffing crisis at Georgia prisons*, The Atlanta Journal-Constitution (Oct. 20, 2023), https://www.ajc.com/news/investigations/prisons-deaths/.

[56] *Id.*

[57] Peter Biello and Grant Blankenship, *Six people have died in Georgia state prisons in the past month. Data confirms troubling trends*, Ga. Pub. Broad. (Dec. 27, 2023), https://www.gpb.org/news/2023/12/27/six-people-have-died-in-georgia-state-prisons-in-the-past-month-data-confirms.

[58] In response to this and other inquiries, GDC has taken numerous steps to prevent the disclosure of information related to conditions at its institutions, including resisting subpoenas, blocking lawmakers from accessing the facilities, ceasing news releases of deaths of incarcerated persons, and releasing "little if any information on serious incidents in its prisons." Lois Norder, *Georgia prison system clamps down on information that could expose critical problems*, The Atlanta Journal-Constitution (Dec. 28, 2023), https://www.ajc.com/news/investigations/prisons-transparency/.

[59] Press Release Number 21-863, *Justice Department Announces Investigation into Conditions in Georgia Prisons*, Department of Justice Office of Public Affairs (Sept. 14, 2021), https://www.justice.gov/opa/pr/justice-department-announces-investigation-conditions-georgia-prisons.

forced to look out for themselves because the staff can't do much to help them."[60]

### B. The defendants have failed to protect Ms. Doe.

In addition to mandating medically necessary treatment, the Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of the inmates." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (internal quotation marks omitted). This duty "encompasses protecting prisoners from violence at the hands of other prisoners." *Id.* (cleaned up).

As it stands today, Ms. Doe is incarcerated in solitary confinement under conditions carrying a substantial risk of serious harm. In an unlocked solitary confinement cell, Ms. Doe has been robbed at knife-point and had to fight off the advances of four men who propositioned her for sex.[61] She was threatened by a man who violently assaulted the transgender woman in the next cell.[62] And, while her cell periodically has a lock, this lock can be, and has been, removed at the whim of a Sergeant Kinte, a corrections officer with a history of threatening and making derogatory remarks to Ms. Doe.[63] The lock can also

---

[60] Teegardin and Robbins, *supra* note 2.

[61] Doe Affidavit at ¶¶ 94, 96.

[62] Doe Affidavit at ¶ 96.

[63] Doe Affidavit at ¶¶ 97–100.

be removed by other incarcerated persons.[64] Other guards misgender and make transphobic remarks to Ms. Doe on a daily basis.[65]

Ms. Doe is not only at risk in her cell. She is forced to shower in a public shower with non-functioning locks, no protection from staff, and no shower curtains.[66] Every time Ms. Doe showers, she is exposed to transgender and homophobic slurs from other incarcerated persons.[67] On at least one occasion, Ms. Doe was sexually assaulted when an incarcerated person touched her breast after Ms. Doe finished her shower.[68] When Ms. Doe complained to the guards about this assault, they took no action.[69]

In sum, Ms. Doe, a transgender incarcerated person who has been targeted with harassment and assault by guards and other incarcerated persons, is confined to a cell with a padlock that can be removed by guards and incarcerated persons alike. She is overseen by prison guards who regularly make anti-transgender and derogatory remarks and one prison guard who has directly threatened her. She is forced to shower in an unsecured location where she has been previously assaulted. Despite having knowledge of these facts,

---

[64] Doe Affidavit at ¶ 93.

[65] Doe Affidavit at ¶ 87.

[66] Doe Affidavit at ¶¶ 102–03.

[67] Doe Affidavit at ¶ 102.

[68] Doe Affidavit at ¶ 103.

[69] Doe Affidavit at ¶ 103.

the defendants have done nothing. This is deliberate indifference. *Tay v. Dennison*, 457 F. Supp. 3d 657, 684 (S.D. Ill. 2020) ("Defendants also know that Plaintiff is a transgender woman and is therefore particularly vulnerable in a men's facility") (collecting cases); *see also Cameron v. Mendard*, No. 5:18-cv-204, 2019 WL 4675500, at *7 (D. Vt. Aug. 13, 2019) ("Cameron's assertions satisfy the objective prong because, as a transgender female, she is in 'an identifiable group of prisoners who are frequently singled out for violent attack by other inmates.'"). And it sadly fits into a pattern that defendants have long established and perpetuated.

## CONCLUSION

Georgia's prisons are "awash in blood"[70] and people incarcerated in them are told they must protect themselves.[71] For years, Ms. Doe has sought to protect herself using grievances and requests for health treatment. She has been denied protection at every turn. She has now sought the protection of the federal courts.

Justice Blackmun wrote that "incarceration is not an open door for unconstitutional cruelty or neglect" and that "[a]gainst that kind of penal condition, the Constitution and the federal courts, it is to be hoped, together

---

[70] Teegardin and Robbins, *supra* note 2.

[71] *Id.*

remain as an available bastion." *Rhodes v. Chapman*, 452 U.S. 337, 369 (1981) (Blackmun, J., concurring). For the sake of Ms. Doe, incarcerated people across Georgia, and prisoners throughout the country, the ACLU of Georgia hopes this too, and urges the Court to grant Ms. Doe's requested relief.

Respectfully submitted, this 8th day of January, 2024.

KHAYAT LAW FIRM

*/s/ Brian D. Spielman*
Robert C. Khayat, Jr.
Georgia Bar No. 416981
Brian D. Spielman
Georgia Bar No. 596026

KHAYAT LAW FIRM
75 14th Street, N.E.
Suite 2750
Atlanta, GA 30309
Telephone: (404) 978-2750
Facsimile: (404) 978-2901
RKhayat@khayatlawfirm.com
BSpielman@khayatlawfirm.com

*Counsel for ACLU of Georgia*

## <u>LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Century Schoolbook 13 pt. font.


<u>*/s/ Brian D. Spielman*</u>
Brian D. Spielman

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing document was electronically filed this day with the Clerk of the Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

This 8th day of January, 2024.

<u>*/s/ Brian D. Spielman*</u>
Brian D. Spielman