IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Jane Doe,<br><br>                 Plaintiff,<br>   v.<br><br>Georgia Department<br>of Corrections, *et al.*,<br><br>                Defendants. | Civil Action No. 1:23-cv-5578-MLB |

**DECLARATION OF AHMED HOLT**

1. I am Ahmed Holt, Assistant Commissioner of the Facilities Division at the Georgia Department of Corrections (GDC).

2. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, I would competently testify to them.

3. As the Assistant Commissioner of Facilities, I am responsible for the overall supervision of facility operations, which includes management of prison staff and oversight of security and custody of approximately 50,000 inmates housed across 34 state prisons, 12 residential substance abuse treatment facilities, 12 transitional centers, 7 probation detention centers, 4 private prisons and 21 county prisons.

4. Each day, I am apprised of significant incidents and major security threats at facilities across the state.

5. I have been with the Georgia Department of Corrections for 23 years. I served as Warden at Central State Prison from 2012 to 2014. I served as Warden of Phillips State Prison from 2014 to 2017. I served as Assistant Regional Director in the North Region from 2017 to 2018, and Director of Field Operations from 2018 to 2019. I have served in my current role as Assistant Commissioner of Facilities since 2019.

**Inmate Classification System**

6. Offenders are assigned a security classification during diagnostics, upon placement into the custody of GDC. Security classification is determined by the Security Classification Instrument, Next Generation Assessment (NGA), which generates a security level in SCRIBE for each offender. Each factor is assigned a unique weight and processed by an algorithm that produces a security level. Upon completion of the diagnostic procedures, all collected data is entered in SCRIBE and forwarded electronically to the Offender Administration Classification Section for final NGA score review, and assignment to a permanent facility that corresponds with the offender's security classification. At each permanent facility, the Warden/Superintendent or a Designee reviews the system-generated security level

and determines if it is still appropriate. If the security level is still appropriate, they confirm the security level in SCRIBE. This process will finalize the security level.

7. There are three classification levels: close security, medium security, and minimum security. The following are general descriptions of each security level, but the process of assigning a security level is very nuanced. Close security is for offenders who are escape risks, have assault histories, and may have detainers for other serious crimes on file. The offenders never leave the prison and always require supervision by a correctional officer. Medium security represents the largest category of offenders. These offenders have no major adjustment problems and most may work outside the prison fence, but must be under constant supervision. Minimum security offenders tend to abide by prison regulations, present a minimal risk of escape, and have been judged to be a minimal threat to the community.

8. In addition to an inmate's security threat potential, housing decisions take into account an inmate's medical and mental healthcare needs, which must be considered when assigning an inmate to a facility to ensure the facility is capable of providing the requisite level of care or that there are appropriate outpatient options available if necessary.

9. There are six Mental Health Levels at GDC that dictate the appropriate the level of care for the offender. Level I offenders have no need for mental health services. Offenders are classified as Level II when their ability to function in general

population is mildly impaired due to mental illness or not currently impaired but in need of monitoring for various reasons like medication or recent history of self-harm. Offenders are classified as Level III when an offender's ability to function in general population is moderately impaired due to mental illness. As described in GDC SOP 508.16, "[t]his designation reflects a tenuous mental status that is easily overwhelmed by everyday pressures, demands, and frustrations resulting in the following: disorganization, impulsive behavior, poor judgment, a deterioration of emotional controls, loosening of associations, delusional thinking, and/or hallucinations." Offenders are designated as Level IV when their ability to function in general population is severely impaired due to mental illness. GDC has policies related to each of these Mental Health Levels that dictate criteria for things like housing placement, staffing, treatment, and programming options for offenders at each level. Level V typically is a short-term assignment for when an offender is actively psychotic and dangerous to themselves or others, so they need to be in an Acute Care Unit or Crisis Stabilization Unit. Level VI offenders need to be transferred to a psychiatric facility.

## Inter-Institutional Transfers

10. As Assistant Commissioner of Facilities, I oversee the Offender Administration Unit, which is responsible for inter-institutional transfers for both male and female facilities. Though I have the ultimate authority to approve or deny

requests related to inmate transfers, I am not involved in the transfer approval process on a daily basis.

11. Inmates may be transferred from one GDC facility to another GDC facility for a variety of reasons, including administrative, causal, medical, emergency, or programmatic reasons.

12. Administrative transfer requests can be based on population redistribution or a change in missions of a facility, among other things. These requests also can be based on what would be a positive move for the inmate, such as moving to a facility that is closer to where the inmate's family lives.

13. A causal transfer request is based on an inmate's documented behavioral problem that makes the inmate's current facility assignment inappropriate.

14. An emergency transfer request to move an offender is the result of an unforeseen circumstance or unique event that requires immediate action. These transfers are considered only when necessary.

15. A programmatic transfer request is one that is made to support an inmate's participation in a program that is offered only at a facility that is not the inmate's current facility.

16. A medical transfer request is one based on the inmate's need to receive appropriate medical or mental health services, including appointments or evaluations.

**Jane Doe Transfer Requests**

17. I am aware that Doe has asked to be transferred to Baldwin State Prison and to a female facility. Phillips State Prison currently is the best placement for Doe. Transferring Doe to a women's prison is not appropriate for several reasons.

18. First, Doe is an extremely dangerous inmate. Doe's criminal history reveals Doe's violent nature, which includes multiple convictions for aggravated sodomy. Doe's record while incarcerated reveals that Doe can induce others to commit violence on Doe's behalf. Doe's behavioral history would pose a significant safety risk in a female prison.

19. Doe currently is housed in Administrative Segregation at Phillips State Prison in part due to Doe's participation in a conspiracy to murder a federal inmate while Doe was incarcerated at Georgia State Prison in 2019. Doe also threated to kill a former GDC Commissioner and a former U.S. Attorney for the Northern District of Georgia. As part of that conspiracy, Doe and Doe's co-conspirator sent mail to the Commissioner's home that threatened to kill his family. Doe was convicted of several gang-related offenses, terroristic threats, conspiracy to commit murder, and making false statements in connection with the investigation of the murder plot.

20. In 2020, also while at Georgia State Prison, Doe made and then mailed two bombs through the mail to the home address of the facility's warden. Two more bombs were found in Doe's cell which led to the entire facility being placed on lockdown. A search of Doe's cell also revealed a bottle containing alcohol. Doe admitted to sending functioning bombs through the mail to the warden of the facility.

21. Upon arrival to Phillips State Prison in April 2022, Doe was assigned to Administrative Segregation because Doe was noted to be a threat to the safe and secure operation of the facility and because of Doe's Level III mental health status.

22. Because of Doe's security risk profile and the resulting need for increased management, Doe must be placed at an appropriate facility capable of housing offenders with ongoing management issues. Phillips State Prison is classified as a Special Mission Facility, with the specific mission being to house inmates who have had management problems at other prisons or centers and those who could pose a risk if housed elsewhere.

23. Second, Doe has several medical and mental health conditions that require a level of service and treatment that very few GDC facilities provide. Due to Doe's mental health status, Doe is classified as a Level III offender. Doe receives regular medical treatment and mental health treatment at Phillips State Prison, which is located near Atlanta and a plethora of different specialists in the event Doe ever needs hospital access.

24. The combination of Doe's security profile and Doe's medical and mental health conditions leave very few facilities that can house Doe at this time. While Baldwin State Prison houses close-security offenders, it is my judgment that Baldwin is not the right facility for Doe. Baldwin is in a rural location and has space limitations. It is not the proper facility to provide the increased levels of management that Doe requires. Likewise, Valdosta State Prison is not a suitable placement for Doe because it the majority of its offenders are close-security who tend to pose more risk of violence towards a mentally ill transgender offender. And Augusta State Medical Prison is not a suitable option because it currently houses a known associate of Doe, which poses an increased risk of misbehavior that would require the facility to keep Doe and Doe's associate separated from each other.

25. As Assistant Commissioner of Facilities Division of GDC, it is my judgment that Doe cannot be transferred to a female facility. There is no female facility capable of managing an offender with the security risk profile of Doe. Likewise, it is my professional judgment that housing a transgender female like Doe in a female facility would present significant physical and psychological risks to the female population.

26. Based on my years of experience in correctional institutions in the state of Georgia, Phillips State Prison is the best placement for Doe at this time in light of the considerations outlined above.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __31st__ day of January, 2024

