IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Jane Doe,<br><br>                    Plaintiff,<br>    v.<br><br>Georgia Department<br>of Corrections, *et al.*,<br><br>                    Defendants. | Civil Action No. 1:23-cv-5578-MLB |

**DECLARATION OF DESHAWN JONES**

1. I am Deshawn Jones, Warden of Phillips State Prison.

2. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, I would competently testify to them.

3. Phillips State Prison is located in Buford, Georgia. It is part of Georgia Department of Corrections. Phillips State Prison serves adult male felons. It consists of ten housing units, an infirmary, and a Crisis Stabilization Unit. The Prison currently houses 796 offenders, with the capacity to house 837 offenders. Phillips Transitional Center is a separate nearby facility for offenders transitioning back into the community. It currently houses 142 offenders and has the capacity to house 192 offenders.

4.      As Warden of Phillips State Prison, I am responsible for the care and control of all offenders assigned to Phillips. I have the authority to make personnel decisions and to approve offender classification and assignments within the facility. I am responsible for overseeing staff of the facility, including 117 correctional officers.

5.      My duties include, but are not limited to, managing staffing needs and allocating resources accordingly; overseeing the budget; developing safety campaigns and enforcing safety rules; ensuring maintenance of the facility to include the grounds; scheduling and conducting regular staff meetings; overseeing the training and evaluation of correctional staff; supervising preliminary investigations of inappropriate behavior by staff or offenders; conducting regular inspections of the entire institution for security, safety, sanitation, and policy compliance; and conducting weekly inspections of cells, bars, locks, windows, doors, and other security features of the facility. I have two deputy wardens in charge of security, one deputy warden in charge of administration, and one deputy warden in charge of offender care and treatment.

6.      I have been employed by Georgia Department of Corrections since 2006.  In 2016, I was assigned to Assistant Superintendent at Lee Arrendale Transitional Center. In 2018 I was assigned to Superintendent at Atlanta Transitional

Center. In 2020 I was assigned to Warden at Rutledge SP. In July 2022, I began as Warden of Phillips State Prison.

### Introduction to Phillips State Prison

7.  GDC classifies Phillips State Prison as a "special mission" facility. "Special mission" means that Phillips State Prison houses offenders who have had management problems at other prisons and those who could pose a risk if housed elsewhere. Phillips State Prison houses offenders classified as minimum-level, medium-level, and close-level security. The "special mission" designation also is due to its special mental health unit capable of providing care to all mental health levels, and its Crisis Stabilization Unit.

### Security Procedures at Phillips State Prison

8.  Phillips State Prison follows GDC security protocols for the protection of offenders as well as prison staff and the public. Security measures in the prison vary depending on the offender population being served.

9.  There are five general population housing units at Phillips State Prison with two dormitories in each housing unit and 50 offenders in each dormitory. Two offenders are housed together in one cell. Offenders have access to the yard only at certain times and they are restricted to their cell at certain times of the day. Otherwise, the general population at Phillips State Prison is able to move freely through the dormitories. There typically is one correctional officer assigned to each

dorm. There are times when one correctional officer oversees one to two housing units.

10. Each cell in the general population units is secured by a key lock and a slide bolt lock.

11. It is common for the offender population to try to manipulate and/or destroy the locks in an attempt to open cell doors. When I arrived at Phillips State Prison in July 2022, some cell door locks were in various stages of repair and replacement, due to destruction by the offender population. Steps continue to be taken to have the locks repaired or replaced as necessary. Constant monitoring is required to ensure locks remain functional because of the ongoing efforts of offenders to destroy the locks.

12. There are no doors on the showers in the general population unit. Each shower stall has a curtain rod with a curtain to provide privacy from mid-calf to the neck, allowing officers to monitor offenders above the shoulders and below the knees, ensuring offenders are safe from physical and sexual harm to themselves or by others. Offenders hang their clothes by the shower door and get dressed after their shower and before opening the curtain.

13. Within the ten housing units, Phillips State Prison has an Administrative Segregation unit that is used to house offenders who have otherwise participated in or were associated with activity such that greater management of the

offender's interaction with other persons is necessary to ensure the safety, security, and orderly operation of GDC facilities, or protection of the public. It can house 125 offenders, with 50 double-occupancy cells and 25 single cells. As provided in GDC policy, the use of Administrative Segregation is limited to those circumstances that pose a direct threat to the safety of persons or a clear threat to the safe and secure operation of the facility. An offender may also be placed in Administrative Segregation at his or her request for their own protection. Unlike general population units, offenders in Administrative Segregation are prohibited from moving freely throughout the unit. They are housed either with a roommate or by themselves and are monitored by an officer at all times. Access to the unit is restricted in that officers use a key to gain entry and general population offenders only have access if they have been assigned a special classification as an orderly. Offenders in Administrative Segregation receive one hour of recreation time each day.

14. Offenders may also be assigned to Disciplinary Isolation within the Administrative Segregation unit when other methods of discipline have failed. While in Disciplinary Isolation, an offender's privileges and activities are restricted.

15. Cells in the Administrative Segregation unit are secured with a key lock and a slide bolt that is secured with a padlock. Each cell has a bed, a window that allows light to enter, a locker box, a toilet, and a sink. The doors on these cells have a window that allows officers to view the offenders, and a small metal tray flap that

allows an officer to deliver meals, deliver mail or paperwork as necessary, and to secure the offender with handcuffs for movement from the cell.

16. There are doors with key locks and slide bolts on the showers in Administrative Segregation. Each door reaches the floor and closes completely. Each door has a metal tray slot to allow the offender to have handcuffs removed for the shower. Offenders are escorted to the shower by an officer who gives each offender approximately ten minutes to complete their shower. It is the practice at Phillips State Prison for officers to walk away while the offender is showering to provide the offender an added level of privacy.

17. GDC policies dictate the procedures for first placing, and then maintaining, an offender in Administrative Segregation or Disciplinary Isolation. It is the policy of GDC that all offenders assigned to Administrative Segregation receive the same access to medical treatment, mental health treatment, and legal consultations like offenders in general population. GDC policy specifically provides that offenders previously identified as having a mental illness receive continuous mental health services while confined in Administrative Segregation or Isolation. Level III and Level IV mental health offenders will have an individual counseling session with their mental health counselor outside of their cells twice a month. A mental health counselor visits each offender in the Administrative Segregation unit on a weekly basis.

18. Administrative Segregation placements are reviewed by the classification committee every week for the first 60 days and then every 30 days after that. As Warden, I review and approve all offenders that remain in Administrative Segregation for more than 30 days.

## Gang Activity at Phillips State Prison

19. Phillips State Prison, like most correctional facilities, houses offenders who associate with, or are validated as, criminal gang members or Security Threat Offenders (STO), which are offenders who have the potential or have committed acts that threaten others or the overall orderly operation of the facility. There are approximately 266 offenders at Phillips State Prison who are validated members of a criminal gang or STOs. As Warden, I am aware of the offenders who are members of each gang, the offenders who are non-members that associate with each gang, and the gang activities happening within the facility.

20. Gangs operating within correctional facilities pose a danger to offenders, staff, and the public. They generally are violent and are willing to use violence to traffic drugs, settle conflicts with other gangs, intimidate non-members, and enforce extortion schemes, to name a few.

21. Substantial resources are required to manage offenders participating in gangs and to suppress their activity at Phillips.

**Commissary**

22. Phillips State Prison maintains a commissary for offenders to use personal funds to purchase miscellaneous and nonessential items.

23. Offenders in Administrative Segregation can access commissary offerings by placing an order that is facilitated by a staff member.

24. The list of available commissary items is maintained by Deputy Warden of Administration. Separate lists exist for male and female offenders.

25. Pursuant to GDC policy, an offender placed in Administrative Segregation may have access to specific commissary items or otherwise authorized personal property items restricted by amount or type due to the risks associated with the offender's placement, as well as space and sanitation concerns.

**Jane Doe**

26. Jane Doe arrived at Phillips State Prison in April 2022, having recently been convicted of seven felony counts stemming from offenses committed by Doe while at Georgia State Prison. Doe's convictions include conspiracy to commit murder, terroristic threats, making false statements, and several counts of violating the Street Gang Terrorism and Prevention Act. Between March and September 2019, while associating with the all-white criminal street gang Ghostface Gangsters, Doe and another offender in the custody of GDC conspired to murder a federal inmate. In the process, they threatened the lives of the federal inmate, a United States

Attorney for the Northern District of Georgia at the time, and a former Commissioner of the Georgia Department of Corrections. Doe and the co-conspirator mailed a letter to the former Commissioner's home that indicated he and his family were to be killed by members of the Ghostface Gangsters. Doe was sentenced to 20 years in prison for these offenses to run consecutively with Doe's existing sentence.

27. Since her arrival at Phillips, Doe has openly associated with members of the Ghostface Gangsters.

28. One month after her arrival to Phillips, in May 2022, Doe reported to prison officials that she had information regarding a planned bombing to take place in June 2022. Law enforcement officers were dispatched to Phillips for the purpose of interviewing Doe. Doe told the officers that she had been associated with Ghostface Gangsters since 2007. She explained her involvement with them, noting that although she will not be granted membership due to her homosexuality, Doe holds an advisory position in the gang. As to the bombing, Doe told officers that she organized a terroristic bomb plot with members of the Ghostface Gangsters, including one who was to be released later that month. Doe described the operation in detail, including those involved, the nicknames of the four locations where the bombs were to be detonated, and how much dynamite was to be used at each location. Doe claimed that her goal in participating in the operation was to take down

Ghostface Gangsters when the members were caught in the act of committing these crimes. Law enforcement ultimately determined that there was no factual basis for Doe's allegations.

29. Doe's report about an alleged bomb plot, coupled with the tangible steps she took with a co-conspirator towards murder in 2019, are examples of why Doe presents a significant management challenge. She did these things while she was incarcerated. These instances demonstrate how she is inclined to deceive and manipulate staff and other offenders. And her underlying criminal history involving impersonation of an officer, kidnapping, and aggravated sodomy, also indicates her violent and deceitful nature.

30. To keep the general population and facility staff safe from Doe, Doe has been placed in Administrative Segregation since her arrival at Phillips. Pursuant to GDC policy, Doe's placement in Administrative Segregation is reviewed by the Classification Committee every 30 days to determine if Doe should remain in Administrative Segregation. Doe is not and has never been placed in solitary confinement while at Phillips State Prison during my tenure.

31. Like all other offenders housed in Administrative Segregation, Doe's cell has a key lock and a slide bolt with a padlock that prevents any other offender from gaining access to the cell. Staff at Phillips will take reasonable precautions to ensure the locks on Doe's cell remain in place and functioning properly.

32. I am not aware of any incident related to Doe's use of the showers that resulted in unwanted touching. Phillips has a no-tolerance policy for all forms of sexual abuse and harassment.

33. I am aware that Doe has submitted a request to be transferred out of Administrative Segregation. Based on a review by the Classification Committee and myself, because of Doe's security risk, it would be inappropriate and unsafe to remove Doe from Administrative Segregation and put her into the general population at this time.

34. Doe has been classified as being Level III mental health status. Doe receives the same level of care in Administrative Segregation that she would in general population. She has access to medical and mental health providers and regularly is seen by both as evidenced by her medical and mental health records.

35. In my role as Warden, I am not a member of Doe's treatment committee but I am in the position to approve or deny grievances related to an offender's medical or mental health treatment. As part of that process, I consult with the medical and mental health professionals to address each grievance appropriately.

36. I have reviewed grievances filed by Doe against specific physicians regarding her desire to obtain an evaluation for sex reassignment surgery. I denied those grievances based on my review of records and conversations with the medical professionals who regularly treat Doe. The grievances filed by Doe were against

specific physicians who are not authorized to conduct such an evaluation nor specialized in that type of evaluation. It is my understanding that Doe's request for an evaluation for sex reassignment surgery is pending a medical consult.

37. I am not aware of a "blanket ban" that prohibits the provision of sex reassignment surgery to transgender offenders in the custody of Georgia Department of Corrections.

38. I also have reviewed grievances from Doe related to her desire to obtain special items not available in commissary such as breast pads, hair removal cream, and a wig. I denied the grievance because those items do not appear on the male or female commissary list and are not otherwise available to Doe. Likewise, Doe's placement in Administrative Segregation warrants the denial of the request for special items as they can pose security risks that are especially relevant to an offender like Doe with a history of an escape attempt. Based on my experience as Warden of Phillips and my previous experience at other GDC facilities, I believe that providing items to Doe that make her appear more feminine may have the effect of enticing male offenders in a way that disturbs the orderly operation of the facility and can lead to increased incidents of assault. Overall, it is my judgment that the risk of danger to Doe and/or other offenders outweighs Doe's desire to obtain these items that are not available to anyone else in the facility or GDC custody.

39. There is a process available for an offender to make a written request for bras and panties. To my knowledge, Doe has received bras and panties.

40. I have never worked with a Jamal Kinte Roberts during my time at Phillips State Prison and therefore did not promote to the rank of Lieutenant anyone by that name.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 31st day of January, 2024

*Deshawn Jones*
Deshawn Jones