## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

JANE DOE,

     Plaintiff,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS; *et al.*,

     Defendants.

Civ. Case No. 1:23-cv-5578-MLB

## PLAINTIFF'S CORRECTED NOTICE OF SUPPLEMENTAL AUTHORITY

In further support of Plaintiff's Motion for Preliminary Injunction, Dkt. 2, Plaintiff respectfully submits for the Court's review the Southern District of Georgia's recent decision in *Robbin Amanda Bayse v. Ted Philbin*, Order Adopting Magistrate Judge's Report and Recommendation, Case No. 1:22-cv-00024-JRH-BKE, ECF No. 130 (S.D. Ga. Mar. 26, 2024) ("*Bayse*"), attached hereto as Exhibit A and which was issued on March 26, 2024. The Magistrate Judge's Report and Recommendation, Case No. 1:22-cv-00024-JRH-BKE, ECF No. 127 (S.D. Ga. Mar. 26, 2024), is attached hereto as Exhibit B and was issued on February 20, 2024.

The plaintiff in *Bayse* sued prison officials and mental health personnel at the Augusta State Medical Prison ("ASMP"), alleging that they were deliberately

1

indifferent to the plaintiff's "serious medical needs by omitting social transitioning accommodations" from her treatment plan. Ex. B at 6. The plaintiff was previously incarcerated at Georgia State Prison ("GSP"), where she was diagnosed with gender dysphoria and borderline personality disorder. *Id.* at 2. The GSP staff provided a treatment plan that included gender-affirming hormone therapy and social-transitioning accommodations. *Id.*

After the plaintiff transferred to ASMP, she was informed that her GSP treatment plan violated Georgia Department of Corrections ("GDC") policy, and subsequently was provided a new treatment plan. *Id.* The plaintiff complained that the ASMP treatment plan failed "to continue the social transitioning accommodations provided in the GSP Plan, which allowed her to wear female undergarments and follow GDC grooming and cosmetic standards for females." *Id.* at 3. The ASMP treatment plan was allegedly created in accordance with the GDC Standard Operating Procedure ("SOP") 507, which stated in part that "'[i]f a diagnosis of Gender Dysphoria is reached, a treatment plan will be developed that promotes the physical and mental health of the patient. The development of the treatment plan is not solely dependent on services provided or the offender's life experiences prior to incarceration.'" *Id.* at 4 (citing the GDC SOP). Even though she filed a grievance, met with prison staff, and made numerous complaints, the plaintiff was ultimately required to have her hair cut to an allowable length according to

standards set for male inmates. *Id.* at 4–5.

The *Bayse* court found that the defendants were not entitled to summary judgment. *Id.* at 6.[1] The Court's first reason for denying summary judgment was that reasonable jurors could conclude that the defendants' position that the GDC SOP 507 precludes accommodations was pretextual. *Id.* at 8. The portion of the prison policy provided to the Court contained no prohibition of social-transitioning accommodations. *Id.* Furthermore, a blanket ban on such accommodations would be facially unconstitutional. *Id.* (citing *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020), *cert. denied sub nom.*, *Keohane v. Inch*, 142 S. Ct. 81 (2021)). Additionally, reasonable jurors could find that the defendants "failed to establish social transitioning accommodations were not medically necessary." *Id.* at 9.

In distinguishing *Bayse* from *Keohane*, which "provides a strong basis for granting summary judgment to prison officials in social transitioning cases," the court found that the *Bayse* defendants consistently "failed to develop the factual record *Keohane* requires to prevail on summary judgment." *Id.* at 12. In *Keohane*, reasoned the *Bayse* Court, the factual record clearly showed that "social transitioning

---

[1] The Court also denied the Plaintiff's Motion for Summary Judgment, finding that her motion "fail[ed] to comply with Local Rule 56.1, and it fail[ed] to prove as undisputed fact that social transitioning accommodations were medically necessary to treat her gender dysphoria." Ex. B at 6–7. In the case, Plaintiff had "failed to submit any evidence of medical necessity." *Id.* at 7.

was not medically necessary to treat Keohane's gender dysphoria." *Id.* at 12. This record was supported facts which were absent from the *Bayse* record. *Id.* The Court pointed out that the defendants only offered brief opinions stating that "regardless of the supposed blanket ban on social transitioning in GDC SOP 507, 'these female grooming and cosmetic accommodations would not be appropriate or clinically indicated for Inmate Bayse and would not address the primary diagnosis of Borderline Personality Disorder.'" *Id.* at 9 (citing the declarations of two ASMP mental health personnel).

Additionally, unlike *Keohane*, the plaintiff in *Bayse* had "a history of self-harm that pre-dated any ASMP Plan, she repeatedly warned Defendants she would harm herself if they denied social transitioning and forced her to undergo a haircut, and shortly after the haircut she attempted castration." *Id.* at 12. Finally, the *Bayse* Court found that though the *Keohane* record contained evidence that "'the FDC denied Keohane's social-transitioning-related requests, at least in part, on the ground that they presented serious security concerns,'" the *Bayse* defendants failed to offer any similar evidence. *Id.* at 12 (citing *Keohane*, 952 F.3rrd at 1275).

In light of these findings, the Court concluded that, except for the prison officials who had no role in determining the plaintiff's medical treatment, none of the parties were entitled to summary judgment.

In the case pending before the Court, Ms. Doe has expressed her medical need

for social transitioning items, including a wig,[2] breast padding,[3] and hair removal cream,[4] and GDC's treating mental health staff have acknowledged these needs.[5] In response to Plaintiff's motion for preliminary injunction, Defendants provided vague, cursory, and conclusory security rationales for denying her these items[6] without addressing the fact that Ms. Doe has received bras and underwear as gender-affirming items previously and has created homemade padding for her bra (with permission of the Warden of Phillips State Prison).[7] The argument made in

---

[2] Which may already be provided to inmates with approval from medical "for medical reason." *See, e.g.*, GDC Standard Operating Procedure 228.02, Dkt. 96-4.

[3] Which Ms. Doe has received permission to create *on her own* and use within the facility by Warden Jones. *See* Transcript of Proceedings (Preliminary Injunction Hearing) held on Feb. 12, 2024 at 26:23-27:3; 37:18-25.

[4] As recommended specifically by one of Ms. Doe's treating psychologists, Dr. Frady. *See* Dr. Frady's Recommendations, Transcribed Jan. 3, 2023, Dkt. 9-4 at 54.

[5] In particular, one of Ms. Doe's treating psychologists, Dr. Frady, recommended these items be provided to Ms. Doe. *See* Affidavit of Jane Doe in Support of Motion for Preliminary Injunction ¶ 73, Dkt. 9-1; *see also* Dr. Frady's Recommendations, Transcribed Jan. 3, 2023, Dkt. 9-4 at 54.

[6] Warden Jones stated that feminizing items "may have the effect of enticing male offenders in a way that disturbs the orderly operation of the facility and can lead to increased incidents of assault." Jones Decl., Dkt. 86-2 ¶ 38. This ignores the fact that Ms. Doe already wears padded bras, with Warden Jones's permission. Transcript of Proceedings (Preliminary Injunction Hearing) held on Feb. 12, 2024 at 26:23-27:3; 37:18-25. Warden Jones also described that her special items can pose "especially relevant" security risks because of Ms. Doe's "history of an escape attempt" without explaining how exactly providing any of these gender-affirming items that would only further single her out as a woman in a facility of men would assist with concealing her identity in an ostensible escape. Jones Decl., Dkt. 86-2 ¶ 38.

[7] *See generally* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Brief in Support, Dkt. 86, at 18-19. In fact, besides in Warden Jones's affidavit, described above, Defendants do not even specifically question the security of the products requested by Plaintiff – merely the provision of gender-affirming

Defendants' affidavits that provision of these items would present some new security risk is irrelevant and pretextual in view of the fact that provision of these items apparently did not present such a security risk in the past or present.

But the rest of Ms. Doe's record is similar to Ms. Bayse's history: prior to litigation, there was no evidence that these items were denied for security reasons. The items would not inherently pose a security risk and the cursory and pretextual reasons provided by Defendants should not weigh heavily against providing these items. Finally, as the *Bayse* court found, *Keohane* is not an insurmountable bar to these items.

*    *    *    *    *

Plaintiff respectfully submits *Bayse* to the Court in further support of her Motion for Preliminary Injunction.

| | |
|---|---|
| */s/Nicholas F. Palmieri* | D Dangaran * |
| Nicholas F. Palmieri * | Miriam R. Nemeth * |
| BAKER BOTTS, L.L.P. | RIGHTS BEHIND BARS |
| 30 Rockefeller Plaza | 416 Florida Avenue N.W. #26152 |
| New York, New York 10112 | Washington, D.C. 20001-0506 |
| (212) 408-2640 | (202) 455-4399 |
| nick.palmieri@bakerbotts.com | d@rightsbehindbars.org |
| | miriam@rightsbehindbars.org |
| Sterling Marchand * | |
| Scott Novak * | David J. Utter |
| BAKER BOTTS, L.L.P. | Georgia Bar Number: 723144 |
| 700 K St NW | THE CLAIBORNE FIRM, P.C. |
| Washington, DC 20001 | 410 East Bay Street |
| (202) 639-1316 | Savannah, Georgia 31401 |

surgery. *See, e.g.*, *id.* at 2, 24-25.

6

sterling.marchand@bakerbotts.com
scott.novak@bakerbotts.com

Katherine Jeffress *
BAKER BOTTS, L.L.P.
401 S 1st Street Suite 1300
Austin, Texas 78704
(512) 322-2672
katie.jeffress@bakerbotts.com

Hannah Roskey *
BAKER BOTTS, L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234
hannah.roskey@bakerbotts.com

(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com

Christopher J. Murell
Georgia Bar Number: 195116
Meghan Matt*
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law
meghan@murell.law

***Admitted** *pro hac vice*

*Attorneys for Plaintiffs*

7

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief conforms to the requirements of L.R. 5.1

and 7.1. The notice is prepared as double-spaced between lines and in 14-point

Times New Roman font.

<u><em>/s/Nicholas F. Palmieri</em></u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 10, 2024, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsels of record are registered ECF users.

*/s/Nicholas F. Palmieri*