# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### 2211 UNITED STATES COURTHOUSE
### 75 TED TURNER DRIVE, SW
### ATLANTA, GEORGIA 30303-3361

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
404-215-1655

April 26, 2024

Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia 30303

**U.S.D.C. No.:** 1:23-cv-5578-MLB
**U.S.C.A. No.:** 00-00000-00
**In re:**      **Jane Doe v. Georgia Department of Corrections et al**

Enclosed are documents regarding an appeal in this matter. Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| **X** | **Certified copies of the Notice of Appeal, Clerk's Judgment, Opinion & Order and Docket Sheet appealed enclosed.** |
| | This is not the first notice of appeal. Other notices were filed on: . |
| | There is no transcript. |
| **X** | **The court reporters are Keisha Crump & Jana B. Colter.** |
| **X** | **There is sealed material as described below: Various pleadings.** |
| | Other: . |
| **X** | **USCA Appeal fees HAVE been paid. (Receipt# AGANDC-13391824)** |
| | Appellant has been   leave to proceed *in forma pauperis*. |
| | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| | The Magistrate Judge is . |
| **X** | **The District Judge is Michael L. Brown.** |
| | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:   /s/P. McClam
      Deputy Clerk

0months,APPEAL,EXH,MLBLC3,SUBMDJ

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–05578–MLB</u>

Doe v. Georgia Department of Corrections et al

Assigned to: Judge Michael L. Brown

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 12/06/2023

Jury Demand: None

Nature of Suit: 560 Prisoner Petitions:
Civil Detainee: Conditions of Confinement

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Jane Doe**                              represented by   **Christopher James Murell**
Murell Law Firm
2831 St. Claude Ave
New Orleans, LA 70117
504–717–1297
Email: chris@murell.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Dangaran**
Rights Behind Bars
416 Florida Avenue NW
#26152
Washington, DC 20001
202–540–0029
Email: d@rightsbehindbars.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Utter**
The Claiborne Firm
5256 Peachtree Rd
Suite 195
Atlanta, GA 30341
912–236–9559
Email: david@claibornefirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francesca Eick**
Baker Botts LLP – Austin
401 S. First St.
Suite 1300
Austin, TX 78704
512–322–2672
Fax: 512–322–3672
Email: francesca.eick@bakerbotts.com

*TERMINATED: 02/01/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Hannah Roskey**
Baker Botts, LLP–TX
910 Louisiana Street
One Shell Plaza
Houston, TX 77002
713–408–4458
Email: hannah.roskey@bakerbotts.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Elise Jeffress**
Baker Botts LLP – Austin
401 S. First St.
Suite 1300
Austin, TX 78704
512–322–2687
Email: katie.jeffress@bakerbotts.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meghan K. Matt**
Murrell Law Firm
2831 St. Claude Avenue
New Orleans, LA 70117
225–413–0463
Email: meghan@murell.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Miriam R. Nemeth**
Rights Behind Bars
416 Florida Avenue NW
#26152
20001
Washington, DC 20001
202–455–4399
Email: miriam@rightsbehindbars.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Frank Palmieri , III**
Baker Botts, LLP–NY
30 Rockefeller Plaza
New York, NY 10112
212–408–2640

Email: nick.palmieri@bakerbotts.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald Scott Novak , Jr.**
Baker Botts, LLP –DC
700 K Street, N.W.
Washington, DC 20001–5692
202–304–5099
Email: scott.novak@bakerbotts.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sterling Andrew Marchand**
Baker Botts, LLP –DC
700 K Street, N.W.
Washington, DC 20001–5692
202–639–1113
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Georgia Department of Corrections**      represented by  **Jeffrey Matthew Harris**
Consovoy McCarthy PLLC –VA
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
703–243–9423
Email: jeff@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachael Tucker**
Consovoy McCarthy PLLC –VA
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
703–243–9423
Email: rachael@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Samuel Vaseliou**
Consovoy McCarthy PLLC –VA

1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
321–223–3092
Email: tvaseliou@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger A. Chalmers**
Georgia Department of Law
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334–1300
404–458–3220
Fax: 404–651–5304
Email: rchalmers@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Stephen John Petrany**
Georgia Department of Law
40 Capitol Square SW
Dunwoody, GA 30334
404–458–3408
Email: spetrany@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner Tyrone Oliver**          represented by   **Jeffrey Matthew Harris**
*in his official capacity*                              (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Rachael Tucker**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Thomas Samuel Vaseliou**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Roger A. Chalmers**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Stephen John Petrany**
                                                        (See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**Randy Sauls**
*Assistant Commissioner, in his official capacity*

represented by **Jeffrey Matthew Harris**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachael Tucker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Samuel Vaseliou**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger A. Chalmers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen John Petrany**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sharon Lewis**
*Statewide Medical Director, in her official and individual capacities*

represented by **Jeffrey Matthew Harris**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachael Tucker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Samuel Vaseliou**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger A. Chalmers**
(See above for address)
*ATTORNEY TO BE NOTICED*

Stephen John Petrany
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DeShawn Jones**                          represented by    **Jeffrey Matthew Harris**
*Phillips State Prison Warden, in his*                      (See above for address)
*official and individual capacities*                        *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Rachael Tucker**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Thomas Samuel Vaseliou**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Roger A. Chalmers**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Stephen John Petrany**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Sergeant Jamal Kinte Roberts**           represented by    **Rachael Tucker**
*in his individual capacity*                                (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Thomas Samuel Vaseliou**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jeffrey Matthew Harris**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**MHM Correctional Services, LLC**         represented by

6

**Lindsey Cassimus**
Huff Powell Bailey, LLC –Atl
999 Peachtree Street NE
Suite 950
Atlanta, GA 30309
404–892–4022
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Geoffrey Frankson**
Huff, Powell & Bailey, LLC
Suite 950
999 Peachtree St., N.E.
Atlanta, GA 30309
404–892–4022
Email: mfrankson@huffpowellbailey.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Centurion Health**<br>*TERMINATED: 02/13/2024* | represented by | **Lindsey Cassimus**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Geoffrey Frankson**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Chad I. Lohman**<br>*Statewide Mental Health Director, in his official capacity* | represented by | **Jeffrey Matthew Harris**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Rachael Tucker**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Thomas Samuel Vaseliou**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Roger A. Chalmers**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

Stephen John Petrany
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rhonda Billings**                                     represented by     **Alexander Collins Vey**
*Phillips State Prison Mental Health*                                      Huff, Powell & Bailey, LLC
*Director, in her official and individual*                                 999 Peachtree Street NE
*capacities*                                                               Suite 950
                                                                           Atlanta, GA 30309
                                                                           404–892–4022
                                                                           Email: avey@huffpowellbailey.com
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Lindsey Cassimus**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nora M. Jackson**
                                                                           Huff, Powell & Bailey, LLC
                                                                           Suite 950
                                                                           999 Peachtree St., N.E.
                                                                           Atlanta, GA 30309
                                                                           404–892–4022
                                                                           Email: mjackson@huffpowellbailey.com
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Michael Geoffrey Frankson**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Sherri Skibinski**                                represented by     **Alexander Collins Vey**
*in her official and individual capacities*                                (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Lindsey Cassimus**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nora M. Jackson**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Michael Geoffrey Frankson**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Cathleen Cleary**                    represented by    **Alexander Collins Vey**
*in her individual capacity*                               (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lindsey Cassimus**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nora M. Jackson**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Geoffrey Frankson**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Donald Bowling**                     represented by    **Alexander Collins Vey**
*in his individual capacity*                               (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lindsey Cassimus**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nora M. Jackson**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Geoffrey Frankson**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Sidney Moore**                           represented by    **Alexander Collins Vey**
*Nurse Practitioner, in his individual*                    (See above for address)
*capacity*                                                 *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lindsey Cassimus**
                                                           (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nora M. Jackson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Geoffrey Frankson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Wil Ausborn**                    represented by    **Alexander Collins Vey**
*in his individual capacity*                            (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Lindsey Cassimus**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Nora M. Jackson**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Michael Geoffrey Frankson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Jeremy Lane**                        represented by    **Alexander Collins Vey**
*in his individual capacity*                            (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Lindsey Cassimus**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Nora M. Jackson**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Michael Geoffrey Frankson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Wellpath LLC**                                    represented by   **Beth Boone**
                                                                      Hall Booth Smith
                                                                      3528 Darien Highway
                                                                      Ste 300
                                                                      Brunswick, GA 31525
                                                                      912–554–0093
                                                                      Email: bboone@hallboothsmith.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Tiffiny Montenegro**
                                                                      Hall Booth Smith – Brunswick
                                                                      3528 Darien Highway
                                                                      Ste 300
                                                                      Brunswick, GA 31525
                                                                      912–554–0093
                                                                      Email: tmontenegro@hallboothsmith.com
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Latonya James**                                   represented by   **Beth Boone**
*Phillips State Prison Medical Director,*                             (See above for address)
*in her official and individual capacities*                          *ATTORNEY TO BE NOTICED*

                                                                      **Tiffiny Montenegro**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Anthony Mulloy**                              represented by   **Thomas Samuel Vaseliou**
*in his official and individual capacities*                          (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *PRO HAC VICE*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jeffrey Matthew Harris**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Rachael Tucker**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Jewellann Clarke**                                represented by   **Beth Boone**
*Wellpath Health Services Administrator,*                            (See above for address)
*in her official and individual capacities*                          *ATTORNEY TO BE NOTICED*

                                                                      **Tiffiny Montenegro**
                                                                      (See above for address)

*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**United States**                          represented by   **Aileen Bell Hughes**
                                                            Office of the United States
                                                            Attorney–ATL600
                                                            Northern District of Georgia
                                                            600 United States Courthouse
                                                            75 Ted Turner Dr., S.W.
                                                            Atlanta, GA 30303
                                                            404–581–6000
                                                            Email: aileen.bell.hughes@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Network for Victim Recovery of DC**      represented by   **Melissa Lorraine Fox**
**(NVRDC)**                                                 Eversheds Sutherland (US) LLP
                                                            999 Peachtree Street NE
                                                            Suite 2300
                                                            Atlanta, GA 30309
                                                            404–853–8109
                                                            Email: melissafox@eversheds–sutherland.com
                                                            *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**ACLU of Georgia**                        represented by   **Brian Spielman**
                                                            Khayat Law Firm
                                                            Suite 2750
                                                            75 14th Street
                                                            Atlanta, GA 30309
                                                            603–781–4286
                                                            Email: bspielman@khayatlawfirm.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Robert C. Khayat , Jr.**
                                                            The Khayat Law Firm
                                                            75 Fourteenth Street NE
                                                            Suite 2750
                                                            Atlanta, GA 30309
                                                            404–978–2750
                                                            Fax: 404–572–5137
                                                            Email: rkhayat@khayatlawfirm.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 12/06/2023 | 1 | | |

| | | | |
|---|---|---|---|
| | | | COMPLAINT filed by Jane Doe. (Filing fee $405, receipt number AGANDC−13075996) (Attachments: # 1 Civil Cover Sheet)(kng) Please visit our website at http://www.gand.uscourts.gov/commonly−used−forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 12/06/2023) |
| 12/06/2023 | 2 | | IMMEDIATE HEARING REQUESTED MOTION for Preliminary Injunction with Brief In Support by Jane Doe. (Attachments: # 1 Memorandum in Support of Motion for Preliminary Injunction, # 2 Placeholder for Appendix in Support of Motion for Preliminary Injunction, # 3 Text of Proposed Order for Preliminary Injunction)(kng) (Entered: 12/06/2023) |
| 12/06/2023 | 3 | | MOTION for Leave to File Excess Pages for Plaintiff's Memorandum in Support by Jane Doe. (Attachments: # 1 Text of Proposed Order for Leave to File Excess Pages)(kng) (Entered: 12/06/2023) |
| 12/06/2023 | 4 | | STRUCK DOC. 4−1 PER 63 ORDER MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction*(R. Doc. 2)* by Jane Doe. (Attachments: # 1 Text of Proposed Order, # 2 Appendix Part 1, # 3 Appendix Part 2, # 4 Appendix Part 3)(Murell, Christopher) Modified to remove double wording on 12/7/2023 (kng). Modified on 12/29/2023 (kng). (Entered: 12/06/2023) |
| 12/06/2023 | 5 | | MOTION for Relief to Proceed Anonymously and Seal Identity with Brief In Support by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Murell, Christopher) (Entered: 12/06/2023) |
| 12/06/2023 | | | Submission of 2 MOTION for Preliminary Injunction, 3 MOTION for Leave to File Excess Pages, 4 MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction (R. Doc. 2) 5 MOTION for Relief to Proceed Anonymously and Seal Identity to District Judge Michael L. Brown. (kng) (Entered: 12/06/2023) |
| 12/06/2023 | 6 | | STANDING ORDER regarding Civil Litigation. Signed by Judge Michael L. Brown on 8/26/2021. (jpk) (Entered: 12/06/2023) |
| 12/06/2023 | 7 | | MOTION to Expedite Hearing on Plaintiff's Motion for Preliminary Injunction by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Murell, Christopher) (Entered: 12/06/2023) |
| 12/06/2023 | 8 | | MOTION to Strike *R. Doc 4−1 and Substitute Corrected Proposed Order* by Jane Doe. (Attachments: # 1 Text of Proposed Order, # 2 Corrected Proposed Order for R. Doc. 4−1)(Murell, Christopher) (Entered: 12/06/2023) |
| 12/06/2023 | 9 | | PROVISIONALLY SEALED NOTICE Of Filing Unredacted Exhibits by Jane Doe re 4 MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction*(R. Doc. 2)* (Attachments: # 1 Exhibit Unredacted Exh. 2 – Affidavit from Plaintiff, # 2 Exhibit Unredacted Exh. 8 – Partial Grievances, # 3 Exhibit Unredacted Exh. 9 – Letter to Centurion Health, # 4 Exhibit Unredacted Exh. 12 – Medical Records, # 5 Exhibit Unredacted Exh. 13 – Sealed Prior Case)(Murell, Christopher) (Entered: 12/06/2023) |
| 12/06/2023 | 10 | | MOTION for Leave to File Matters Under Seal re: 9 Notice of Filing,, by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Murell, Christopher) (Entered: 12/06/2023) |

13

| 12/06/2023 | 11 | | ORDER: The Court GRANTS Plaintiff's 7 Motion for Expedited Hearing on Preliminary Injunction and SETS a hearing on Plaintiff's 2 Motion for Preliminary Injunction for December 11, 2023, at 4:30 p.m., to take place before the Honorable Michael L. Brown, in Courtroom 1906, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. The Court DENIES Plaintiff's 3 Motion for Leave to File Excess Pages as untimely, given that she filed her oversized brief in support of her motion for preliminary injunction before the Court ruled on the motion for leave. *Plaintiff should not do that again*. The Court ORDERS Plaintiff to serve Defendants with a copy of the complaint and all of her filings in this case on or before December 7, 2023, at 12:00 p.m. (See Order for further specifics.) Signed by Judge Michael L. Brown on 12/6/2023. (jpk) (Entered: 12/06/2023) |
| 12/06/2023 | | | Set Hearings: Preliminary Injunction hearing set for 12/11/2023 at 04:30 PM in ATLA Courtroom 1906 before Judge Michael L. Brown. (jpk) (Entered: 12/06/2023) |
| 12/07/2023 | 12 | | MOTION for Extension of Time re 11 Order on Motion for Leave to File Excess Pages, Order on Motion to Expedite, *MOTION to Extend Service Deadline and Modify December 6, 2023 Order* by Jane Doe. (Attachments: # 1 Text of Proposed Order to Motion to Extend Service Deadline and Modify December 6, 2023 Order)(Utter, David) Modified to remove capitalization on 12/8/2023 (kng). (Entered: 12/07/2023) |
| 12/07/2023 | 13 | | PROPOSED SUMMONS filed by Jane Doe *Notice of Filing Summons to be Issued by the Clerk of Court* (Attachments: # 1 Summons Anthony Mulloy– GDC, # 2 Summons Chad Lohman– GDC Central, # 3 Summons Dr. Bowling– GDC, # 4 Summons Ga. Department of Corrections, # 5 Summons Randy Sauls– GDC Central, # 6 Summons Sharon Lewis– GDC Central, # 7 Summons Tyrone Oliver– GDC Central, # 8 Summons Centurion Health, # 9 Summons Chad Lohman– Centurion, # 10 Summons Dr. Bowling– Centurion, # 11 Summons Dr. Cleary– Centurion, # 12 Summons Dr. Skibinski– Centurion, # 13 Summons Dr. W. Ausborn– Centurion, # 14 Summons Jeremy Lane– Centurion, # 15 Summons MHM– Centurion, # 16 Summons Rhonda Billings– Centurion, # 17 Summons Sidney Moore– Centurion, # 18 Summons DeShawn Jones –PSP, # 19 Summons Dr. Cleary–PSP, # 20 Summons Dr. Skibinski–PSP, # 21 Summons Jamal Kinte Roberts–PSP, # 22 Summons Jewellann Clarke–PSP, # 23 Summons Latonya James–PSP, # 24 Summons Rhonda Billings–PSP, # 25 Summons Anthony Mulloy– Well Path, # 26 Summons Jewellann Clarke– Well Path, # 27 Summons Latonya James– Well Path, # 28 Summons Well Path)(Utter, David) Modified to remove capitalization on 12/11/2023 (kng). (Entered: 12/07/2023) |
| 12/07/2023 | 14 | | APPLICATION for Admission of Francesca Eick Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081714).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 15 | | APPLICATION for Admission of Ronald Scott Novak, Jr. Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081724).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 16 | | |

| | | | |
|---|---|---|---|
| | | | APPLICATION for Admission of D Dangaran Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081729).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 17 | | APPLICATION for Admission of Miriam R. Nemeth Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081743).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 18 | | APPLICATION for Admission of Katherine Jeffress Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081753).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 19 | | APPLICATION for Admission of Hannah Roskey Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081760).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/07/2023 | 20 | | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Meghan Matt. Clerk to follow−up by 12/18/2023. (djs) (Entered: 12/07/2023) |
| 12/07/2023 | 21 | | Electronic Summons Issued as to All Defendants. (kng) (Entered: 12/07/2023) |
| 12/07/2023 | 22 | | ORDER: The Court GRANTS IN PART and DENIES IN PART Plaintiff's 12 Motion to Extend Service Deadline and Modify December 6, 2023 Order. The Court ORDERS Plaintiff to serve Defendants with the complaint and with all her filings in this case (or obtain waivers of service) by 12:00 p.m. on December 8, 2023. The Court further ORDERS that Plaintiff's out−of−state counsel may represent her at the December 11 hearing without local counsel. Should Plaintiff's local counsel wish to participate, however, they must appear in person. (See Order for further specifics.) Signed by Judge Michael L. Brown on 12/7/2023. (jpk) (Entered: 12/07/2023) |
| 12/07/2023 | 23 | | APPLICATION for Admission of Meghan Matt Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13082895).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/07/2023) |
| 12/08/2023 | 24 | | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Sterling Marchand. Clerk to follow−up by 12/18/2023. (cpp) (Entered: 12/08/2023) |
| 12/08/2023 | 25 | | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Nicholas Palmieri. Clerk to follow−up by 12/18/2023. (cpp) (Entered: 12/08/2023) |
| 12/08/2023 | | | NOTICE OF TELEPHONE PROCEEDING (by docket entry only): The Court SETS a conference call for 12/8/2023 at 12:30 PM (EST) via Zoom before Judge Michael L. Brown. All of plaintiff's attorneys, including local counsel, must be on the call. Connection Instructions: Join ZoomGov Meeting https://ganduscourts.zoomgov.com/j/1601741539. Meeting ID: 160 174 1539. Passcode: 103915. Telephone Number: 646−828−7666. You must follow the instructions of the Court for remote proceedings available here. The procedure for filing documentary exhibits admitted during the proceeding is available here. *Photographing, recording, or broadcasting of any judicial proceedings,* |

| | | | |
|---|---|---|---|
| | | | *including proceedings held by video teleconferencing or telephone conferencing, is strictly and absolutely prohibited.* (jpk) (Entered: 12/08/2023) |
| 12/08/2023 | 26 | | Return of Service Executed by Jane Doe. Centurion Health served on 12/8/2023, answer due 12/29/2023. Served Summons, Complaint, Motion for PI, and Related Motions and Filings , as to Centurion Health. (Murell, Christopher) Modified to accurately reflect e–filed document on 12/11/2023 (kng). (Entered: 12/08/2023) |
| 12/08/2023 | 27 | | Return of Service Executed by Jane Doe. MHM Services Inc. served on 12/8/2023, answer due 12/29/2023. Served Summons, Complaint, Motion for PI, and Related Motions and Filings , as to MHM Services, Inc. (Murell, Christopher) Modified to accurately reflect e–filed document on 12/11/2023 (kng). (Entered: 12/08/2023) |
| 12/08/2023 | 28 | | MOTION for Relief Seeking Leave to Proceed with Dec 11 Hearing with Noticed Defendants by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Murell, Christopher) Modified to remove capitalization on 12/11/2023 (kng). (Entered: 12/08/2023) |
| 12/08/2023 | 29 | | NOTICE of Appearance by Roger A. Chalmers on behalf of Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls (Chalmers, Roger) (Entered: 12/08/2023) |
| 12/08/2023 | 30 | | WAIVER OF SERVICE Returned Executed by Jane Doe. Sharon Lewis waiver mailed on 12/8/2023, answer due 2/6/2024; Chad I. Lohman waiver mailed on 12/8/2023, answer due 2/6/2024; Randy Sauls waiver mailed on 12/8/2023, answer due 2/6/2024. (Murell, Christopher) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: 14 APPLICATION for Admission of Francesca Eick Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081714). Attorney Francesca Eick added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: 15 APPLICATION for Admission of Ronald Scott Novak, Jr. Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081724). Attorney Ronald Scott Novak, Jr. added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: 16 APPLICATION for Admission of D Dangaran Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081729). Attorney D. Dangaran added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | ORDER (by docket entry only): The Court held a telephonic hearing with Plaintiff Jane Doe's counsel to discuss a technical issuing involving several pending pro hac vice motions. A court reporter was present and a transcript of the hearing can be made available to the Defendants upon request. Having reviewed Plaintiff Doe's Motion for Leave to Proceed with December 11, 2023 Hearing with Noticed Defendants (Dkt. 28) and remaining mindful of Plaintiff Doe's request for expedited relief, the Court reaffirms the hearing currently scheduled for December 11, 2023 at 4:30 p.m. Ordered by Judge Michael L. |

| | | | |
|---|---|---|---|
| | | | Brown on 12/8/2023. (jpk) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: <u>17</u> APPLICATION for Admission of Miriam R. Nemeth Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081743). Attorney Miriam R. Nemeth added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: <u>18</u> APPLICATION for Admission of Katherine Jeffress Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081753). Attorney Katherine Jeffress added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | RETURN of <u>19</u> APPLICATION for Admission of Hannah Roskey Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13081760). to attorney for correction. Reason for return: Applicant failed to list the courts she is admitted. Applicant must include the U.S. District court(s) and/or the highest state court(s) to which she is admitted on her application. List the state bar information is not sufficient. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: <u>23</u> APPLICATION for Admission of Meghan Matt Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13082895). Attorney Meghan Matt added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | <u>31</u> | | ORDER GRANTING <u>14</u> Application for Admission Pro Hac Vice of Francesca Eick. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re <u>31</u> Order on Application for Admission PHV to Francesca Eick. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | <u>32</u> | | ORDER GRANTING <u>15</u> Application for Admission Pro Hac Vice of Ronald Scott Novak, Jr. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | <u>33</u> | | APPLICATION for Admission of Sterling Andrew Marchand Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13085157).by Jane Doe. (Utter, David) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re <u>32</u> Order on Application for Admission PHV to Ronald Scott Novak, Jr. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | <u>34</u> | | ORDER GRANTING <u>16</u> Application for Admission Pro Hac Vice of D. Dangaran. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they |

| | | | |
|---|---|---|---|
| | | | must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | 35 | | APPLICATION for Admission of Nicholas Frank Palmieri,III Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13085216).by Jane Doe. (Utter, David) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re 34 Order on Application for Admission PHV D. Dangaran. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | 36 | | ORDER GRANTING 17 Application for Admission Pro Hac Vice of Miriam R. Nemeth. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | 37 | | ORDER GRANTING 18 Application for Admission Pro Hac Vice of Katherine Jeffress. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re 37 Order on Application for Admission PHV to Katherine Jeffress. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | 38 | | ORDER GRANTING 23 Application for Admission Pro Hac Vice of Meghan Matt. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re 38 Order on Application for Admission PHV to Meghan Matt. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | 39 | | Minute Entry for proceedings held before Judge Michael L. Brown: Telephone Conference held on 12/8/2023. Discussion had regarding pro hac vice requirements for local counsel. The Court GRANTED Plaintiff's 28 Motion to Proceed with December 11, 2023 Hearing. Hearing Concluded. (Court Reporter Keisha Crump)(kng) (Entered: 12/08/2023) |
| 12/08/2023 | 40 | | MOTION to Amend 19 APPLICATION for Admission of Hannah Roskey Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081760). *Amended/Revised APPLICATION for Admission of Hannah Roskey Pro Hac Vice* by Jane Doe. (Utter, David) (Entered: 12/08/2023) |
| 12/08/2023 | 41 | | Return of Service Executed by Jane Doe. Bowling served on 12/8/2023, answer due 12/29/2023; Centurion Health served on 12/8/2023, answer due 12/29/2023; Cleary served on 12/8/2023, answer due 12/29/2023; Georgia Department of Corrections served on 12/8/2023, answer due 12/29/2023; Chad I. Lohman served on 12/8/2023, answer due 12/29/2023; Tyrone Oliver served on 12/8/2023, answer due 12/29/2023. (Murell, Christopher) (Entered: 12/08/2023) |
| 12/08/2023 | 42 | | |

| | | | |
|---|---|---|---|
| | | | Return of Service Executed by Jane Doe. Rhonda Billings served on 12/8/2023, answer due 12/29/2023; Jewellann Clarke served on 12/8/2023, answer due 12/29/2023; Latonya James served on 12/8/2023, answer due 12/29/2023; DeShawn Jones served on 12/8/2023, answer due 12/29/2023; Skibinski served on 12/8/2023, answer due 12/29/2023. (Murell, Christopher) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: 35 APPLICATION for Admission of Nicholas Frank Palmieri,III Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13085216). Attorney Nicholas Frank Palmieri, III added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | | | APPROVAL by Clerks Office re: 33 APPLICATION for Admission of Sterling Andrew Marchand Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13085157). Attorney Sterling Andrew Marchand added appearing on behalf of Jane Doe. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/08/2023) |
| 12/08/2023 | 43 | | APPLICATION for Admission of Hannah Roskey Pro Hac Vice.by Jane Doe. (Utter, David) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 12/08/2023) |
| 12/08/2023 | 44 | | ORDER GRANTING 33 Application for Admission Pro Hac Vice of Sterling Andrew Marchand. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re 44 Order on Application for Admission PHV to Sterling Andrew Marchand. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | 45 | | ORDER GRANTING 35 Application for Admission Pro Hac Vice of Nicholas Frank Palmieri, III. Signed by Judge Michael L. Brown on 12/8/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/08/2023) |
| 12/08/2023 | | | Clerk's Certificate of Mailing re 45 Order on Application for Admission PHV to Nicholas Frank Palmieri, III. (kng) (Entered: 12/08/2023) |
| 12/08/2023 | 46 | | Return of Service Executed by Jane Doe. W. Ausborn served on 12/8/2023, answer due 12/29/2023; Jeremy Lane served on 12/8/2023, answer due 12/29/2023; MHM Correctional Services, Inc. served on 12/8/2023, answer due 12/29/2023; Sidney Moore served on 12/8/2023, answer due 12/29/2023. (Dangaran, D.) (Entered: 12/08/2023) |
| 12/08/2023 | 47 | | Return of Service Executed by Jane Doe. Wellpath served on 12/8/2023, answer due 12/29/2023. Served Summons, Complaint, Motion for PI, and Related Motions and Filings , as to Wellpath. (Dangaran, D.) Modified to accurately reflect e–filed document on 12/11/2023 (kng). (Entered: 12/08/2023) |

| 12/11/2023 | | | APPROVAL by Clerks Office re: 43 APPLICATION for Admission of Hannah Roskey Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13081760). Attorney Hannah Roskey added appearing on behalf of Jane Doe. E−filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/11/2023) |
|---|---|---|---|
| 12/11/2023 | 48 | | ORDER GRANTING 43 Application for Admission Pro Hac Vice of Hannah Roskey. Signed by Judge Michael L. Brown on 12/11/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/11/2023) |
| 12/11/2023 | | | Clerk's Certificate of Mailing re 48 Order on Application for Admission PHV to Hannah Roskey. (kng) (Entered: 12/11/2023) |
| 12/11/2023 | 49 | | Minute Entry for proceedings held before Judge Michael L. Brown: Status Conference held on 12/11/2023 regarding Plaintiff's 2 Motion for Preliminary Injunction. Defendants shall file a response to Plaintiff's motion no later than 1/31/2024. Plaintiff shall file a reply no later than 2/6/2024. The Court SETS a hearing on Plaintiff's motion for preliminary injunction for 2/12/2024 at 10:00 AM in ATLA Courtroom 1906 before Judge Michael L. Brown. The Court STAYS the answer deadline pending its ruling on the motion. Amicus briefs shall be filed on or before 1/8/2024. Hearing Concluded. (Court Reporter Jana Colter)(kng) (Entered: 12/12/2023) |
| 12/14/2023 | 50 | | Letter from Clerk re: LR 83.1 Attorney Admission requirements sent to Lindsey Cassimus. Clerk to follow−up by 12/26/2023. (cpp) (Entered: 12/14/2023) |
| 12/18/2023 | 51 | | NOTICE of Appearance by Stephen John Petrany on behalf of Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls (Petrany, Stephen) (Entered: 12/18/2023) |
| 12/18/2023 | 52 | | APPLICATION for Admission of Jeffrey M. Harris Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13104565).by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. (Petrany, Stephen) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/18/2023) |
| 12/18/2023 | 53 | | APPLICATION for Admission of Thomas S. Vaseliou Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13104592).by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. (Petrany, Stephen) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/18/2023) |
| 12/18/2023 | 54 | | APPLICATION for Admission of Rachael Tucker Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13104597).by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. (Petrany, Stephen) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/18/2023) |
| 12/19/2023 | | | APPROVAL by Clerks Office re: 52 APPLICATION for Admission of Jeffrey M. Harris Pro Hac Vice (Application fee $ 100, receipt number AGANDC−13104565). Attorney Jeffrey Matthew Harris added appearing on behalf of Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, |

| | | | |
|---|---|---|---|
| | | | Chad I. Lohman, Tyrone Oliver, Randy Sauls. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/19/2023) |
| 12/19/2023 | | | RETURN of 53 APPLICATION for Admission of Thomas S. Vaseliou Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13104592) to attorney for correction. Reason for return: Residential and business address should not be the same. Please correct and resubmit. (rvb) (Entered: 12/19/2023) |
| 12/19/2023 | | | APPROVAL by Clerks Office re: 54 APPLICATION for Admission of Rachael Tucker Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13104597). Attorney Rachael Tucker added appearing on behalf of Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/19/2023) |
| 12/19/2023 | 55 | | APPLICATION for Admission of Thomas S. Vaseliou Pro Hac Vice.by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. (Petrany, Stephen) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/19/2023) |
| 12/20/2023 | 56 | | ORDER GRANTING 52 Application for Admission Pro Hac Vice of Jeffrey M. Harris. Signed by Judge Michael L. Brown on 12/20/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/20/2023) |
| 12/20/2023 | 57 | | ORDER GRANTING 54 Application for Admission Pro Hac Vice of Rachael Tucker. Signed by Judge Michael L. Brown on 12/20/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/20/2023) |
| 12/20/2023 | | | Clerk's Certificate of Mailing re 57 Order on Application for Admission PHV to Rachael Tucker. (kng) (Entered: 12/20/2023) |
| 12/20/2023 | | | APPROVAL by Clerks Office re: 55 APPLICATION for Admission of Thomas S. Vaseliou Pro Hac Vice (Application fee $ 100, receipt number AGANDC–13104592). Attorney Thomas Samuel Vaseliou added appearing on behalf of Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls. E–filing access may be requested after an order granting the application is entered. (rvb) (Entered: 12/20/2023) |
| 12/20/2023 | 58 | | ORDER GRANTING 55 Application for Admission Pro Hac Vice of Thomas S. Vaseliou. Signed by Judge Michael L. Brown on 12/20/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(kng) (Entered: 12/20/2023) |
| 12/20/2023 | | | Clerk's Certificate of Mailing re 58 Order on Application for Admission PHV to Thomas S. Vaseliou. (kng) (Entered: 12/20/2023) |

| 12/21/2023 | 59 | | RESPONSE in Opposition re 5 MOTION for Relief to Proceed Anonymously and Seal Identity filed by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Cleary, Georgia Department of Corrections, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Tyrone Oliver, Randy Sauls, Skibinski. (Harris, Jeffrey) (Entered: 12/21/2023) |
|---|---|---|---|
| 12/21/2023 | 60 | | PROVISIONALLY SEALED NOTICE Of Filing by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Cleary, Georgia Department of Corrections, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Tyrone Oliver, Randy Sauls re 59 Response in Opposition to Motion, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Harris, Jeffrey) (Entered: 12/21/2023) |
| 12/21/2023 | 61 | | MOTION for Leave to File Matters Under Seal re: 60 Notice of Filing, with Brief In Support by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Cleary, Georgia Department of Corrections, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Tyrone Oliver, Randy Sauls, Skibinski. (Attachments: # 1 Text of Proposed Order)(Harris, Jeffrey) (Entered: 12/21/2023) |
| 12/27/2023 | 62 | | Return of Service Executed by Jane Doe. Anthony Mulloy served on 12/14/2023, answer due 1/4/2024. Served with Summons, Docket, Complaint, Motion for Preliminary Injunction, MOTION for Leave to File Excess Pages for Plaintiff's Memorandum, MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction, MOTION for Relief to Proceed Anonymously and Seal Identity with Brief In Support by Jane Doe, Submission of 2 MOTION for Preliminary Injunction, STANDING ORDER regarding Civil Litigation, MOTION to Expedite Hearing, MOTION to Strike, NOTICE Of Filing Unredacted Exhibits, MOTION for Leave to File Matters Under Seal, Order, Set Hearings , as to Anthony Mulloy. (Murell, Christopher) Modified to accurately reflect e–filed document on 12/28/2023 (kng). (Entered: 12/27/2023) |
| 12/27/2023 | | | Submission of 10 MOTION for Leave to File Matters Under Seal re: 9 Notice of Filing to District Judge Michael L. Brown. (jpk) (Entered: 12/27/2023) |
| 12/28/2023 | | | Submission of 8 MOTION to Strike *R. Doc 4–1 and Substitute Corrected Proposed Order* to District Judge Michael L. Brown. (jpk) (Entered: 12/28/2023) |
| 12/28/2023 | 63 | | ORDER GRANTING Plaintiff's 8 MOTION to Strike R. Doc 4–1 and Substitute Corrected Proposed Order. R. Doc. 4–1 shall be substituted for the Corrected Proposed Order submitted with Plaintiff's present pleading. Signed by Judge Michael L. Brown on 12/28/2023. (kng) (Entered: 12/29/2023) |
| 12/28/2023 | 64 | | SEALED TRANSCRIPT of Proceedings (Status Conference) held on December 11, 2023, before Judge Michael L. Brown. Court Reporter/Transcriber Jana B. Colter. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Redaction requests are due within 21 days of entry. (Attachments: # 1 Notice of Filing Official Transcript) (bgt) (Entered: 12/29/2023) |
| 01/03/2024 | 65 | | NOTICE of Appearance by Beth Boone on behalf of Jewellann Clarke, Latonya James, Wellpath LLC (Boone, Beth) (Entered: 01/03/2024) |

| 01/03/2024 | 66 | | NOTICE of Appearance by Tiffiny Montenegro on behalf of Jewellann Clarke, Latonya James, Wellpath LLC (Montenegro, Tiffiny) (Entered: 01/03/2024) |
|---|---|---|---|
| 01/04/2024 | 67 | | MOTION Motion to Redact and Substitute Exhibits 4 MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction*(R. Doc. 2)*, 2 MOTION for Preliminary Injunction by Jane Doe. (Attachments: # 1 Text of Proposed Order on Motion to Redact and Substitute Exhibits, # 2 Brief Proposed Redacted Memorandum of Law Dkt 2–1, # 3 Appendix Proposed Redacted Appendix Part 1– Dkt 4–2)(Utter, David) Modified to remove double wording on 1/4/2024 (kng). (Entered: 01/04/2024) |
| 01/04/2024 | 68 | | REPLY BRIEF re 5 MOTION for Relief to Proceed Anonymously and Seal Identity filed by Jane Doe. (Palmieri, Nicholas) (Entered: 01/04/2024) |
| 01/08/2024 | 69 | | STATEMENT of Interest by United States . (Hughes, Aileen) Modified on 1/10/2024 to remove all caps text (adg). (Entered: 01/08/2024) |
| 01/08/2024 | 70 | | MOTION for Leave to File Amicus Curiae Brief*in support of Plaintiff's Motion for Preliminary Injunction* with Brief In Support by Network for Victim Recovery of DC (NVRDC). (Attachments: # 1 Brief, # 2 Text of Proposed Order)(Fox, Melissa) (Entered: 01/08/2024) |
| 01/08/2024 | | | Submission of 61 MOTION for Leave to File Matters Under Seal re: 60 Notice of Filing to District Judge Michael L. Brown. (jpk) (Entered: 01/08/2024) |
| 01/08/2024 | 71 | | NOTICE Of Filing Brief of Amicus Curiae ACLU of Georgia in Support of Plaintiff's Motion for Preliminary Injunction by ACLU of Georgia (Spielman, Brian) (Entered: 01/08/2024) |
| 01/09/2024 | 72 | | MOTION for Extension of Time to File Preliminary Injunction Opposition and Continue Hearing by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Anthony Mulloy, Tyrone Oliver, Randy Sauls. (Attachments: # 1 Text of Proposed Order)(Tucker, Rachael) (Entered: 01/09/2024) |
| 01/09/2024 | | | ORDER (by docket entry only) denying Defendants' 72 Motion to Extend Deadline to File Preliminary Injunction Opposition and Continue Hearing. Ordered by Judge Michael L. Brown on 1/9/2024. (jpk) (Entered: 01/09/2024) |
| 01/09/2024 | 73 | | MOTION for Relief to Render Interim Relief in Advance of February 12, 2024 Preliminary Injunction Hearing with Brief In Support by Jane Doe. (Attachments: # 1 Brief Memorandum in Support, # 2 Appendix Exhibit List, # 3 Exhibit A – 2023.12.22 Interim Relief Letter Requests, # 4 Exhibit B – 2024.01.05 Response to Interim Relief Request, # 5 Exhibit C – Email reply to Defendants' Response, # 6 Exhibit D – Defendants' Jan. 7 Email, # 7 Exhibit E – Defendants' Jan. 9 Email, # 8 Exhibit F – Commissary Master Product List 2023, # 9 Text of Proposed Order Proposed Order)(Utter, David) Modified to remove capitalization on 1/11/2024 (kng). (Entered: 01/09/2024) |
| 01/11/2024 | 74 | | ORDER DENYING WITHOUT PREJUDICE Plaintiff's 73 Motion to Render Interim Relief In Advance of February 12, 2024 Preliminary Injunction Hearing. She may refile her motion as one for a TRO or for separate injunctive relief from that she seeks in her prior preliminary injunction motion. Signed by Judge Michael L. Brown on 1/11/2024. (kng) (Entered: 01/11/2024) |
| 01/12/2024 | 75 | | |

| | | | ORDER GRANTING IN PART and DENYING IN PART Plaintiff's 5 Motion for Leave to Proceed Anonymously and Motion for Leave to File Documents Revealing Identity Under Seal. Signed by Judge Michael L. Brown on 1/12/2024. (kng) (Entered: 01/12/2024) |
|---|---|---|---|
| 01/12/2024 | 76 | | Certificate of Consent to Withdraw Francesca Eick as Attorney by Jane Doe. (Eick, Francesca) Modified on 2/1/2024 to edit text (jpk). (Entered: 01/12/2024) |
| 01/19/2024 | 77 | | NOTICE of Appearance by Michael Geoffrey Frankson on behalf of W. Ausborn, Rhonda Billings, Bowling, Cleary, Jeremy Lane, Sidney Moore, Skibinski (Frankson, Michael) (Entered: 01/19/2024) |
| 01/19/2024 | 78 | | MOTION to Redact 64 Transcript, by Jane Doe. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A−Transcript_ Doe v Department of Corrections, et al. Final_Redacted)(Utter, David) (Entered: 01/19/2024) |
| 01/23/2024 | 79 | | ORDER GRANTING IN PART and DENYING IN PART 78 Motion to Redact 64 Transcript. The Court will redact the following lines from the public version of the transcript of the December 11, 2023 hearing (Dkt. 64): page 28 lines 13 through 23. Signed by Judge Michael L. Brown on 1/23/2024. (tas) (Entered: 01/23/2024) |
| 01/23/2024 | 80 | | Redaction of 64 Transcript, (Attachments: # 1 Notice of Filing Transcript) (jbc) (Entered: 01/23/2024) |
| 01/25/2024 | 81 | | MOTION for Leave to File Matters Under Seal re: 75 Order on Motion for Relief *Plaintiff's Unopposed Motion to File Application for Writ Of Habeas Corpus Ad Testificandum Under Seal* by Jane Doe. (Attachments: # 1 Appendix Insert−Application for writ, # 2 Appendix Proposed Writ Insert)(Utter, David) Modified to remove capitalization on 1/26/2024 (kng). (Entered: 01/25/2024) |
| 01/25/2024 | 82 | | SEALED per 1/25/2024 docket order NOTICE Of Filing by Jane Doe re 75 Order on Motion for Relief, 81 MOTION for Leave to File Matters Under Seal re: 75 Order on Motion for Relief *PLAINTIFFS UNOPPOSED MOTION TO FILE APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM UNDER SEAL* (Attachments: # 1 Text of Proposed Order Proposed Writ Order)(Utter, David) Modified on 1/25/2024 to edit text (jpk). (Entered: 01/25/2024) |
| 01/25/2024 | | | Submission of 67 MOTION to Redact and Substitute Exhibits re 4 MOTION for Leave to File Appendix in Support Plaintiff's Motion for Preliminary Injunction(*R. Doc. 2*), 2 MOTION for Preliminary Injunction to District Judge Michael L. Brown. (jpk) (Entered: 01/25/2024) |
| 01/25/2024 | | | ORDER (by docket entry only) granting Plaintiff's 81 Motion for Leave to File Matters Under Seal. Ordered by Judge Michael L. Brown on 1/25/2024. (jpk) (Entered: 01/25/2024) |
| 01/25/2024 | 83 | | SEALED Writ of Habeas Corpus ad Testificandum Issued as to Jane Doe for 2/12/2024. (jpk) (jpk). (Entered: 01/25/2024) |
| 01/26/2024 | | | Submission of 70 MOTION for Leave to File Amicus Curiae Brief*in support of Plaintiff's Motion for Preliminary Injunction* to District Judge Michael L. Brown. (jpk) (Entered: 01/26/2024) |

| 01/29/2024 | 84 | | MOTION Unopposed Motion for Leave to File a Consolidated Response and Brief in Excess of Page Limits with Brief In Support by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Jewellann Clarke, Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Skibinski, Wellpath LLC. (Attachments: # 1 Text of Proposed Order)(Harris, Jeffrey) (Entered: 01/29/2024) |
|---|---|---|---|
| 01/29/2024 | 85 | | ORDER GRANTING Defendants 84 Unopposed Motion for Leave to File a Consolidated Response and Brief in Excess of Page Limits. Signed by Judge Michael L. Brown on 1/29/2024. (kng) (Entered: 01/29/2024) |
| 01/31/2024 | 86 | | RESPONSE in Opposition re 2 MOTION for Preliminary Injunction filed by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Jewellann Clarke, Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Skibinski, Wellpath LLC. (Attachments: # 1 Exhibit Holt Declaration, # 2 Exhibit Jones Declaration, # 3 Exhibit Mulloy Declaration, # 4 Exhibit Parks Declaration, # 5 Exhibit Skibinski Declaration, # 6 Exhibit Levine Declaration, # 7 Exhibit Kaliebe Declaration)(Harris, Jeffrey) (Entered: 01/31/2024) |
| 01/31/2024 | 87 | | PROVISIONALLY SEALED NOTICE Of Filing Vaseliou Declaration and Exhibits by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Jewellann Clarke, Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Skibinski, Wellpath LLC re 86 Response in Opposition to Motion,, (Harris, Jeffrey) (Entered: 01/31/2024) |
| 01/31/2024 | 88 | | MOTION for Leave to File Matters Under Seal re: 86 Response in Opposition to Motion,, 87 Notice of Filing,, with Brief In Support by W. Ausborn, Rhonda Billings, Bowling, Centurion Health, Jewellann Clarke, Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, Inc., Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Skibinski, Wellpath LLC. (Attachments: # 1 Text of Proposed Order)(Harris, Jeffrey) (Entered: 01/31/2024) |
| 02/06/2024 | 89 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by Jane Doe. (Attachments: # 1 Text of Proposed Order Proposed order regarding Motion to Bring in Electronics)(Palmieri, Nicholas) (Entered: 02/06/2024) |
| 02/06/2024 | 90 | | REPLY BRIEF re 2 MOTION for Preliminary Injunction filed by Jane Doe. (Attachments: # 1 Appendix)(Dangaran, D.) (Entered: 02/06/2024) |
| 02/06/2024 | 91 | | PROVISIONALLY SEALED NOTICE Of Filing by Jane Doe re 90 Reply Brief *Sealed Exhibits* (Dangaran, D.) (Entered: 02/06/2024) |
| 02/06/2024 | 92 | | MOTION for Leave to File Matters Under Seal re: 91 Notice of Filing by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Dangaran, D.) (Entered: 02/06/2024) |

| 02/07/2024 | 93 | | ORDER GRANTING 89 Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom on 2/12/2024 at 10:00 a.m. This Order shall be effective until the conclusion of the hearing. Signed by Judge Michael L. Brown on 2/7/2024. (kng) (Entered: 02/07/2024) |
|---|---|---|---|
| 02/07/2024 | 94 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom with Brief In Support by Jewellann Clarke, Georgia Department of Corrections, Latonya James, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Wellpath LLC. (Attachments: # 1 Text of Proposed Order)(Harris, Jeffrey) (Entered: 02/07/2024) |
| 02/07/2024 | 95 | | ORDER GRANTING 94 Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom on 2/12/2024 at 10:00 a.m. This Order shall be effective until the conclusion of the hearing. Signed by Judge Michael L. Brown on 2/7/2024. (kng) (Entered: 02/07/2024) |
| 02/10/2024 | 96 | | PROVISIONALLY SEALED NOTICE Of Filing by Jane Doe (Attachments: # 1 Exhibit Deposition Transcript of Defendant DeShawn Jones, # 2 Exhibit Notice of Deposition to DeShawn Jones, # 3 Exhibit Declaration of DeShawn Jones, # 4 Exhibit GDC SOP 228.02, # 5 Exhibit Medical Report Regarding Plaintiff Jane Doe, # 6 Exhibit Partial Grievance Documents of Plaintiff Jane Doe, # 7 Exhibit Deposition Transcript of Defendant Dr. Sharon Lewis, # 8 Exhibit GDC SOP 507.04.68, # 9 Exhibit GDC SOP 507.04.07, # 10 Exhibit Declaration of Dr. Sharon Lewis, # 11 Exhibit Medical Report Regarding Plaintiff Jane Doe)(Palmieri, Nicholas) (Entered: 02/10/2024) |
| 02/10/2024 | 97 | | MOTION for Leave to File Matters Under Seal re: 96 Notice of Filing,, *Deposition Transcript and Related Exhibits* by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Palmieri, Nicholas) (Entered: 02/10/2024) |
| 02/11/2024 | 98 | | First MOTION to Exclude Expert Opinions of Dr. Kristopher Kaliebe with Brief In Support by Jane Doe. (Attachments: # 1 Memo of Law in Support of Motion to Exclude, # 2 Excerpts of Deposition of Dr. Kaliebe, # 3 Text of Proposed Order)(Palmieri, Nicholas) (Entered: 02/11/2024) |
| 02/11/2024 | 99 | | First MOTION to Exclude Expert opinion of Dr. Stephen Levine with Brief In Support by Jane Doe. (Attachments: # 1 Brief Meme in Support of Plaintiff's Motion to Exclude, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Text of Proposed Order)(Palmieri, Nicholas) (Entered: 02/11/2024) |
| 02/11/2024 | 100 | | STIPULATION re 1 Complaint, *Leave to File Amendment to Correct Misnomers and Remove Defendant* by Jane Doe. (Attachments: # 1 Exhibit Proposed First Amended Complaint, # 2 Text of Proposed Order)(Dangaran, D.) (Entered: 02/11/2024) |
| 02/12/2024 | 101 | | SEALED Writ of Habeas Corpus ad Testificandum Issued as to Jane Doe for 2/13/2024. (jpk) (jpk). (Entered: 02/12/2024) |
| 02/12/2024 | 103 | | Minute Entry for proceedings held before Judge Michael L. Brown: Motion Hearing held on 2/12/2024 re 2 MOTION for Preliminary Injunction filed by Jane Doe. Plaintiff called the following witnesses: Jane Doe, Isabel Lowell, and Jeehea Sonya Haw. The Defendants called the following witness: Kristopher Kaliebe. The following exhibits were admitted: Plaintiff's exhibits 1–33; Defense exhibits 1–80; Court's exhibit 1 (to be filed by Defendants); |

| | | | |
|---|---|---|---|
| | | | Plaintiff's rebuttal exhibit 1. Hearing not concluded. Court adjourned and will reconvene at 10:00 a.m. on 2/13/2024. Exhibits retained to be forwarded to the Clerk's Office. (Court Reporter Jana Colter)(kng) Modified on 2/13/2024 to edit text (jpk). (Additional attachment(s) added on 2/13/2024: # <u>1</u> Corrected Minute Sheet) (jpk). (Entered: 02/13/2024) |
| 02/13/2024 | <u>102</u> | | SEALED COURT EXHIBIT 1 admitted at the <u>103</u> Preliminary Injunction Hearing. (Harris, Jeffrey) Modified on 2/13/2024 to edit text (jpk). (Entered: 02/13/2024) |
| 02/13/2024 | | | ORDER (by docket entry only): The Court ORDERS Plaintiff to promptly file on the docket her amended complaint (Dkt. 100–1). Ordered by Judge Michael L. Brown on 2/13/2024. (jpk) (Entered: 02/13/2024) |
| 02/13/2024 | <u>104</u> | | Minute Entry for proceedings held before Judge Michael L. Brown: Hearing continued on Plaintiff's <u>2</u> Motion for Preliminary Injunction. A separate order is forthcoming. The Court DENIED without prejudice Plaintiff's <u>98</u> and <u>99</u> Motions to Exclude Expert Opinion. The following exhibit was admitted: Plaintiff's exhibit 34. Hearing Concluded. Exhibits retained to be forwarded to the Clerk's Office.(Court Reporter Jana Colter)(kng) (Entered: 02/13/2024) |
| 02/13/2024 | | | ORDER (by docket entry only): The Court ORDERS Defendants, no later than February 16, 2024, to file under seal the video admitted at the preliminary injunction hearing as Defense Exhibit 80. Ordered by Judge Michael L. Brown on 2/13/2024. (jpk) (Entered: 02/13/2024) |
| 02/13/2024 | <u>105</u> | | First AMENDED COMPLAINT against All Defendants filed by Jane Doe.(Dangaran, D.) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 02/13/2024) |
| 02/15/2024 | <u>106</u> | | SEALED EXHIBITS. (Harris, Jeffrey) (Entered: 02/15/2024) |
| 02/15/2024 | <u>107</u> | | NOTICE by Jane Doe re <u>2</u> MOTION for Preliminary Injunction *Notice of Supplemental Authority* (Attachments: # <u>1</u> Exhibit A – Findings of fact and conclusions of law (Soneeya – ecf no. 442))(Palmieri, Nicholas) (Entered: 02/15/2024) |
| 02/16/2024 | <u>108</u> | | SEALED PLAINTIFF'S EXHIBITS (Documents) admitted and retained at the <u>103</u> , <u>104</u> Motion Hearings have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # <u>1</u> Exhibit 4, # <u>2</u> Exhibit 5, # <u>3</u> Exhibit 6, # <u>4</u> Exhibit 7, # <u>5</u> Exhibit 8, # <u>6</u> Exhibit 9, # <u>7</u> Exhibit 10, # <u>8</u> Exhibit 11, # <u>9</u> Exhibit 12, # <u>10</u> Exhibit 13, # <u>11</u> Exhibit 14, # <u>12</u> Exhibit 15, # <u>13</u> Exhibit 16, # <u>14</u> Exhibit 17, # <u>15</u> Exhibit 18, # <u>16</u> Exhibit 19, # <u>17</u> Exhibit 32, # <u>18</u> Exhibit 34)(kng) (Entered: 02/16/2024) |
| 02/16/2024 | <u>109</u> | | SEALED DEFENDANT'S EXHIBITS (Documents) admitted and retained at the <u>103</u> Motion Hearing have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # <u>1</u> Exhibit 14, # <u>2</u> Exhibit 18, # <u>3</u> Exhibit 20, # <u>4</u> Exhibit 21, # <u>5</u> Exhibit 22, # <u>6</u> Exhibit 23, # <u>7</u> Exhibit 24, # <u>8</u> Exhibit 25, # <u>9</u> Exhibit 26, # <u>10</u> Exhibit 27, # <u>11</u> Exhibit 28, # <u>12</u> Exhibit 29, # <u>13</u> Exhibit 30, # <u>14</u> Exhibit 31, # <u>15</u> Exhibit 32, # <u>16</u> Exhibit 33, # <u>17</u> Exhibit 34, # <u>18</u> Exhibit 35, # <u>19</u> Exhibit 36, # <u>20</u> Exhibit 37, # <u>21</u> Exhibit 38, # <u>22</u> Exhibit 39, # <u>23</u> Exhibit 40, # <u>24</u> Exhibit 41, # <u>25</u> Exhibit 49, |

| | | |
|---|---|---|
| | | # <u>26</u> Exhibit 59, # <u>27</u> Exhibit 60, # <u>28</u> Exhibit 61, # <u>29</u> Exhibit 62, # <u>30</u> Exhibit 63, # <u>31</u> Exhibit 64, # <u>32</u> Exhibit 65, # <u>33</u> Exhibit 66, # <u>34</u> Exhibit 67, # <u>35</u> Exhibit 68, # <u>36</u> Exhibit 69, # <u>37</u> Exhibit 70, # <u>38</u> Exhibit 71, # <u>39</u> Exhibit 72, # <u>40</u> Exhibit 73, # <u>41</u> Exhibit 74, # <u>42</u> Exhibit 75, # <u>43</u> Exhibit 76, # <u>44</u> Exhibit 77, # <u>45</u> Exhibit 78, # <u>46</u> Exhibit 79)(kng) (Entered: 02/16/2024) |
| 02/16/2024 | <u>110</u> | NOTICE TO COUNSEL OF RECORD for Jane Doe regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS pursuant to Local Rule 79.1D. Re: <u>108</u> Exhibits–SEALED. (kng) (kng). (Entered: 02/16/2024) |
| 02/16/2024 | <u>111</u> | NOTICE TO COUNSEL OF RECORD for Defendants regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS pursuant to Local Rule 79.1D. Re: <u>109</u> Exhibits–SEALED. (kng) (kng). (Entered: 02/16/2024) |
| 02/16/2024 | <u>112</u> | WAIVER OF SERVICE Returned Executed by MHM Correctional Services, LLC. MHM Correctional Services, LLC waiver mailed on 2/7/2024, answer due 4/8/2024. (Frankson, Michael) (Entered: 02/16/2024) |
| 02/19/2024 | <u>113</u> | RESPONSE re <u>107</u> Notice (Other) *of Supplemental Decision (Soneeya)* filed by Wil Ausborn, Rhonda Billings, Donald Bowling, Centurion Health, Jewellann Clarke, Cathleen Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, LLC, Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Sherri Skibinski, Wellpath LLC. (Harris, Jeffrey) (Entered: 02/19/2024) |
| 02/20/2024 | | Submission of <u>88</u> MOTION for Leave to File Matters Under Seal re: <u>86</u> Response in Opposition to Motion,, <u>87</u> Notice of Filing to District Judge Michael L. Brown. (jpk) (Entered: 02/20/2024) |
| 02/21/2024 | | RECEIPT OF MANUAL FILING: 1 USB (black) received in Atlanta division re <u>106</u> Exhibits–SEALED. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. (jbu) (Entered: 02/21/2024) |
| 02/29/2024 | | Submission of <u>92</u> MOTION for Leave to File Matters Under Seal re: <u>91</u> Notice of Filing; and <u>97</u> MOTION for Leave to File Matters Under Seal re: <u>96</u> Notice of Filing,, *Deposition Transcript and Related Exhibits* to District Judge Michael L. Brown. (jpk) (Entered: 02/29/2024) |
| 02/29/2024 | <u>114</u> | NOTICE by Jewellann Clarke, Latonya James, Wellpath LLC *Supplement to the Record – SEALED* (Montenegro, Tiffiny) (Entered: 02/29/2024) |
| 02/29/2024 | <u>115</u> | MOTION for Leave to File Matters Under Seal re: <u>114</u> Notice (Other) by Jewellann Clarke, Latonya James, Wellpath LLC. (Montenegro, Tiffiny) (Entered: 02/29/2024) |
| 02/29/2024 | <u>116</u> | EXHIBITS (Plaintiff's Exhibit: 1 Rebuttal) admitted and retained at the <u>104</u> Order on Motion to Exclude, Motion Hearing, <u>103</u> Motion Hearing, have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # <u>1</u> Pltf Ex. 1(Rebuttal))(sct) (Entered: 03/06/2024) |
| 02/29/2024 | <u>118</u> | EXHIBITS (Defendant's Exhibits: 1–13,15–17,19,42–48,50–58) admitted and retained at the <u>104</u> Order on Motion to Exclude, Motion Hearing, <u>103</u> Motion Hearing, have been received from Courtroom Deputy and placed in the custody |

| | | | |
|---|---|---|---|
| | | | of the Records Clerks. (Attachments: # 1 Deft Ex. 1, # 2 Deft Ex. 2, # 3 Deft Ex. 3, # 4 Deft Ex. 4, # 5 Deft Ex. 5, # 6 Deft Ex. 6, # 7 Deft Ex. 7, # 8 Deft Ex. 8, # 9 Deft Ex. 9, # 10 Deft Ex. 10, # 11 Deft Ex. 11, # 12 Deft Ex. 12, # 13 Deft Ex. 13, # 14 Deft Ex. 15, # 15 Deft Ex. 16, # 16 Deft Ex. 17, # 17 Deft Ex. 19, # 18 Deft Ex. 42, # 19 Deft Ex. 43, # 20 Deft Ex. 44, # 21 Deft Ex. 45, # 22 Deft Ex. 46, # 23 Deft Ex. 47, # 24 Deft Ex. 48, # 25 Deft Ex. 50, # 26 Deft Ex. 51(1), # 27 Deft Ex. 51(2), # 28 Deft Ex. 52, # 29 Deft Ex. 53, # 30 Deft Ex. 54, # 31 Deft Ex. 55, # 32 Deft Ex. 56, # 33 Deft Ex. 57, # 34 Deft Ex. 58)(sct) (Additional attachment(s) added on 3/11/2024: # 35 Deft Ex. 51 (rescan), # 36 Deft Ex. 56 (rescan), # 37 Deft Ex. 57 (rescan), # 38 Exhibit 58 (rescan)) (kdw). (Entered: 03/06/2024) |
| 02/29/2024 | 120 | | EXHIBITS (Plaintiff's Exhibits: 1–3 and 20–31) admitted and retained at the 104 Order on Motion to Exclude, Motion Hearing, 103 Motion Hearing, have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # 1 Pltf Ex. 1, # 2 Pltf Ex. 2, # 3 Pltf Ex. 3, # 4 Pltf Ex. 20, # 5 Pltf Ex. 21, # 6 Pltf Ex. 22, # 7 Pltf Ex. 23, # 8 Pltf Ex. 24, # 9 Pltf Ex. 25, # 10 Pltf Ex. 26–1, # 11 Pltf Ex. 26–2, # 12 Pltf Ex. 27, # 13 Pltf Ex. 28, # 14 Pltf Ex. 29, # 15 Pltf Ex. 30, # 16 Pltf Ex. 31)(sct) (Entered: 03/06/2024) |
| 03/06/2024 | 117 | | NOTICE TO PLAINTIFF'S COUNSEL OF RECORD regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS from the preliminary injunction hearing held on February 12, 2024 and February 13, 2024 pursuant to Local Rule 79.1D. Re: 116 Exhibits, (sct) (Entered: 03/06/2024) |
| 03/06/2024 | 119 | | NOTICE TO DEFENDANT'S COUNSEL OF RECORD regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS from the preliminary injunction hearing held on February 12, 2024 and February 13, 2024 pursuant to Local Rule 79.1D. Re: 118 Exhibits, (sct) (Entered: 03/06/2024) |
| 03/06/2024 | 121 | | NOTICE TO PLAINTIFF'S COUNSEL OF RECORD regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS from the preliminary injunction hearing held on February 12, 2024 and February 13, 2024 pursuant to Local Rule 79.1D. Re: 120 Exhibits, (sct) (Entered: 03/06/2024) |
| 03/14/2024 | 122 | | NOTICE TO COURT regarding RECLAMATION AND DISPOSITION OF UNCLAIMED EXHIBITS pursuant to Local Rule 79.1D(2) filed by Jane Doe Re: 116 Exhibits,. Exhibits to be Destroyed.. (Dangaran, D.) (Entered: 03/14/2024) |
| 03/14/2024 | 123 | | NOTICE TO COURT regarding RECLAMATION AND DISPOSITION OF UNCLAIMED EXHIBITS pursuant to Local Rule 79.1D(2) filed by Jane Doe Re: 120 Exhibits,,. Exhibits to be Destroyed.. (Dangaran, D.) (Entered: 03/14/2024) |
| 03/18/2024 | | | Submission of 115 MOTION for Leave to File Matters Under Seal re: 114 Notice (Other) to District Judge Michael L. Brown. (jpk) (Entered: 03/18/2024) |
| 03/25/2024 | 124 | | TRANSCRIPT of Proceedings (Preliminary Injunction Hearing) held on 02/12/2024, before Judge Michael L. Brown. Court Reporter/Transcriber Jana B. Colter, FAPR, RDR, CRR, CRC. A full directory of court reporters and |

| | | | |
|---|---|---|---|
| | | | their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/15/2024. Redacted Transcript Deadline set for 4/25/2024. Release of Transcript Restriction set for 6/24/2024. (Attachments: # 1 Notice of Filing Transcript) (jbc) (Entered: 03/25/2024) |
| 03/25/2024 | 125 | | TRANSCRIPT of Proceedings (Preliminary Injunction Hearing) held on 02/13/2024, before Judge Michael L. Brown. Court Reporter/Transcriber Jana B. Colter, FAPR, RDR, CRR, CRC. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/15/2024. Redacted Transcript Deadline set for 4/25/2024. Release of Transcript Restriction set for 6/24/2024. (Attachments: # 1 Notice of Filing Transcript) (jbc) (Entered: 03/25/2024) |
| 04/10/2024 | 126 | | STRUCK PER 131 ORDER NOTICE by Jane Doe re 2 MOTION for Preliminary Injunction *Notice of Supplemental Authority* (Attachments: # 1 Exhibit A – Order Adopting Magistrate's R&R, # 2 Exhibit B – Magistrate Judge's Report and Recommendation)(Palmieri, Nicholas) Modified to note struck on 4/17/2024 (kng). (Entered: 04/10/2024) |
| 04/10/2024 | 127 | | MOTION to Strike *R. Doc. 126 and Substitute Corrected Notice of Supplemental Authority* by Jane Doe. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Corrected Notice of Supplemental Authority)(Palmieri, Nicholas) (Entered: 04/10/2024) |
| 04/12/2024 | 128 | | PROVISIONALLY SEALED RESPONSE re 126 Notice (Other), filed by Wil Ausborn, Rhonda Billings, Donald Bowling, Centurion Health, Jewellann Clarke, Cathleen Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, LLC, Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Sherri Skibinski, Wellpath LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Harris, Jeffrey) (Entered: 04/12/2024) |
| 04/12/2024 | 129 | | MOTION for Leave to File Matters Under Seal re: 128 Response (Non–Motion),, by Wil Ausborn, Rhonda Billings, Donald Bowling, Centurion Health, Jewellann Clarke, Cathleen Cleary, Georgia Department of Corrections, Latonya James, DeShawn Jones, Jeremy Lane, Sharon Lewis, Chad I. Lohman, MHM Correctional Services, LLC, Sidney Moore, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls, Sherri Skibinski, Wellpath LLC. (Attachments: # 1 Text of Proposed Order)(Harris, Jeffrey) (Entered: 04/12/2024) |
| 04/15/2024 | 130 | | Transcript Redaction Request re 124 Transcript,, by attorney Nicholas Frank Palmieri, III. (Attachments: # 1 Exhibit A – Proposed Redaction to Transcript of Feb. 12 Hearing)(Palmieri, Nicholas) (Entered: 04/15/2024) |

| 04/17/2024 | 131 | | ORDER GRANTING IN PART and DENYING IN PART Plaintiff's 2 Motion for Preliminary Injunction. The Court GRANTS Plaintiff's 127 Motion to Strike R. Doc. 126 and Substitute Corrected Notice of Supplemental Authority and STRIKES Docket No. 126. Consistent with the Court's discussion in this Order, the Court ORDERS Defendants to provide Plaintiff access to breast and buttock padding and hair removal cream until the HRT has the intended impact on Plaintiff's body. The Court further ORDERS that Defendants provide a status update about Plaintiff's surgical consultation within 7 days from the date of this Order, and then every 30 days thereafter. Signed by Judge Michael L. Brown on 4/17/2024. (kng) (Entered: 04/17/2024) |
| 04/24/2024 | 132 | | STATUS REPORT by Jewellann Clarke, Latonya James, Wellpath LLC. (Montenegro, Tiffiny) (Entered: 04/24/2024) |
| 04/25/2024 | 133 | | NOTICE OF APPEAL as to 131 Order on Motion for Preliminary Injunction,,, Order on Motion to Strike,, by Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Anthony Mulloy, Tyrone Oliver, Jamal Kinte Roberts, Randy Sauls. Case Appealed to USCA – 11th Circuit. Filing fee $ 605, receipt number AGANDC–13391824. Transcript Order Form due on 5/9/2024 (Harris, Jeffrey) (Entered: 04/25/2024) |
| 04/26/2024 | 134 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 133 Notice of Appeal, filed by Georgia Department of Corrections, Anthony Mulloy, Jamal Kinte Roberts, DeShawn Jones, Randy Sauls, Tyrone Oliver, Chad I. Lohman and Sharon Lewis. (pjm) (Entered: 04/26/2024) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Jane Doe,

                    Plaintiff,

v.                                          Case No. 1:23-cv-5578-MLB

Georgia Department of
Corrections, et al.,

                    Defendants.

_____/

## **<u>ORDER</u>**

Plaintiff—a transgender woman incarcerated by the Georgia Department of Corrections ("GDC")—claims Defendants are violating her constitutional rights, the Americans with Disabilities Act, and the Rehabilitation Act by refusing to provide her medical care necessary to treat her gender dysphoria. (Dkt. 1.) Plaintiff seeks preliminary injunctive relief, asking the Court to order Defendants immediately to provide her (1) an evaluation for gender-affirming surgery (and, if indicated, the surgery itself), (2) adequate hormone replacement therapy, (3) gender-affirming commissary items, and (4) a transfer to a women's

prison. (Dkt. 2-1 at 1–2.)[1] Defendants oppose. (Dkt. 86.) The Court grants Plaintiff's third request in part but denies her other requests.

## I. Background

Plaintiff has been serving a life sentence in GDC custody since 1992. (Dkts. 4-2 at 8–9; 86-2 ¶ 26; 109-4 at 3–4.) In 1993 and 1994, a GDC clinical director diagnosed her with a "gender identity disorder" and a GDC psychiatrist found she had a "history of 'transsexualism.'" (Dkt. 4-2 at 11.) From 1992 until 2015, Defendant provided Plaintiff only individual and group psychotherapy for the "anxiety and distress" associated with her discordant gender identity. (Dkt. 4-2 at 11.) Plaintiff attempted self-castration in 1992 and suicide in 1998, 1999, and 2017. (Dkt. 4-2 at 12, 18, 23.)

In 2015, Plaintiff's treating psychologist diagnosed her with gender dysphoria. (Dkt. 4-2 at 12–13.) She then "notified medical staff of [her] desire to start" hormone replacement therapy ("HRT"). (Dkt. 4-2 at 13–

---

[1] Plaintiff named 20 entities or individuals as defendants, including GDC, GDC officials (some in their official capacities and some in their individual capacities), and private healthcare companies that provide medical services to inmates. (Dkt. 1.) The Court generally refers to all the defendants as "Defendants" and identifies allegations and evidence specific to individual defendants where appropriate.

2

14.)  Medical staff referred her to an endocrinologist and allowed her to begin some HRT "right away."  (Dkt. 4-2 at 13–14.)  In January 2016, she met with Dr. Anthony Mulloy, an endocrinologist treating GDC inmates. (Dkts. 4-2 at 18; 86-3 ¶ 1.)  Dr. Mulloy prescribed Plaintiff 2 mg of estradiol (a feminizing hormone) and 50 mg of spironolactone (a testosterone blocker).  (*Id.*)  He raised the dosage gradually until 2019, ultimately prescribing 10 mg of estradiol every other week and 200 mg of spironolactone daily.  (Dkt. 4-2 at 14.)  As a result of that treatment, Plaintiff "developed breasts," her "baldness slowed," her "facial and body hair was suppressed," "fat redistributed around [her] thighs, hips, and buttocks," and her "penis and testicles reduced in size."  (Dkt. 4-2 at 16.) Plaintiff testified by declaration that her distress lessened because of those changes to her body.  (*Id.*)

In June 2019, Plaintiff's primary care physician discontinued her HRT.  (Dkts. 4-2 at 18; 86-3 ¶ 9.)  According to Plaintiff, her physician was "concerned about exacerbations to [her] hypertension as well as [her] age and the effect that . . . [e]stradiol was having on [her] health."  (Dkt. 124 at 19.)  Plaintiff "reluctantly . . . discontinued use" of HRT.  (Dkt. 124 at 19–20.)  Her "secondary sex characteristics, including [her] breasts,

3

were significantly reduced." (Dkt. 124 at 21.) All the feminization she had achieved through HRT "inverted," and she "no longer looked effeminate." (Dkt. 124 at 21–22.) This caused her severe "depression, anxiety, [and] thoughts of suicide." (Dkt. 124 at 22.) Plaintiff testified she began "banging [her] head and [her] arms on lockboxes and the walls to reduce the stress that [she] was under to take [her] mind off of self-castration." (*Id.*) Experiencing what she described as "deep, dark, all-consuming depression" and "unbearable" emotional pain from "how [she] felt when [she saw] her body," Plaintiff attempted suicide a fourth time in December 2019. (*Id.*) Plaintiff asked to restart HRT in March 2020, but her regular physician denied that request. (Dkts. 4-2 at 21–22.) Plaintiff suffered more depression and engaged in more self-injurious behavior. (Dkt. 4-2 at 23–24.)

Plaintiff testified that once she "received a contraindication for HRT," she "doubled down in [her] efforts to obtain gender-affirming surgeries in an attempt to maintain [her] feminine gender expression." (Dkt. 4-2 at 24.) From mid-2019 to early 2022 (while housed at Georgia State Prison), Plaintiff repeatedly asked her mental health counselors to restart HRT and let her speak with doctors about gender-affirming

4

surgery. (*Id.*) They refused those requests. (*Id.*) GDC transferred Plaintiff to Ware State Prison in early 2022. (Dkt. 4-2 at 25.) According to Plaintiff, there was "some movement" after she filed requests at that facility—specifically an evaluation by a psychiatrist with Defendant MHM Correctional Services, Inc. ("MHM") (a company that provides mental health services to inmates in GDC facilities) who referred her back to Dr. Mulloy. (*Id.*) That did not happen immediately because "GDC did not properly schedule [her] to see" him. (Dkt. 4-2 at 25.)

Plaintiff testified that, in March 2022, doctors at "multiple facilities across Georgia" met to discuss her treatment plan. (Dkt. 4-2 at 26–27.) She says her psychiatrist then told her the psychiatrist "could not conduct a clinical assessment and referral for the surgeries [Plaintiff] had requested because the higher ups at MHM forbid them from performing psychological assessments for gender-affirming surgery." (Dkt. 4-2 at 27.) After receiving that news, Plaintiff continued her self-injurious behavior, including slamming her head against the wall. (*Id.*)

GDC subsequently evaluated Plaintiff's mental health and "enhanced [her] level of mental health services to Level III, 'inpatient, supportive living.'" (*Id.*) As a result, GDC transferred her to Phillips

5

State Prison in April 2022, admitted her to the medical crisis stabilization unit, and placed her on long-term suicide prevention status. (Dkt. 4-2 at 27–28.)  GDC has determined Phillips is the "best placement" for Plaintiff based on her security profile and mental health status.  (Dkt. 86-1 ¶¶ 21–22, 26.)  Since arriving there, Plaintiff has been housed in "Administrative Segregation," which she describes as "solitary confinement conditions."  (Dkts. 4-2 at 28; 86-1 ¶ 19; 86-2 ¶ 30.)  At Phillips, Plaintiff submitted medical requests for gender-affirming surgeries and feminizing commissary items like breast and buttock pads, hair removal cream, and a wig.  (Dkt. 4-2 at 25.)  Officials denied those requests.  (Dkt. 124 at 25.)

Between April and July 2022, Plaintiff tried to tell GDC officials about her "severe gender dysphoria and thoughts of self-castration, . . . emphasizing [her] need for gender-affirming surgery."  (Dkt. 4-2 at 26–30.)  While several people did not respond, Plaintiffs claims a nurse and an attending psychologist at Phillips told her GDC was unwilling to provide gender-affirming surgeries.  (*Id.*)  Plaintiff filed grievances with Warden DeShawn Jones, but he denied them.  (Dkts. 4-2 at 29–30; 4-4 at 19–27.)  In his response to one of them, Warden Jones explained that

6

"[d]ue to the Georgia Department of Corrections not having a contract to provide cosmetic surgery, this grievance is denied . . . ." (Dkt. 4-4 at 26.) Plaintiff appealed Jones's decisions, but GDC denied her appeals. (*Id.*)

On June 21, 2022, Plaintiff met with Dr. Donald Bowling, a psychologist and clinical director at Phillips, requesting assessment for surgery. (Dkt. 4-2 at 28–29.) Dr. Bowling purportedly told Plaintiff he was "not qualified to assess" her for "emasculation surgery and breast augmentation." (Dkt. 4-2 at 30.) He also allegedly told her, "If you were to attempt self-castration again, maybe while at the hospital, they'll just go ahead and cut your gonads out." (*Id.*) After the meeting, Plaintiff wrote letters "to those [she] thought could review Dr. Bowling's statements," including MHM staff and MHM's parent company. (Dkt. 4-2 at 31.) No one responded. (*Id.*) A few weeks later, Plaintiff again attempted self-castration by trying to sever her testicles, hoping to "eliminate the source of [her] testosterone that causes [her] distress" and "eliminate this organ from eyesight and from [her] body." (*Id.*) Plaintiff required emergency medical care. (*Id.*) She later sent MHM's parent company a letter, attributing her self-castration attempt to GDC's "unwritten freeze frame blanket custom or policy" to deny gender-

affirming surgery. (Dkt. 4-4 at 50.)

Later that year, Plaintiff met with two MHM psychiatrists—Drs. Jordan Howard and Robert Frady. (Dkt. 4-2 at 34.) Dr. Howard found that Plaintiff "meet[s] criteria for gender dysphoria" and that "affording her basic accommodations impacting her gender appearance may translate to a significant reduction in self-injurious behavior and minimize [her] notable distress related to her gender identity." (Dkt. 9-4 at 11.) According to Plaintiff, Dr. Frady "evaluated [her] and sent a recommendation for surgery to" Defendant Wellpath LLC, which provides medical services to inmates in GDC custody. (Dkt. 4-2 at 36.) She testified that Dr. Frady recommended (among other things) that she receive gender-affirming items like breast pads, buttock pads, gender-affirming surgery, and "medication management." (Id.)[2] She also said

---

[2] Plaintiff cites Dr. Frady's "transcribed" recommendations, which are really her notes of conversations. (Dkts. 4-2 at 36; 9-4 at 54.) As the Court explained, however, Dr. Frady's report contains no "evidence" he "diagnosed the need for gender-affirming surgery." (Dkts. 124 at 224; 108-13 at 3.) Rather, he recommended "further medical assessment by specialty providers." (Dkt. 108-13 at 3.) So, while the Court found Plaintiff "credible" in recounting what she recalled Dr. Frady saying (Dkt. 124 at 224–25), Plaintiff may have misunderstood. In any event, because Defendants have arranged for the evaluation, it really doesn't matter.

that, after receiving Dr. Frady's recommendation, she met with her gender dysphoria treatment committee, which "denied the surgery for non-medical reasons," and said "it was over their heads, . . . because GDC doesn't do gender-affirming surgeries." (Dkt. 4-2 at 36–37.) The committee also denied her requests for feminizing cosmetic items. (Dkt. 4-2 at 37–38.) Plaintiff filed grievances over the committee's decisions, but GDC denied those grievances and her subsequent appeals. (*Id.*)

In April 2023, Plaintiff saw Dr. Mulloy for the first time since stopping HRT in 2019. (Dkt. 4-2 at 38.) To restart HRT, Dr. Mulloy prescribed Plaintiff 100 mg of spironolactone—a lower dose than she had previously taken—and told her "[d]on't expect any feminine changes." (*Id.*) He also said he "would be willing to consider prescribing . . . 1 mg of estradiol," but she would not see any feminizing effects unless she was on a dosage of at least 20 mg. (Dkt. 4-2 at 39.) After her attorneys "submitted a letter to GDC in July," Dr. Mulloy prescribed her 8 mg of estradiol, which he later reduced to 6 mg. (*Id.*) He refused to increase her dosage of spironolactone. (*Id.*) Plaintiff has remained on her current dosage of HRT since that time, other than during a month-long period in August when the medical director at Phillips stopped that treatment over

9

more concerns about her blood pressure. (Dkt. 4-2 at 39–40.) Despite asking for higher doses, Dr. Mulloy has declined to prescribe more than 6 mg of estradiol and 100 mg of spironolactone, saying he "'does not go above 20 mgs for anyone and that he gives the same dosage to all transgender patients in GDC." (Dkt. 4-2 at 40.) Plaintiff has not seen any feminizing changes to her appearance, her body hair continues to grow, and her testicles and penis have not reduced in size. (Dkts. 4-2 at 40; 124 at 71.)

Plaintiff remains incarcerated at Phillips in administrative segregation. (Dkts. 4-2 at 10, 43; 86-2 ¶ 26.) While there, she has had problems with other inmates and guards. (Dkt. 4-2 at 41–44.) At various times, she has not had a working padlock on her cell door. (Dkts. 4-2 at 43–46; 124 at 53–54.) This led to another inmate robbing her and "[a]t least four men enter[ing] [her] cell and proposition[ing] her for sex." (Dkts. 4-2 at 44; 124 at 53–54.) The prison also often fails to provide locks on shower doors. (Dkts. 4-2 at 47; 124 at 55–57.) According to Warden Jones, since July 2022, he has taken steps "to have the locks [on Plaintiff's cell] repaired or replaced as necessary" and to ensure the showers in administrative segregation have "doors with key locks and

10

slide bolts." (Dkt. 86-2 at 4, 6.) Plaintiff's cell "has a key lock and a slide bolt with a padlock." (Dkt. 86-2 at 10.)

In December 2023, Plaintiff filed her motion for preliminary injunction and requested an expedited hearing. (Dkt. 2.) Defendants oppose Plaintiff's motion. (Dkt. 86.) The Court held a hearing on the motion over the course of two days. (Dkts. 103, 104.)

## II.    Discussion

To get injunctive relief, a plaintiff must show (1) "a substantial likelihood of success on the merits," (2) a substantial threat the plaintiff "will suffer an irreparable injury unless the injunction is granted," (3) "the harm from the threatened injury outweighs the harm the injunction would cause the opposing party," and (4) "the injunction would not be adverse to the public interest." *Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 889 (11th Cir. 2023) (internal quotation marks and citation omitted).

### A.    Likelihood of Success on the Merits

Plaintiff says she is likely to succeed on the merits because Defendants have violated the Eighth Amendment by being deliberately indifferent to her serious medical needs and failing to protect her from violence, and because Defendants have violated the ADA and

11

Rehabilitation Act by discriminating against her because of her gender dysphoria. (Dkt. 2-1 at 14–33.) Defendants contend Plaintiff fails to meet the requisite elements of her constitutional and statutory claims. (Dkt. 86.)

### 1.   Eighth Amendment

Plaintiff says Defendants violated the Eighth Amendment by: (1) refusing to provide her medically necessary care to treat her gender dysphoria, including an independent evaluation for gender-affirming surgery (and the surgery itself), adequate HRT that she says includes higher dosages of hormones than Defendants are currently providing, and gender-affirming commissary items; and (2) failing to protect her from violence from inmates and prison staff. (Dkt. 2-1 at 16–33.) Defendants say Plaintiff fails to show they were deliberately indifferent to her medical needs because they provided (and continue to provide) her with an adequate individualized treatment plan, and she cannot show the specific treatment she requests is constitutionally required. (Dkt. 2-1 and 19.) They also argue Plaintiff's failure-to-protect claim fails because she cannot show any serious and imminent threat of violence, since (1) she has never actually been hurt at Phillips, and (2) GDC has

12

addressed many of the problems she complains about at Phillips.  (Dkt.

86 at 33–37.)[3]

### a)    Medically Necessary Care

"The Eighth Amendment's prohibition against 'cruel and unusual

punishments' protects a prisoner from 'deliberate indifference to serious

medical needs.'"  *Kuhne v. Fla. Dept. of Corr.*, 745 F.3d 1091, 1094 (11th

Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   To

---

[3] Defendants also argue a prior settlement agreement between Plaintiff
and certain state officials bars her claims.  (Dkt. 86 at 20.)  As part of
that agreement, Plaintiff accepted $4,000 and released any past or future
claims (including for injunctive relief) against the State of Georgia or its
officials related to "sex reassignment surgery," or "secondary procedures"
like "facial feminization" or "specialty consultation[s]."  (Dkt. 109-2.)
Plaintiff says this agreement is unconscionable, in part because it signed
away her constitutional right to receive necessary medical care.  (Dkt. 90
at 12–13.)  According to Plaintiff, "[t]he waiver of [Plaintiff's] claims for
gender-affirming care has a stifling, oppressive, and life-threatening
effect," such that its enforcement would be "abhorrent to morals and good
conscience."  (Dkt. 90 at 12.)  The Court agrees.  The Eighth Amendment
"'proscribes . . . medical care so unconscionable as to fall below society's
minimum standards of decency.'"  *Gibson v. Collier*, 920 F.3d 212, 216
(5th Cir. 2019).   So, an agreement—like this one—that purports to
prevent Plaintiff from obtaining medical care required by the Eighth
Amendment is "'abhorrent to good morals and conscience'" and
unenforceable under Georgia law.   *Thomas v. T&T Straw, Inc.*, 561
S.E.2d 495, 497 (Ga. Ct. App. 2002) (citation omitted).  Defendants
confirmed they could find no authority saying "the [GDC] can pay
somebody a fairly insignificant amount of money . . . in exchange for
waiving what might later become medically necessary."  (Dkt. 124 at 44.)

support a deliberate indifference claim, a plaintiff must show "'an objectively serious medical need, an objectively insufficient response to that need, subjective awareness of the facts signaling the need, and an actual inference of required action from those facts.'" *Id.* (alteration and citation omitted). Defendants don't dispute either that Plaintiff has gender dysphoria or that gender dysphoria is an objectively serious medical need. But, they say, Plaintiff fails to show they were deliberately indifferent because they provided (and still provide) her adequate care. (Dkt. 86 at 19.)

A defendant exhibits deliberate indifference if he or she "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Hoffer v. Sec'y, Fla. Dept. of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020).[4] The Eighth Amendment

---

[4] In other cases, the Eleventh Circuit has applied a less stringent standard, requiring that a plaintiff show "more than *mere* negligence" to prove deliberate indifference. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (emphasis added) (internal quotation marks and citation omitted); *see also Wade v. McDade*, 67 F.4th 1363, 1371 (11th Cir. 2023) ("For more than 25 years now, our case law regarding a deliberate-indifference claim's mens rea element has been hopelessly confused, resulting in what we'll charitably call a 'mess.'"). The Eleventh Circuit is currently considering that discrepancy. *See id.* (definitively concluding proper standard is more than gross negligence), *reh'g en banc granted and opinion vacated sub nom. Wade v. Ga. Corr. Health, LLC*, 83 F.4th

14

only requires prison officials to provide "'minimally adequate medical care.'"  *Id.* (citation omitted).  But prison officials cannot avoid liability "'simply by providing some measure of treatment.'"  *Jones v. Muskegon Cty.*, 625 F.3d 935, 944 (6th Cir. 2010) (citation omitted).  "[R]esponding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if you will."  *Keohane v. Fla. Dept. of Corr., Sec'y*, 952 F.3d 1257, 1266–67 (11th Cir. 2020).

Given Plaintiff's prior attempts at self-castration and suicide, Defendants clearly know the risk of harm Plaintiff faces from untreated gender dysphoria.  The question is whether the medical care they are providing is adequate to treat that condition.  And, if not, whether Defendants have acted recklessly in refusing to provide what they call "'the more aggressive . . . care that [Plaintiff] desires.'"  (Dkt. 86 at 19 (quoting *Hoffer*, 973 F.3d at 1272).)  The Court concludes Plaintiff is

---

1332 (11th Cir. 2023).  Because the Court concludes Plaintiff can likely meet the higher standard, it necessarily finds she can meet the lower standard.  The Court thus need not wait for the Eleventh Circuit to decide this issue.

likely to succeed on her claim that *some* of the medical care Defendants have provided so far is inadequate to treat her gender dysphoria and that they have acted with deliberate indifference in refusing to provide *some* of the care she seeks—specifically as to the provision of certain commissary items.  But the Court concludes she is unlikely to succeed (at this time) on her claims for the other relief she seeks.

First, as to Plaintiff's request that the Court order Defendants to provide her an independent evaluation for gender-affirming surgery, Defendants have already done that.  (Dkts. 86 at 13; 86-4 ¶¶ 16–19.)  Plaintiff's treating physician says her request for surgery "is being processed and will be presented to the Wellpath gender dysphoria committee," after which Wellpath will make a recommendation "to the GDC statewide Medical Director who then will make the decision on the consult requests."  (Dkt. 86-4 ¶¶ 18–19; Dkt. 125 at 358, 368–372.)  So, to the extent Plaintiff seeks an injunction requiring Defendants to provide an evaluation, that issue is moot.  As for her request that the Court order Defendants to provide her gender-affirming surgery, that issue is not yet ripe, as Defendants have not completed the decision-

16

making process and denied her that surgery.[5]  The Court acknowledges Defendants' representation that "this is an involved deliberate process" that includes a "multidisciplinary committee" and may take time.  (Dkt. 125 at 372–73.)  But the Court reminds Defendants of its directive at the hearing that they provide the Court updates on the committee process.  (Dkt. 125 at 418.)  They have already missed their first update by more than two months.

Second, as to Plaintiff's request for a higher dosage of HRT, Defendants do not dispute that HRT is medically necessary to treat Plaintiff's gender dysphoria.  (Dkts. 124 at 118–22, 157, 225–26; 125 at 285.)  Indeed, Defendants have been providing that care and, at the hearing, admitted their obligation to provide "adequate feminizing hormone therapy."  (Dkt. 125 at 316, 318.)  To be clear, Defendants concede HRT resulting in feminizing changes to Plaintiff's body is

---

[5] Defendants also argue that, because the internal process regarding Plaintiff's request for surgery is not yet complete, the Prison Litigation Reform Act ("PLRA") forecloses her claim, as she has not exhausted her administrative remedies.  (Dkt. 86 at 21.)  Plaintiff insists she exhausted her remedies by filing grievances arguing GDC officials refused to follow her doctor's treatment plan (which included gender-affirming surgery).  (Dkt. 90 at 6–7.)  Because the Court concludes her claim is not yet ripe, the Court need not address exhaustion.

medically necessary for treatment of her gender dysphoria. (Dkt. 124 at 118, 225–26; 125 at 285, 316, 321, 324.) The parties disagree, however, over whether Plaintiff's current dosage is sufficient. Defendants point to the fact that Plaintiff's blood estrogen levels have consistently fallen within the range that Plaintiff's two experts—Drs. Isabel Lowell and Jeehea Haw—say is adequate. (Dkts. 86 at 30; 124 at 104–106, 137.) So that's a good sign. But, Dr. Lowell also says the efficacy of HRT should be measured, not only by lab testing, but also by meeting with the patient and determining if the treatment is relieving her symptoms. (Dkt. 124 at 91–92, 111–15.) Dr. Haw also testified that it would be "part of [a treating physician's] routine evaluation" to "ask[]" the patient about the impact of HRT and to "examin[e] her periodically" regarding any physical and mental changes. (Dkt. 124 at 141.) In other words, "the numbers are a guide, but they need to be dialed in by the impact" on the patient. (Dkt. 124 at 115.) Dr. Lowell testified that in Plaintiff's case, "there's plenty of room to go up in terms of the safety profile" of estradiol. (*Id.*) Dr. Haw similarly explained that "there's certainly room to tweak things," and that it "takes 6 to 12 months sometimes to get the right doses for one individual patient on hormone therapy." (Dkt. 124 at 145–46.) In

18

addition, even though Defendants lowered Plaintiff's estradiol dose because of blood pressure concerns, both her experts explained that a higher dosage would not have negatively affected (or would not affect in the future) her blood pressure. (Dkt. 124 at 93, 133–34, 144–45.)

As the Court explained at the hearing, it finds Plaintiff's experts "very credible," particularly their opinions that to monitor properly the efficacy of Plaintiff's HRT, her treating physician must conduct both lab testing and a physical examination. (Dkt. 125 at 283.) It also finds credible Plaintiff's testimony that she feels her current dosage is inadequate because she is not experiencing hair loss and other feminization like she experienced before 2019. (Dkt. 124 at 71.)

Defendants, while acknowledging the intended result, admit Plaintiff's meetings with Dr. Mulloy are "oftentimes" virtual. (Dkt. 125 at 317.) When asked whether, going forward, Dr. Mulloy will "use the rest of the [testing] protocol of doing physical exams, speaking to her, and adjusting as necessary to get to the right outcome," Defendants say they "believe that he will" based on his declaration. (Dkt. 124 at 317–18.) But his declaration does not support this. He has explained his efforts to monitor Plaintiff's blood tests and adjust her dosages to keep her estrogen

19

and testosterone levels with certain target ranges that are consistent with his professional judgment and Endocrine Society Guidelines. (Dkt. 86-3 at ¶¶ 14-16.) He declares that he makes (and will continue to make) decisions about Plaintiff's treatment based on his "close review of her medical history, regular testing and review of her laboratory values, and the Endocrine Society Guidelines." (Dkt. 86-3 at ¶ 17.) He never says he will provide a physical examination or otherwise consider whether HRT is having the intended feminizing impact.

The evidence before the Court establishes that Plaintiff has not experienced the intended changes to her body so as to relieve her distress. Dr. Haw testified that perhaps she simply has not been on HRT long enough to trigger those changes. (Dkt. 124 at 146–48.) But maybe she needs an increase in her medication. Dr. Mulloy insists her estrogen and testosterone levels (established by blood tests) confirm he is providing her the correct dosages. (Dkt. 86-3 at ¶ 16.) Time will tell. Either way, at this stage, the Court cannot find Plaintiff is likely to succeed on the merits of her claim regarding HRT because, according to Plaintiff's own expert, she has not been on her current dosage long enough to determine whether it is sufficient. But, as the Court already explained, the evidence

20

suggests Dr. Mulloy is not properly examining whether Plaintiff's current HRT regimen is providing the changes to her body that Defendants agree are medically necessary—something common sense (and Plaintiff's experts) suggest he should be doing.[6]  If, after enough time has passed, Plaintiff still has not experienced feminizing changes to her body sufficient to relieve her distress, the Court would probably find her likely to succeed on her claim that Dr. Mulloy is refusing to provide her medically necessary care by declining to judge the HRT's efficacy based on physical changes to Plaintiff's body.  If that becomes the case, Plaintiff should let the Court know, at which point it will be better positioned to address this issue.  Until then, the Court cannot conclude Plaintiff has shown a likelihood of success on her claim that Defendants are violating her Eighth Amendment rights by failing to provide higher dosages of spironolactone and estradiol.

Third and finally, as to Plaintiff's request for gender-affirming

---

[6] The Court says the evidence "suggests" this because Dr. Mulloy has not actually disavowed the need for consideration of physical changes.  He simply did not include it in his description of the care he provides.  Perhaps this was inadvertent as the issue had not yet arisen.  But the Court accepts Plaintiff's experts' opinions that it should be part of the medical protocol to ensure the desired physical changes.

commissary items, Plaintiff seeks access to breast and buttock padding, makeup, wigs, and hair removal cream. (Dkt. 125 at 305.)[7]  At the preliminary injunction hearing, Plaintiff testified she suffers severe distress from the fact that, when she is on too low a dose of HRT, her body hair grows back and she loses feminine bodily proportions. (Dkt. 124 at 28; 52; 70–71.)  She repeatedly pinpointed those two specific issues and explained that they resolve (and significantly ease her distress) when she gets adequate HRT.  She also said that, if she "had access to the makeup, the cosmetic stuff . . . as well as the breast padding, the buttocks padding and the wig, . . . the feminine nature of [her] outlook would look like it did prior to before [she] discontinued hormones."  (Dkt. 124 at 26.)  As the Court already explained, Defendants agree that some level of hormone therapy is medically necessary to treat Plaintiff's dysphoria.  They also agree that "the reason that [Dr. Mulloy] has provided hormone therapy is to have the feminizing impact [on Plaintiff] that it typically has."  (Dkt. 125 at 316, 321 (agreeing that hormone treatment should

---

[7] Plaintiff also asked for access to bras and female undergarments but conceded Warden Jones has already allowed those items. (Dkt. 125 at 304.)  So, the Court has narrowed its analysis to whether Plaintiff is entitled to the four items in dispute.

have "specific outcome" of feminization), 324 (agreeing that "Dr. Mulloy wants to deliver what [Plaintiff] wants to receive").) Dr. Lowell testified that gender-affirming cosmetic items are medically necessary because "[t]hey decrease that extreme distress that's associated with gender dysphoria," and advised that, while Defendants attempt to get Plaintiff to the right level of HRT, they should provide these items in the meantime to alleviate Plaintiff's symptoms. (Dkt. 124 at 95.) She was a credible witness. Her testimony also makes sense. If all the parties agree that Plaintiff needs bodily feminization to ease her dysphoria symptoms—and that the right level of HRT will ultimately provide that relief—it seems they should also agree that she should receive cosmetic items that can provide some level of that relief in the interim.

Defendants say they have not provided Plaintiff these items because they pose a security risk. (Dkts. 86 at 24–25; 126 at 332.) A fair response. They argue "[o]fficials . . . do not act with deliberate indifference when they act based on rational security concerns." (Dkt. 86 at 18.) The Court agrees. *See Keohane*, 952 F.3d at 1276. But the only items for which Defendants articulated a security concern were wigs and makeup. (Dkt. 124 at 96–97, 181–82.) Defendants say allowing Plaintiff

23

to have these items would make her a target to other inmates, compromising her safety. (Dkts. 86 at 24.) The Court, having no expertise in prison security, accepts Defendants' judgment that wigs and makeup might make Plaintiff more of a target, and thus also accepts their judgment that this rational security concern warrants against requiring Defendants to provide Plaintiff those items. While the Court acknowledges and sympathizes with the fact that Plaintiff is already at higher risk for targeting because of her transgender identity, it "can't ignore" Defendants' concern that these items would "enhanc[e]" her security risk. (Dkt. 125 at 311.)

Defendants didn't really raise a security concern over padding. One of Defendants' psychiatry experts opined that "allowing padding of a bra or buttock pads risks an inmate hiding contraband or other items without easy detection." (Dkt. 86-6 ¶ 104.) But—even putting aside the Court's doubts regarding the expert's qualifications to testify about issues of prison security—Defendants did not mention this concern in their brief. Defendants presented affidavits from two people who work at prisons (Warden Jones and Ahmed Holt), but neither of them averred that providing Plaintiff padding would pose a security concern. (Dkts. 86-1;

24

86-2.)  The Court even specifically raised the issue at the hearing, but Defendants said nothing about it.  (Dkt. 124 at 97.)  Finally, Plaintiff testified that Warden Jones has previously allowed her to wear padding she made herself.  (Dkt. 124 at 26–27, 37.)[8]  Nor did Defendants offer any explanation for how hair removal cream might cause any security concerns.  (Dkt. 126 at 329–30.)  Indeed, the Court pressed Defendants on how hair removal cream could possibly be dangerous.  (Dkt. 125 at 329–30.)  In response, Defendants presented mere conjecture rather than any evidence.  (Dkt. 125 at 330.)

At bottom, Defendants have failed to articulate any precise security concern related to padding or hair removal cream.  The Court even specifically said at the hearing that it did not find "security concerns . . .

---

[8] There was some dispute about whether Warden Jones gave Plaintiff permission to make her own padding.  Defendants said Warden Jones's conversation with Plaintiff about padding, "was not that Warden Jones said, oh, yeah, that's fine for you to do.  It was that [Plaintiff] . . . was doing it and said to Warden Jones, hey, thanks for letting me do this, you know, it makes me feel better.  And Warden Jones is like I don't know what you're talking about, but fine." (Dkt. 125 at 304–05.)  So, regardless of whether Warden Jones gave Plaintiff the affirmative go-ahead to make and use her own padding, he certainly knew about it and permitted her to do so.  This shows he did not find the padding a security threat.  Defendants have not come forward with evidence to suggest he has changed his mind as to the security threat posed by allowing Plaintiff access to breast and buttock padding.

apply to padding and hair removal" without Defendants raising any challenge.  (Dkt. 327 at 54.)  Nor do Defendants contend they could not provide Plaintiff these items for any other reason, as it appears GDC already makes them available to cisgender female inmates.  (Dkt. 124 at 25–26.)

Defendants also say, even if the commissary items might be psychologically "pleasing" to Plaintiff, because there is no medical consensus that such items are medically necessary, Defendants are not constitutionally required to provide them.  (Dkt. 125 at 328.)  Defendants miss the point.  They concede HRT is necessary and that the goal of HRT (at least in terms of treating Plaintiff's dysphoria) is to reduce or eliminate Plaintiff's body hair and provide her feminizing bodily features.  Indeed, if Defendants are to be taken at their word, that is what Dr. Mulloy is trying to achieve.  So, it's not a stretch to say that, if it is medically necessary to provide Plaintiff with these outcomes—and that there might be some lengthy period of time for the HRT to take effect and achieve those outcomes—cosmetic items that can give Plaintiff some interim relief are also medically necessary.  Again, Dr. Lowell credibly provided this exact testimony.  (Dkt. 124 at 95.)

Having failed to identify any good reason they should not provide Plaintiff these items, the Court finds Plaintiff likely to succeed on her claim that Defendants are denying her necessary medical care in refusing to provide these items.[9]  The Court emphasizes that it reaches this narrow decision because: (1) the parties agree HRT is medically necessary to provide feminizing changes to Plaintiff's body; (2) Dr. Lowell testified that feminizing cosmetic items can significantly relieve

---

[9] Plaintiff recently notified the Court of decisions in *Bayse v. Philbin*, No. 1:22-cv-24 (S.D. Ga.), Dkts. 127, 130.  (Dkt. 127-2.)  In that case, GDC provided an inmate suffering from gender dysphoria a treatment plan that included the provision of female undergarments and cosmetic items "consistent with those of other women incarcerated by the [GDC]." *Id.*, Dkt. 127 at 3.  GDC later issued a new treatment plan that did not include those items.  *Id.* at 6.  Plaintiff sued (claiming the GDC was deliberately indifferent to her serious medical needs) and GDC moved for summary judgment (saying those accommodations were not medically necessary).  *Id.*  The magistrate judge and district court denied summary judgment after finding "reasonable jurors could disagree concerning whether such accommodations were medically necessary."  *Id.*  The magistrate judge determined GDC's assertion was inconsistent with evidence the plaintiff previously needed gender-affirming items as part of her treatment, had a history of self-harm without that treatment, warned the defendants she would harm herself if they denied her social transitioning, and attempted self-castration after the defendants forced her to get a haircut.  *Id.* at 18.  While not directly on point, *Bayse* supports the Court's conclusions here.  Defendants agree feminization is medically necessary to treat Plaintiff's gender dysphoria and that HRT is intended to provide feminization.  So, to the extent Defendants argue these cosmetic items are not medically necessary in the interim, their argument—like the defendants' in *Bayse*—rings hollow.

Plaintiff's distress while her HRT takes effect; (3) Plaintiff explained she obtained significant relief from prior HRT that caused more feminine bodily proportions and less body hair; and (4) Defendants do not identify any security risk posed by these two items.[10]

### b)  Failure to Protect

The Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety" of incarcerated people and to "protect [them] from violence at the hands of other[s]." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  A prison official violates the Eighth Amendment "when a substantial risk of serious harm" to the plaintiff from others, "of which the official is subjectively aware, exists and the official does not respond[] reasonably to the risk."  *Carter v.*

---

[10] Defendants also argue any order requiring feminizing cosmetic products would violate the need-narrow-intrusiveness requirement of the PLRA.  (Dkt. 86 at 47.)  They say the Court cannot "intrude on Defendants' 'substantial discretion over the institutions they manage' by ordering access to specific items."  (*Id.* (quoting *Rasho v. Jeffreys*, 2 F.4th 703, 711 (7th Cir. 2022).)  The relief the Court orders, however, respects GDC's judgment on security concerns and is narrowly tailored to provide Plaintiff with something Defendants *agree* is medically necessary to treat her gender dysphoria—that is, feminization of her body using cosmetic items while the HRT that Defendants also *agree* is medically necessary takes effect.  So, the Court's injunctive relief is well within the PLRA's bounds.

*Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks and citation omitted).   To prove failure to protect under the Eighth Amendment, the plaintiff must show:

> (1) a substantial risk of harm existed; (2) the defendants were deliberately indifferent to the that risk, *i.e.*, they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation.

*Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

Plaintiff says she is "repeatedly exposed to a substantial risk of serious harm, is targeted as a transgender woman, and has frequently experienced serious harm."  (Dkt. 2-1 at 22.)  She claims "Phillips State Prison is widely known as a dangerous, violent facility with a significant gang presence involving prison guards who unbolt cell doors and move people to different units where they are at risk of gang retaliation."  (*Id.*)  Specific to her, she says guards often left her cell without a functioning lock and she has been in dangerous situations, including being subjected to misgendering and transgender slurs by staff and other inmates.  (*Id.*)  Given that "[a]ll [her] experiences in men's prison facilities have been characterized by pervasive violence and targeted abuse because she is

transgender," she seeks injunctive relief in the form of a transfer to a women's prison.  (Dkts. 2-1 at 23; 125 at 388.)

As Defendants point out, many of Plaintiff's grievances "describe[] general conditions at Phillips State Prison that affect every offender housed there and not just Plaintiff."  (Dkt. 86 at 34.)  To the extent she seeks to hold Defendants liable for those conditions, she has failed—at this stage—to "point[] to specific features of [Phillips] or its population rendering it particularly violent" in relation to Plaintiff.  *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019).  Plaintiff's conclusory assertion that Phillips is unconstitutionally dangerous—without more— is not enough for her to show that inmates there are "'exposed to something even approaching the constant threat of violence.'"  *Harrison v. Culver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (citation omitted); *see also Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (explaining general confinement is actionable under the Eighth Amendment only where plaintiff is confined "in a prison where violence and terror reign") (internal quotation marks and citation omitted).

As for the situations she has personally experienced—like previous

30

assaults, robberies, and harassment from certain jail staffers—all these things are backwards-looking. Indeed, most of Plaintiff's complaints are about things that happened in the past—including things she experienced at facilities other than Phillips. (Dkts. 2-1 at 22 (describing past robbery at Phillips and situations where Plaintiff has "fought off advances from at least four men who entered her unlocked cell and propositioned her for sex"), 23 (describing several instances of violence Plaintiff has experienced since 2010, including at prisons other than Phillips).) But injunctive relief is prospective. So, Plaintiff must show the risk she faces is "'real, immediate, and direct.'" *Wilson v. Sec'y, Dept. of Corr.*, 54 F.4th 652, 668 (11th Cir. 2022) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Evidence of her past experiences at other prisons is not enough to establish this future threat.

Plaintiff really only complains about two things that could constitute a continuing threat of harm: (1) a lack of functioning locks on her cell door or shower doors (Dkts. 1 ¶ 142; 4-2 ¶¶ 93, 96, 103; 124 at 53–56; 125 at 388, 397–98); and (2) harassment by guards (Dkts. 2-1 at 22; 4-2 ¶¶ 88, 97–100; 125 at 398). First, Plaintiff doesn't dispute that Warden Jones has taken steps to improve the locks at Phillips. (Dkts.

31

86-2 ¶ 11; 125 at 398, 406 (Defendants representing that Warden Jones "has taken a lot of steps to make sure that there are two locks on almost every single thing").)  In fact, Plaintiff testified that a "super heavy-duty-type lock" has been on her cell since last year.  (Dkt. 124 at 54.)  Plaintiff also provides no evidence to dispute Defendants' representation that, for certain times Plaintiff alleges her lock was removed at various periods, a deputy warden at Phillips "looked at . . . videos" taken during those periods "and found no time that a lock was off."  (Dkt. 125 at 408.)  Finally, as for times Plaintiff has accessed the shower while it was unlocked, Defendants admit "that is against [GDC] policy," and say Warden Jones "has recommended swift action" against the officer who allowed the shower doors to be unlocked.  (Dkt. 125 at 406.)  So, it is unclear what more Plaintiff wants the Court to do about the lock situation aside from ordering her transfer to a women's prison (which the Court discusses in more detail below).  The Court made clear at the hearing that it does not like "hearing about things like locks being missing and locks being moved and locks not being where they're supposed to be."  (Dkt. 124 at 230.)  It expressly told Defendants that Warden Jones "better keep those locks on."  (Dkt. 125 at 417.)  But strong

words is about all the Court can do without evidence of intentional or reckless misconduct, which Plaintiff has not presented. The Court cannot grant an injunction requiring Defendants to do what they admit they should be doing and what they have presented evidence they are trying to do. *See Merch Traffic, LLC v. Does 1-100*, 2023 WL 5286948, at *5 n.13 (D.N.J. Aug. 4, 2023) (injunction should be drawn narrowly to avoid "pull[ing] in . . . lawful behavior"); *see also Ga. Advocacy Office v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021) (injunctive relief "'must be no broader than necessary to remedy the constitutional violation'") (citation omitted). If the evidence changes, Plaintiff can seek appropriate relief to ensure she has locked doors just like Defendants admit she should have.

Similarly, Plaintiff agrees that "the guard who was directly interfacing with [Plaintiff] and harassing her . . . no longer works at [Phillips]." (Dkt. 64 at 68–69.) Plaintiff does not identify any other guards from whom she fears a specific threat. Accordingly, both prospective issues identified by Plaintiff are moot, and the Court need not enter an injunction on the failure-to-protect claim at this point.

Even if the Court found some specific and immediate threat of harm

to Plaintiff at Phillips, it would not order Plaintiff's transfer to a women's prison based on the record and authority presented. Plaintiff has not identified any case in which a court has ordered a corrections department to transfer a pre-operative transgender individual to a facility that houses a different gender from the one the plaintiff was assigned at birth. While Plaintiff identified cases at the evidentiary hearing, those cases stand for the unsurprising proposition that courts must examine the individual circumstances of each case to determine whether a transfer is warranted. (Dkt. 125 at 394–95.)[11]

Here, the unique circumstances of Plaintiff's case strongly warrant against ordering a transfer. Defendants present evidence that no women's prison in Georgia can manage Plaintiff's specific threat level and security profile. (Dkt. 125 at 401.) To dispute this contention,

---

[11] Plaintiff argued the court in *Doe v. Mass. Dep't of Corr.*, 2019 WL 2913969 (D. Mass. July 8, 2019), granted a pre-operative transgender inmate's "principal request to be transferred to a women's prison." (Dkt. 125 at 276.) Not correct. As the Court explained at the hearing, the "principal request" language Plaintiff relied upon came from the inmate's argument for attorneys' fees and was not part of the Court's decision. (Dkt. 125 at 277–78.) The *Doe* court recognized it had *not* ordered a transfer. *Doe*, 2019 WL 2913969, at *1. Specifically, the *Doe* court stated, "while [the inmate] ultimately received the remaining relief she sought, including a transfer to [a women's prison], *the court was not involved*." *Id.* (emphasis added).

34

Plaintiff points to testimony by Warden Jones that Lee Arrendale State Prison (a women's facility) can manage inmates with the same security classification as Plaintiff. But, Plaintiff simply asked Warden Jones about Arrendale's classification, without asking him specifically whether that prison could accommodate *Plaintiff*. (Dkt. 125 at 396, 411–15.) As Defendants point out, "just because a prison is classified at the same level that [Plaintiff] is classified in does not mean that is an appropriate placement for her." (Dkt. 125 at 401.) Security classification "is just one part of" the "very nuanced fact-informed decisions" that GDC officials make in determining appropriate inmate placement. (Dkt. 125 at 401–02.) Ahmed Holt—a GDC official "responsible for the overall supervision of facility operations" for GDC—testified by declaration that no women's prison in Georgia can house Plaintiff given her unique "security profile . . . and medical and mental health conditions" and that "Phillips State Prison is the best placement for [Plaintiff] at this time." (Dkt. 86-1 ¶¶ 3, 24, 26.) Holt explained that Phillips—a "Special Mission Facility"—is uniquely situated to manage Plaintiff, given her history of violence both before and during her incarceration, her ability "to induce others to commit violence on [her] behalf," and her specific medical and mental

35

health conditions.  (Dkt. 86-1 ¶¶ 18–25.)[12]

Plaintiff presents no evidence to challenge Holt's testimony.  The Court offered Plaintiff the opportunity to depose Warden Jones and others.  Plaintiff did not ask the relevant question—specifically whether Arrendale could accommodate Plaintiff's unique security and medical needs.  In the face of Holt's testimony, the Court refuses to infer that simply because Arrendale has the same security classification as Phillips, Arrendale would be a suitable institution for her.  Putting aside for now whether the Court could order the transfer of a pre-operative transgender individual to a facility that houses a different gender from the one the plaintiff was assigned at birth, Defendants' uncontroverted evidence regarding their inability to safely house Plaintiff in another facility means she has not shown she is likely to succeed on the merits of her

---

[12] Holt provided details about Plaintiff's violent history and need for special attention at Phillips, including multiple convictions for aggravated sodomy, participation in a 2019 conspiracy to murder a federal inmate, threats to kill a former GDC commissioner and a former U.S. Attorney, convictions for gang-related crimes related to those threats, manufacturing and mailing functioning bombs to a GDC warden, and the possession of other bombs in her cell.  (Dkt. 86-1 ¶¶ 18–20.)  The Court cannot second-guess Holt's expertise in housing and managing uniquely challenging inmates.

request for transfer.  This also precludes injunctive relief.[13]

## 2. ADA and Rehabilitation Act

Plaintiff claims GDC is liable under Title II of the ADA and the Rehabilitation Act and that MHM and Wellpath are liable under Title III of the ADA.  (Dkt. 2-1 at 26.)  "In the Eleventh Circuit, the 'causes of action under Title II of the ADA and the Rehabilitation Act are essentially identical.'"  *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1306 (M.D. Ala. 2012) (quoting *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998)).  To state a claim under both, a plaintiff must allege:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

---

[13] For the same reasons, the Court agrees with Defendants' argument that transferring Plaintiff to a women's prison—at this point—would violate the PLRA's need-narrowness-intrusive requirement.  (Dkt. 86 at 39–40.)  The PLRA requires that proposed preliminary injunctive relief be "narrowly drawn," "extend no further than necessary to correct the harm," and be "the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  It also requires the Court to give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1).  The Court concludes that because Defendants have proven no GDC women's prison can currently manage Plaintiff's unique security and mental health profile, the PLRA does not allow the Court—at this time—to order transfer.

and (3) that the exclusion, denial of benefit, or discrimination
was by reason of the plaintiff's disability.

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)

(internal quotation marks and citation omitted). Title III of the ADA

similarly prohibits discrimination "on the basis of disability in the full

and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by

any person who owns, leases (or leases to), or operates a place of public

accommodation." 42 U.S.C. § 12182(a). Its elements essentially mirror

those of Title II. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289,

1299 (11th Cir. 2005). Title III also covers private healthcare operations

in jails as a type of "public accommodation." *Hernandez v. Cty. of

Monterey*, 70 F. Supp. 3d 963, 978 (N.D. Cal. 2014).

Plaintiff says she is likely to succeed on her ADA and Rehabilitation

Act claims because "GDC has violated the ADA's prohibition against

discrimination on the basis of disability by applying an irrational and

nonmedical barrier . . . to [Plaintiff's] access to medical services and

reasonable accommodations for her gender dysphoria." (Dkt. 2-1 at 27.)

Defendants contend Plaintiff's statutory claims fail because (1) she does

not have a disability covered by the statutes, (2) Defendants did not deny

38

her any benefits or discriminate against her, and (3) even if they did deny or exclude her from a benefit, "any alleged exclusion or denial of benefits by Defendants has nothing to do with Plaintiff's alleged disability." (Dkt. 86 at 37–45.)[14]

### a) Disability

"[T]he ADA defines the statutory term 'disability,' with respect to an individual, to mean," among other things, "'a physical or mental impairment that substantially limits one or more major life activities of such individual[.]'" *E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019) (quoting 42 U.S.C. § 12102(1)(A)). The statute excepts from coverage "gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 42 U.S.C. § 12211(b)(1). Plaintiff says this exception does not include gender dysphoria for two reasons: (1) gender dysphoria is not a gender identity disorder, as "gender identity disorder" was removed from the 5th edition

---

[14] Defendants also say GDC is entitled to sovereign immunity because Plaintiff has failed to show "an 'actual violation' of the Constitution." (Dkt. 86 at 37 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006).) But the Court already found that Plaintiff is likely to succeed on her Eighth Amendment claim related to Defendants' provision of medical care. So, sovereign immunity does not apply.

of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5")
published by the American Psychiatric Association ("APA"), was focused
on different symptoms than gender dysphoria, and "is no longer a
diagnosable condition"; and (2) even if gender dysphoria was a "gender
identity disorder," it "result[s] from physical impairments." (Dkt. 2-1 at
28–29.) Defendants say the exception covers gender dysphoria because
it is either a "gender identity disorder[] not resulting from physical
impairment," or falls under the "other sexual behavior disorder[]" catch-
all. (Dkt. 86 at 38.)

The parties agree that in earlier iterations of the DSM—including
the one in place at the time of the ADA's enactment—gender identity
disorder was characterized by an "incongruence" between assigned sex
and gender identity. (Dkts. 2-1 at 28; 86 at 31.) The parties disagree,
however, over whether the DSM-5's removal of "gender identity disorder"
and addition of "gender dysphoria" means they are materially different,
such that gender dysphoria does not fall within the ADA's exception.
Plaintiff argues that "gender dysphoria focuses on 'the *distress that may
accompany* [the] incongruence" between assigned sex and gender
identity, which is different from saying the incongruence itself is a

40

disorder.  (Dkt. 2-1 at 28 (emphasis in original) (quoting the DSM-5).)  Defendants agree gender dysphoria is primarily characterized by its associated distress but say that, because the condition still deals directly with a sex-gender incongruence, it "'falls precisely under the [the DSM at the time of the ADA's enactment] description of, and diagnostic criteria for, gender identity disorders.'"  (Dkt. 86 at 39 (citation omitted).)

The Fourth Circuit dealt with this precise issue in *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022).  That court explained that, to determine whether the ADA's definition of "gender identity disorders" includes gender dysphoria, it "must look to the meaning of the ADA's 'terms at the time of its enactment.'"  *Id.* at 766–67 (quoting *Bostock v. Clayton Cty., Ga.*, 590 U.S. 644, 654 (2020)).  The court concluded the analysis "reveals that in 1990, the time of the statute's adoption, 'gender identity disorders' did not include gender dysphoria."  *Id.* at 767 (internal quotation marks and citation omitted).  The court rested its decision on four observations: (1) "in 1990, the medical community did not acknowledge gender dysphoria either as an independent diagnosis or as a subset of any other condition"; (2) "advances in medical understanding led the [APA] in 2013 to remove 'gender identity disorders' from the . . .

41

DSM-5" at the same time the APA added "gender dysphoria" as a diagnosis, which suggests a "meaningful difference" between the two; (3) "'gender identity disorder' and gender dysphoria [are] characterized by different symptoms,"—namely, "gender identity disorder" indicated "that the clinical problem was the discordant gender identity," whereas "gender dysphoria . . . concerns itself primarily with *distress* and other disabling symptoms, rather than simply being transgender"; and (4) gender identity disorder and gender dysphoria "affect different populations," as some transgender people (who may have previously been diagnosed with gender identity disorder "solely" based on their "cross-gender identification") don't experience gender dysphoria, *id.* at 767–68 (emphasis added) (internal quotation marks and citations omitted). The court put it in plain terms:

> [W]hile the older DSM pathologized the very existence of transgender people, the recent DSM-5's diagnosis of gender dysphoria takes as a given that being transgender is not a disability and affirms that a transgender person's medical needs are just as deserving of treatment and protection as anyone else's.

*Id.* at 769. So, the court concluded, "nothing in the ADA, [at its enactment] or now, compels the conclusion that gender dysphoria constitutes a 'gender identity disorder' excluded from ADA protection."

42

*Id.* at 769.

The Court agrees with the Fourth Circuit's reasoning. "[T]he ADA excludes from its protection anything falling within the plain meaning of 'gender identity disorders,' as that term was understood 'at the time of its enactment.'"  *Id.* (citation omitted); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) ("In construing a statute, [courts] must begin, and often should end as well, with the language of the statute itself."). Giving the term "gender identity disorder" the plain meaning it had in 1990, the Court concludes, as a matter of statutory construction, that gender dysphoria is not a gender identity disorder.

Defendants argue Congress's use of the plural term "gender identity disorders" and the catch-all term "other sexual behavior disorders" shows Congress "'sought to prohibit the ADA's application to conditions that are sufficiently similar to the more specific categories of conditions that precede.'"  (Dkt. 86 at 40 (quoting *Kincaid v. Williams*, 143 S. Ct. 2414, 2417 (Alito, J., dissenting).) The Court is not convinced. In 1990, Congress could not have contemplated that the ADA would exclude gender dysphoria because *that diagnosis did not even exist*.  For the same reason, the Court does not buy Defendants' argument that

gender dysphoria—even if newly "invented"[15]—falls under the scope of "gender identity disorders" as a category. (Dkt. 86 at 40.) This is because "gender identity disorder"—the term Congress chose—meant something very specific in 1990: the mere status of being transgender. The Court presumes "Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998). The two terms simply mean different things, and the Court declines to read into the statute something Congress did not intend the ADA to except.

To sum it up, the Court concludes the ADA does not exclude gender dysphoria from its protection. Plaintiff has presented ample evidence— and Defendants don't dispute—that she has been properly diagnosed with gender dysphoria. Multiple courts have found that gender dysphoria qualifies as a disability under the ADA, as it "substantially limits one or more life activities of" a diagnosed individual. *See, e.g.*, *Shorter v. Garland*, 2021 WL 6062280, at *1 (N.D. Fla. Dec. 22, 2021);

---

[15] The Court disagrees with Defendants' use of the term "invented," and instead finds more appropriate the phrase "newly recognized based on 'advances in medical understanding.'" *Williams*, 45 F.4th at 767. But Defendants' brief is riddled with questionably charged turns-of-phrases. The Court elects to ignore that terminology rather than addressing each one.

*Blatt v. Cabela's Retail, Inc.*, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017).   The Court agrees.   There is plenty of evidence in the record showing that gender dysphoria substantially limits Plaintiff's life activities, primarily because it causes her near constant severe emotional distress.   Accordingly, Plaintiff is a qualified individual with a disability under the terms of the statute.[16]

### b)   Denial of Benefits

In declining to provide Plaintiff adequate HRT, gender-affirming surgery, feminine commissary items, and a transfer to women's facility, Plaintiff says Defendants are denying her access to "the full range of medical services for her gender dysphoria" in violation of the ADA and Rehabilitation Act.   (Dkt. 2-1 at 31–32.)   For the reasons already discussed in regard to Plaintiff's Eighth Amendment claim, the Court finds Plaintiff's federal statutory claims related to gender-affirming surgery are not ripe and that Plaintiff has not shown denial of benefits in regard to her demand for greater doses of hormones or a transfer to a

---

[16] Because the Court concludes gender dysphoria is not a "gender identity disorder" as the ADA defines that term, it need not decide whether gender dysphoria is a "gender identity disorder[] resulting from physical impairment."   42 U.S.C. § 12211(b)(1).

women's facility.  But, also for the reasons discussed above, the Court
concludes Plaintiff has shown Defendants' refusal to provide padding and
hair removal commissary items until HRT kicks in denies her access to
the full range of medical services for her gender dysphoria.

> **c)  Exclusion From Medical Services and Accommodations**

To prevail on her statutory claims for these two items, however,
Plaintiff still must show Defendants acted with discriminatory animus—
that is, because of her disability.  To constitute actionable discrimination
under the ADA and Rehabilitation Act, a plaintiff's disability need only
be a "motivating factor" in Defendants' decision to exclude—that is, "a
factor that '*made a difference in the outcome.*'"  *Farley v. Nationwide Mut.
Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999) (emphasis in original)
(citation omitted).

Plaintiff says the evidence shows that her request for "services and
accommodations for gender dysphoria, as opposed to another condition,
appears to be the *primary reason* GDC has denied her necessary
individualized treatment."   (Dkt. 2-1 at 32 (emphasis in original).)
Plaintiff points to things Defendants said to her and another transgender
inmate that she claims reveal their discriminatory animus, specifically

46

that an MHM psychiatrist told her "higher ups at MHM forbid them from performing psychological assessments for gender-affirming surgery" (Dkt. 4-2 at 26–27); that Warden Jones told her "nothing in [GDC] policy allows [her] to have surgery" and that "GDC higher ups would not provide these clinically indicated surgeries because GDC doesn't do gender-affirming surgeries" (Dkt. 4-2 at 37); and that mental health professionals at another GDC prison told another transgender inmate that GDC administrators would deny gender-affirming surgery because they would not "want to pay for it" (Dkt. 4-4 at 74–75).

These alleged statements concern gender-affirming surgery. They have nothing to do with Plaintiff's claims for the two commissary items at issue. And the Court will not transfer evidence of intent for something specific (denial of surgery) to something very different (provision of padding and hair removal cream). Plaintiff cites no evidence suggesting Defendants refused to give her these feminine cosmetic items *because of* her dysphoria. So, the Court concludes—at this stage—that Plaintiff is not likely to succeed on the merits of her ADA and Rehabilitation Act claims for padding and hair removal cream.

47

**B.    Irreparable Harm**

A plaintiff seeking preliminary injunctive relief must show "that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Physical and psychological injury—including death—can constitute irreparable harm that warrants injunctive relief.  *See Harris v. Bd. of Supervisors, L.A. Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (irreparable harm includes risk of "pain, infection, amputation, medical complications, and death due to delayed treatment"); *Chalk v. U.S. Dist. Ct. Cent. Dis. of Cal.*, 840 F.2d 701, 710 (9th Cir. 1988) ("emotional and psychological" injury "cannot be adequately compensated for by a monetary award after trial").   Some courts have even found that depriving a transgender inmate of adequate HRT "will wreak havoc on [the inmate's] physical and emotional state"—a harm that "is neither compensable nor speculative." *Phillips v. Mich. Dept. of Corr.*, 731 F. Supp. 792, 800 (W.D. Mich. 1990); *see also Koe v. Noggle*, 2023 WL 5339281, at *25 (N.D. Ga. Aug. 20, 2023) (holding transgender minors established risk of irreparable harm where they showed lack of injunction would mean minors "will be unable to obtain in Georgia a course of

48

treatment that has been recommended by their health care providers in light of their individual diagnoses and mental health needs").

Plaintiff has shown that—absent the Court's intervention—she is at risk of irreparable harm, namely severe self-harm.  Plaintiff has on multiple occasions attempted self-castration and suicide, and the Court finds credible her testimony describing her significant and constant psychological distress.  (Dkt. 124 at 22, 27, 31, 68–69.)  Her pain was clear from her testimony.  So, the Court concludes that should she not receive medically necessary treatment (including adequate HRT and—in the meantime—gender-affirming cosmetic items), the distress caused by Plaintiff's dysphoria could result in a risk of irreparable harm.[17]

Defendants say "Plaintiff's delay in seeking preliminary-injunctive relief is fatal to Plaintiff's motion."  (Dkt. 86 at 44.)  They argue that her

---

[17] Plaintiff also says that deprivation of her constitutional rights standing alone constitutes irreparable harm.  (Dkt. 2-1 at 34 n.13.)  Defendants counter that "the Eleventh Circuit 'has not gone that far.'"  (Dkt. 86 at 45 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000).)  Defendants are right.  "'The only areas of constitutional jurisprudence where [the Eleventh Circuit] [has] said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether.'"  *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citation omitted).

decision to dismiss a prior lawsuit and sign the 2018 settlement agreement shows she "is not being irreparably harmed by the alleged refusal to provide these interventions, nor is there any urgency to grant Plaintiff the same relief that Plaintiff previously sought, settled, and released." (Dkt. 86 at 45.) It's true that "a delay in bringing suit may defeat a presumption of irreparable harm." *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, 2015 WL 6395283, at *4 (S.D. Fla. Oct. 22, 2015). But Plaintiff previously sued GDC officials because they refused to restart her HRT or evaluate her for gender-affirming surgery. (Dkts. 4-2 at 21–22, 25–34; 109-9.) She also dismissed that case after one of her new doctors at Phillips recommended she be evaluated for "potential gender affirming surgical intervention." (Dkt. 96-5 at 3.) When that did not happen, she brought this suit. Far from showing delay, Plaintiff's history of litigation demonstrates her desire for medical assistance to cure her distress that poses a serious risk of physical and psychological harm.

Plaintiff's prior settlement is also not dispositive. Plaintiff signed that agreement after fighting for years to get a surgical evaluation. It's not surprising she would feel like giving up on GDC, especially because

50

she thought she could use the settlement money "to hire a professional expert witness" to get an evaluation.  (Dkt. 90-1 at 13.)  In any event, Plaintiff's self-castration attempt and suicidal ideation *after* she signed the settlement agreement shows her gender dysphoria clearly continued (and continues) to put her at risk of serious harm.  The Court finds Plaintiff's purported delay does not overcome clear evidence of risk of irreparable harm.

### C.    Balance of Equities and Public Interest

Plaintiff says "[t]he harm and cost that GDC might reasonably expect to incur under a preliminary injunction are insignificant, particularly when weighed against the irreparable harm to her health and life that [Plaintiff] will suffer" in the absence of injunctive relief. (Dkt. 2-1 at 34–35.)  She also says an injunction would work in favor of the public interest because it would uphold her constitutional rights. (Dkt. 2-1 at 36.)  Defendants argue that "the harm to Defendants and the public far outweighs the speculative harm to Plaintiff."  (Dkt. 86 at 45.)

The Court concludes Defendants would suffer no harm from being ordered to comply with their constitutional obligations as set forth above—that is in providing padding and hair removal cream.  Indeed, an

agency "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Defendants also have not convinced the Court that the costs of compliance—financial or logistical—are "so significant as to outweigh the important constitutional rights at issue." *Walker v. City of Calhoun, Ga.*, 2016 WL 361612, at *14 (N.D. Ga. Jan. 28, 2016), *overruled on other grounds by* 682 F. App'x 721 (11th Cir. 2017); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds . . . cannot justify an unconstitutional lack of competent medical care and treatment for inmates."). "[U]pholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002); *see also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) ("The public has no interest in enforcing an unconstitutional ordinance."). Accordingly, both these factors weigh in favor of injunctive relief, and Plaintiff has met her burden at this stage to show she is now entitled to at least some of the relief she seeks as this litigation runs its course.

52

## III.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Preliminary Injunction (Dkt. 2).   The Court **GRANTS** Plaintiff's Motion to Strike R. Doc. 126 and Substitute Corrected Notice of Supplemental Authority (Dkt. 127) and **STRIKES** Docket No. 126. Consistent with the Court's discussion in this Order, the Court **ORDERS** Defendants to provide Plaintiff access to breast and buttock padding and hair removal cream until the HRT has the intended impact on Plaintiff's body.   The Court further **ORDERS** that Defendants provide a status update about Plaintiff's surgical consultation within **seven (7)** days from the date of this Order, and then every **thirty (30) days** thereafter.

**SO ORDERED** this 17th day of April, 2024

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Jane Doe,<br><br>                    Plaintiff,<br><br>          v.<br><br>Georgia Department<br>of Corrections, *et al.*,<br><br>                    Defendants. | Civil Action No. 1:23-cv-5578-MLB |

## NOTICE OF APPEAL

Notice is hereby given that Defendants Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls, Anthony Mulloy, and Jamal Roberts appeal to the United States Court of Appeals for the Eleventh Circuit the order partially granting Plaintiff Jane Doe's motion for a preliminary injunction entered April 17, 2024. Dkt. 131.

Respectfully submitted this 25th day of April, 2024.

| | |
|---|---|
| Christopher M. Carr | */s/ Jeffrey M. Harris* |
|   *Attorney General* | Jeffrey M. Harris* |
|   Georgia Bar No. 112505 | Rachael C. Tucker* |
| Stephen J. Petrany | Thomas S. Vaseliou* |
|   *Solicitor General* | Consovoy McCarthy PLLC |
|   Georgia Bar No. 718981 | 1600 Wilson Blvd., Suite 700 |
| Georgia Department of Law | Arlington, VA 22209 |
| 40 Capitol Square SW | (703) 243-9423 |
| Atlanta, Georgia, 30334 | jeff@consovoymccarthy.com |
| 404-458-3408 | rachael@consovoymccarthy.com |
| spetrany@law.ga.gov | tvaseliou@consovoymccarthy.com |

*Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls, Anthony Mulloy, and Jamal Roberts*

*\*pro hac vice*

*Special Assistant Attorneys General and Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Sharon Lewis, Chad I. Lohman, Tyrone Oliver, Randy Sauls, Anthony Mulloy, and Jamal Roberts*

## CERTIFICATE OF SERVICE

I certify that, on April 25, 2024, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsels of record are registered ECF users.

*/s/ Jeffrey M. Harris*