# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JANE DOE,

         *Plaintiff*,

v.

GEORGIA DEPARTMENT OF COR-RECTIONS, *et al.*,

         *Defendants*.

Case No. 1:23-cv-5578-MLB

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................II

INTRODUCTION & STATEMENT OF THE CASE ..................................................1

ARGUMENT.......................................................................................................2

I.  Statutes of limitations bar Plaintiff's claims before December 6, 2021. ...2

II.  Plaintiff does not plausibly allege a violation of the Eighth Amendment. 2

    A.  Plaintiff does not plausibly allege that Defendants failed to provide constitutionally adequate medical care..............................3

        1.  Plaintiff has no right to sex-reassignment surgery. ...................4

        2.  Plaintiff's disagreement with the dosage of cross-sex hormones is not cruel and unusual punishment.........................8

        3.  The Eighth Amendment does not require access to feminizing products. ...............................................................10

    B.  Plaintiff does not plausibly allege Eighth Amendment violations for failure to protect or failure to transfer to a women's prison.................................................................................13

        1.  Plaintiff does not state a failure-to-protect claim. ...................13

        2.  Plaintiff does not plausibly allege an Eighth Amendment violation for not transferring Plaintiff to a women's prison.....16

    C.  Plaintiff does not plausibly allege an Eighth Amendment violation for placement in administrative segregation. .................17

III.  Plaintiff does not plausibly allege ADA or Rehabilitation Act violations. ..................................................................................................21

    A.  Plaintiff is not denied any benefits or discriminated against.........22

    B.  Plaintiff's alleged denial is not "because of" any disability. .........23

    C.  Plaintiff's proposed accommodations are not reasonable. ............25

CONCLUSION ...................................................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................26

CERTIFICATE OF SERVICE ..............................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ...................................................................25

*Alabama v. U.S. Sec'y of Educ.*,
  2024 WL 3981994 (11th Cir. Aug. 22) ......................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................2, 19, 20, 21

*B.P.J. v. W.V. State Bd. of Educ.*,
  649 F. Supp. 3d 220 (S.D.W. Va. 2023).....................................................11

*Bayse v. Dozier*,
  2019 WL 3365854 (M.D. Ga. May 21) ........................................................4

*Brown v. Montoya*,
  662 F.3d 1152 (10th Cir. 2011) ..................................................................3

*Bucklew v. Precythe*,
  587 U.S. 119 (2019) ...................................................................................7

*Campbell v. Kallas*,
  936 F.3d 536 (7th Cir. 2019) .................................................................7, 12

*Carter v. Galloway*,
  352 F.3d 1346 (11th Cir. 2003) ................................................................15

*Cassady v. Dozier*,
  2022 WL 988315 (M.D. Ga. Mar. 31)....................................................3, 15

*Cox v. Nobles*,
  15 F.4th 1350 (11th Cir. 2021) .................................................................13

*Druley v. Patton*,
  601 F. App'x 632 (10th Cir. 2015).............................................................10

*Edmo v. Corizon, Inc.*,
  949 F.3d 489 (9th Cir. 2020) ............................................................5, 6, 7

*Everett v. Cobb Cnty. Sch. Dist.*,
  138 F.3d 1407 (11th Cir. 1998) ..................................................................2

*Farley v. Nationwide Mut. Ins.*,
  197 F.3d 1322 (11th Cir. 1999) ................................................................25

*Fisher v. Fed. Bureau of Prisons*,
  2022 WL 2648950 (N.D. Ohio July 8).....................................................5, 6

*Gibson v. Collier,*
  920 F.3d 212 (5th Cir. 2019) ........................................................................5, 6, 7

*Grissom v. Roberts,*
  902 F.3d 1162 (10th Cir. 2018) ..........................................................................21

*Grizzle v. Kemp,*
  634 F.3d 1314 (11th Cir. 2011) ....................................................................17, 21

*Harrison v. Culliver,*
  746 F.3d 1288 (11th Cir. 2014) ..........................................................................14

*Havens v. Colo. Dep't of Corr.,*
  897 F.3d 1250 (10th Cir. 2018) ....................................................................24, 25

*Hoffer v. FDC,*
  973 F.3d 1263 (11th Cir. 2020) ..................................................................4, 9, 11

*Jackson v. GDOT,*
  16 F.3d 1573 (11th Cir. 1994) ..............................................................................3

*Jackson v. West,*
  787 F.3d 1345 (11th Cir. 2015) ............................................................................9

*Jones v. Rutherford,*
  546 F. App'x 808 (11th Cir. 2013) ......................................................................22

*Keith v. DeKalb Cnty.,*
  749 F.3d 1034 (11th Cir. 2014) ....................................................................20, 21

*Keohane v. Fla. Dep't of Corr. Sec'y,*
  952 F.3d 1257 (11th Cir. 2020) ....................................................................passim

*Kosilek v. Spencer,*
  774 F.3d 63 (1st Cir. 2014)....................................................................4, 5, 6, 7

*Lamb v. Norwood,*
  899 F.3d 1159 (10th Cir. 2018) ..........................................................................10

*LaVergne v. Stutes,*
  82 F.4th 433 (5th Cir. 2023) ...............................................................................18

*Marbury v. Warden,*
  936 F.3d 1227 (11th Cir. 2019) ....................................................................13, 14, 15

*Onishea v. Hopper,*
  171 F.3d 1289 (11th Cir. 1999) ..........................................................................25

*Schiavo v. Schiavo,*
  403 F.3d 1289 (11th Cir. 2005) ..........................................................................22

*Shaw v. Hall,*
    2016 WL 1248870 (M.D. Ga. Mar. 29)............................................................21

*Sheley v. Dugger,*
    833 F.2d 1420 (11th Cir. 1987) ............................................................18, 19, 20

*Shelton v. Ark. DHS,*
    677 F.3d 837 (8th Cir. 2012) ...................................................................22

*Silberman v. Miami Dade Transit,*
    927 F.3d 1123 (11th Cir. 2019) ................................................................22

*Silverstein v. Fed. Bureau of Prisons,*
    559 F. App'x 739 (10th Cir. 2014) ............................................................21

*Swain v. Junior,*
    961 F.3d 1276 (11th Cir. 2020) ..................................................................9

*Turner v. Lt. Driver,*
    848 F.3d 678 (5th Cir. 2017) ................................................................8, 10

*United States v. Georgia,*
    546 U.S. 151 (2006) ...............................................................................22

*Vital Pharms., Inc. v. Alfieri,*
    23 F.4th 1282 (11th Cir. 2022) ..................................................................11

*Wade v. McDade,*
    106 F.4th 1251 (11th Cir. 2024) .................................................................3

*Washington v. Howard,*
    25 F.4th 891 (11th Cir. 2022) ................................................................3, 16

*Williams v. Atlanta,*
    794 F.2d 624 (11th Cir. 1986) ...................................................................2

*Williams v. Kelly,*
    818 F. App'x 353 (5th Cir. 2020) ...............................................................5

*Youmans v. Gagnon,*
    626 F.3d 557 (11th Cir. 2010) ...............................................................8, 10

**Statutes**

18 U.S.C. §3626 ......................................................................................17

**Constitutional Provisions**

U.S. Const. amend. VIII ...............................................................................7

## INTRODUCTION & STATEMENT OF THE CASE

Plaintiff is an inmate in a male prison serving a life sentence for violent felonies. Plaintiff sued the Georgia Department of Corrections, state officials, and Plaintiff's medical and mental-health providers for violating the Eighth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Plaintiff sought a preliminary injunction, requesting sex-reassignment surgery, transfer to a women's prison, Plaintiff's preferred dosage of cross-sex hormones, and social-transitioning items. Responsive pleadings were stayed pending the preliminary-injunction proceedings. This Court denied Plaintiff's motion, except with respect to some social-transitioning items (padding and hair-removal cream). Op. (Doc. 131) at 53, *appeal pending*, No. 24-11382 (11th Cir.) (argued Dec. 12, 2024).

Defendants now move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1), (6). Plaintiff does not plausibly allege that Defendants were deliberately indifferent to any serious medical needs because there are differences in medical opinion and rational security concerns for each sex-reassignment-related request. Plaintiff also does not state an Eighth Amendment claim based on a failure to protect or conditions in administrative segregation. Plaintiff does not plausibly allege any particular features specifically related to Plaintiff at Phillips State Prison that puts Plaintiff at a substantial risk of serious harm. At a minimum, all the personal-capacity claims should be dismissed because of qualified immunity. Finally, Plaintiff does not state an ADA or RA claim because Plaintiff does not

1

plausibly allege a denial of benefits, let alone that any alleged denial was because of Plaintiff's gender dysphoria.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff does not do so for any claim.

## I.    Statutes of limitations bar Plaintiff's claims before December 6, 2021.

Most of Plaintiff's allegations span from before the filing of this suit on December 6, 2023. *E.g.*, Second Am. Compl. (Doc. 209) ¶192 ("seven-year period"). The statute of limitations for "all section 1983 claims in Georgia" is "two year[s]." *Williams v. Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). So too for Plaintiff's ADA and RA claims. *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998). Any claims based on conduct before December 6, 2021, are time-barred.

## II.    Plaintiff does not plausibly allege a violation of the Eighth Amendment.

Plaintiff brings three types of deliberate-indifference claims: (A) failure to provide allegedly essential medical care; (B) failure to protect; and (C) time in administrative segregation. Plaintiff does not plausibly allege any of the three.

Even if Plaintiff could plausibly allege a constitutional violation, this Court should dismiss the personal-capacity claims because Plaintiff cannot overcome qualified immunity. Plaintiff has the burden to state "both that the defendant violated his constitutional right and that 'the right was clearly established at the time of the

violation.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022). "A right is clearly established only if the state of the law on the date of the alleged misconduct makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Id.* at 903 (cleaned up).

Moreover, Plaintiff names certain Defendants in their official capacity, sometimes only in that capacity. *E.g.*, Second Am. Compl. (SAC) at 54, 78, 80 (Oliver, Lohman, Sauls). This Court should dismiss any damages claim against defendants named in their official capacity because sovereign immunity bars these claims. *Jackson v. GDOT*, 16 F.3d 1573, 1575 (11th Cir. 1994). This Court should also dismiss any injunctive-relief claim against a defendant in his personal capacity. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (Plaintiffs "may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Cassady v. Dozier*, 2022 WL 988315, at *9 (M.D. Ga.).

### A. Plaintiff does not plausibly allege that Defendants failed to provide constitutionally adequate medical care.

To state a claim that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must plausibly allege an "objectively, sufficiently serious" need, that "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of harm to the plaintiff," and the defendant did not "respon[d] reasonably to the risk." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (cleaned up). A "simple difference in medical opinion" is not

cruel and unusual punishment. *Keohane v. FDC*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). And "[a]s long as prison administrators make judgments balancing security and health concerns that are 'within the realm of reason and made in good faith,' their decisions do not amount to a violation of the Eighth Amendment." *Kosilek v. Spencer*, 774 F.3d 63, 92 (1st Cir. 2014) (en banc).

Plaintiff does not plausibly allege that Defendants' medical care "'is so grossly incompetent, inadequate, or excessive as to shock the conscience.'" *Hoffer v. FDC*, 973 F.3d 1263, 1271 (11th Cir. 2020). The Complaint acknowledges that Plaintiff has an individualized treatment plan for many conditions, including gender dysphoria. Plaintiff receives routine psychotherapy specifically for gender dysphoria and receives cross-sex hormones. SAC ¶¶58-60, 125. Simply put, Plaintiff's clinicians are "assessing [Plaintiff's] risk of future harm" and "regularly monitoring and managing" Plaintiff's conditions. *Hoffer*, 973 F.3d at 1272.

### 1. Plaintiff has no right to sex-reassignment surgery.

Plaintiff alleges Defendants have a "Blanket Ban" on SRS. SAC ¶180. That is not accurate. *See* Op.16-17; *Bayse v. Dozier*, 2019 WL 3365854, at *6 (M.D. Ga.) ("record does not show that the GDC has a blanket policy against referring transgender inmates for SRS"); Ex. C. But even if there were a "ban" on SRS as the Complaint alleges, Plaintiff still does not state a claim.

To start, the Fifth and First Circuits have held that "sex reassignment surgery is fiercely debated within the medical community." *Gibson v. Collier*, 920 F.3d 212,

224 (5th Cir. 2019); *see, e.g.*, *Kosilek*, 774 F.3d at 68-96.[1] Indeed, "respected doctors profoundly disagree about whether sex reassignment surgery is medically necessary to treat gender dysphoria." *Gibson*, 920 F.3d at 221. Defendants cannot be found liable for deliberate indifference for not providing interventions whose necessity or appropriateness is hotly debated within the medical community itself. *See id.* at 226.

Plaintiff asserts that WPATH's "Standards of Care" are "accepted clinical standards of care for gender dysphoria care" and show that Plaintiff must receive SRS. SAC ¶180. But these purported "standards" are at most mere guidelines formed by an advocacy group and supported by low-quality evidence. WPATH's current version of the "Standards of Care," like its earlier versions, "[l]ack[s] evidence-based grading." *Edmo v. Corizon*, 949 F.3d 489, 498 (9th Cir. 2020) (O'Scannlain, J., dissental). Even WPATH's own document acknowledges its questionable evidentiary support. For example, in the adult-assessment section, the standards state that "the empirical evidence base for the assessment of" transgender-identifying "adults is limited." Ex. F at S33-34. And elsewhere the standards state that the "intervention-specific risks associated with the presence of specific physical conditions have not been well researched." *Id.* at S38.

---

[1] *See also, e.g.*, *Williams v. Kelly*, 818 F. App'x 353, 354 (5th Cir. 2020); *Bayse*, 2019 WL 3365854, at *7 ("'no medical consensus'" SRS is "necessary"); *Fisher v. Fed. Bureau of Prisons*, 2022 WL 2648950 (N.D. Ohio) (denying deliberate-indifference claim for SRS).

WPATH's "Standards of Care" are also not "politically neutral." *Gibson*, 920 F.3d at 222 (cleaned up). "WPATH aspires to be both a scientific organization and an advocacy group for the transgendered," and "[t]hese aspirations sometimes conflict." *Id.* (cleaned up). And "WPATH's recommendation for institutionalized persons merely expresses a policy preference." *Edmo*, 949 F.3d at 498 (O'Scannlain, J., dissental). After all, WPATH recommended sex-transition interventions for prisoners *before* even one inmate had undergone such interventions. *Cf., e.g.*, *id.*

WPATH's standards are also not as clear-cut as Plaintiff suggests. WPATH itself makes clear that its standards are "recommendations" that are "flexible," "adaptable," and "may [be] modif[ied]." Ex. F at S2; *e.g.*, *id.* at S6, S31 (same).

At bottom, "[p]rudent medical professionals … do reasonably differ in their opinions regarding [WPATH's] requirements." *Kosilek*, 774 F.3d at 88. WPATH's standards "reflect not consensus, but merely one side in a sharply contested medical debate," including "over sex reassignment surgery." *Gibson*, 920 F.3d at 221. A mere "flexible" "recommendation" is not enough to show a constitutional violation, even if WPATH could somehow set the constitutional standard (which it cannot).

Plaintiff's request also raises "serious security concerns," which is independently fatal to Plaintiff's claim. *Keohane*, 952 F.3d at 1275. Housing a biological male prisoner who underwent SRS in a *male* prison unquestionably raises security concerns. *Kosilek*, 774 F.3d at 93; *Fisher*, 2022 WL 2648950, at *14. The same is

true with "housing a post-operative, male-to-female transsexual … within a female prison population." *Kosilek*, 774 F.3d at 93. Especially here, as Plaintiff has been convicted of multiple sexual offenses. Exs. G, K, M. Granting Plaintiff's request "would incentivize the use of suicide threats by prisoners as a means of receiving desired benefits," which is a concern that "cannot be discounted as a minor or invalid claim." *Kosilek*, 774 F.3d at 94. "Such threats are not uncommon in prison settings and require firm rejection by the authorities." *Id.*

Finally, even a "Blanket Ban" on SRS could not be "cruel *and unusual* punishment." U.S. Const. amend. VIII (emphasis added). A punishment is "unusual" if it "ha[s] long fallen out of use." *Bucklew v. Precythe*, 587 U.S. 119, 130 (2019). It is impossible for denial of SRS to be "unusual" because "[n]o longstanding practice exists of prison-funded SRS." *Edmo*, 949 F.3d at 508 (Bumatay, J., dissental). Indeed, prisons "across the country" disagree on SRS. *Gibson*, 920 F.3d at 216.

At a minimum, this Court should dismiss the personal-capacity claim because Plaintiff cannot point to clearly established law. As the Seventh Circuit explained, "when the defendants denied [Plaintiff's] request for sex-reassignment surgery, no case clearly established a right to gender-dysphoria treatment beyond hormone therapy." *Campbell v. Kallas*, 936 F.3d 536, 549 (7th Cir. 2019). There is no controlling decision on the Eighth Amendment and SRS, and the Fifth Circuit has held even a blanket ban on SRS *constitutional*. *See Gibson*, 920 F.3d at 228; *see also Youmans*

*v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010) (no clearly established law "where judges … disagree on a constitutional question" (cleaned up)); *Turner v. Lt. Driver*, 848 F.3d 678, 686 (5th Cir. 2017) (no clearly established law given circuit split).

### 2. Plaintiff's disagreement with the dosage of cross-sex hormones is not cruel and unusual punishment.

Plaintiff alleges that temporarily taking Plaintiff off cross-sex hormones violated the Constitution. Plaintiff further contends that the current treatment is constitutionally defective. Neither allegation states a plausible claim for relief.

**Temporarily Pausing Hormones:** Plaintiff fails to state a claim that Drs. Mulloy and James were deliberately indifferent for taking Plaintiff off cross-sex hormones from May 2019 to April 28, 2023. In 2019, *Plaintiff* consented to being taken off hormonal therapy and testosterone blockers because those medications risked exacerbating a significant medical concern—high blood pressure. *See* SAC ¶77 ("The primary care physician informed … Doe that he believed [Doe's] health risks (including [Doe's] age, risk for blood clotting, and risk for stroke) were too high to continue taking estradiol …. Doe felt that [Doe] had no option but to follow his medical advice and accept his recommendation to discontinue HRT."); *id.* ¶124 (documenting cardiac and pulmonary medical concerns). Plus, during this period of alleged delay in treatment, the unprecedented COVID-19 pandemic was ravaging correctional institutions across the country, causing facility lockdowns that prevented prisoner movement and provider access for even the most serious medical

emergencies. *See, e.g.*, *Swain v. Junior*, 961 F.3d 1276, 1280 (11th Cir. 2020) ("It would be a colossal understatement to say that the COVID-19 pandemic has had far-reaching effects…. The virus, though, poses particularly acute challenges for the administration of the country's jails and prisons."). Plaintiff now disagrees with the pause in treatment, but "a simple difference in medical opinion … fails to support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266 (cleaned up).

Plaintiff also fails to plausibly allege that the "[t]hree wee[k]" disruption in hormone administration in 2023 violates the Eighth Amendment. SAC ¶¶129-31. For deliberate-indifference claims, "'[e]ach individual Defendant must be judged separately and on the basis of what that person knows.'" *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015). Plaintiff does not allege that Dr. Mulloy had any knowledge this pause in treatment occurred. Regardless, the reason for this short interruption, as Plaintiff concedes, was because of a "reading of [Plaintiff's] blood pressure." SAC ¶129. All of this is merely a disagreement in medical opinion that does not show a constitutional violation. *Keohane*, 952 F.3d at 1266. Nor does an action based on caution and concern for Plaintiff's health risks (*e.g.*, hypertension) that resulted in a brief three-week period where Plaintiff "felt nauseous and had frequent headaches" adequately plead recklessness. SAC ¶¶129-31; *see Hoffer*, 973 F.3d at 1270 n.2 (standard is "reckless[ness]").

**Current Treatment:** Plaintiff alleges that the current hormone treatment has

"inadequate dosage levels." SAC ¶205. But Plaintiff's own endocrinologist disputes that the dosage is too low. *E.g.*, SAC ¶133. Again, "a simple difference in medical opinion" does not state a constitutional violation. *Keohane*, 952 F.3d at 1266 (cleaned up). And as explained, Plaintiff cannot rely on WPATH's standards to support a deliberate-indifference claim. *Supra* 5-6. Many other courts have denied deliberate-indifference claims based on the argument that a hormonal intervention deviates from WPATH's standards. *See, e.g.*, *Lamb v. Norwood*, 899 F.3d 1159, 1162-63 (10th Cir. 2018); *Druley v. Patton*, 601 F. App'x 632, 634-36 (10th Cir. 2015).

At a minimum, any constitutional violation is not clearly established. There is no Supreme Court or controlling Eleventh Circuit decision directly on cross-sex hormones and the Eighth Amendment. And the Tenth Circuit disagrees that rejecting WPATH's standards is a constitutional violation, confirming that there is no clearly established law. *See Youmans*, 626 F.3d at 565; *Turner*, 848 F.3d at 686. So this Court should at least dismiss the personal-capacity claim.

### 3. The Eighth Amendment does not require access to feminizing products.

Plaintiff also fails to state an Eighth Amendment claim for access to feminizing clothing and cosmetic products.[2] At a minimum, this Court should dismiss all

---

[2] Although this Court has issued a preliminary injunction with respect to padding and hair-removal cream, *see* Op.21-28, Defendants respectfully submit for the reasons stated here and in their Eleventh Circuit briefing and oral argument that this conclusion was incorrect and should be reconsidered, No. 24-11382, ECF Nos. 26,

personal-capacity claims in their entirety.

First, Defendants have a rational security concern for denying Plaintiff access to social-transitioning items, so Plaintiff does not state an Eighth Amendment claim. As this Court explained, "officials do not act with deliberate indifference when they act based on rational security concerns." Op.23 (cleaned up). The Eleventh Circuit explained in *Keohane* that an inmate's "social-transitioning-related requests" present "serious security concerns—including, most obviously, that an inmate dressed and groomed as a female would inevitably become a target for abuse in an all-male prison." 952 F.3d at 1275. A *plaintiff* has the burden to show "all aspects of his Eighth Amendment claim[s]." *Hoffer*, 973 F.3d at 1274. Yet Plaintiff makes no plausible allegations that Defendants lack a rational security concern. And wisely so: It is "obviou[s]" that these items "would inevitably" make Plaintiff "a target for abuse in an all-male prison" and hinder "the ability to … detect contraband." *Keohane*, 952 F.3d at 1263, 1275.

Second, the Eleventh Circuit in *Keohane* rejected the inmate's claim on the

---

54 (11th Cir.). Preliminary injunctions by their nature are tentative and not binding on later merits proceedings. *See, e.g.*, *Vital Pharms. v. Alfieri*, 23 F.4th 1282, 1290 (11th Cir. 2022) ("A preliminary injunction" does "not … replace" a "merits decision." (cleaned up)); *B.P.J. v. W.V. State Bd. of Educ.*, 649 F. Supp. 3d 220, 233 (S.D. W. Va. 2023), *cert. pet. pending*, No. 24-43 (granted preliminary injunction then later dissolved injunction when granting defendant's summary-judgment motion).

ground that social-transitioning items are not "medically necessary" but at most "psychologically pleasing." *Id.* at 1274 & n.9. An intervention that is "pleasing" is "not nearly close enough" to the constitutional standard of *medical* necessity. *Id.* Plaintiff does not plausibly allege that the social-transitioning items requested here would be more than "psychologically pleasing." Plaintiff says the items "would treat [Plaintiff's] gender dysphoria by helping [Plaintiff] look closer to how [Plaintiff] looked when [Plaintiff] was on … feminizing hormones." SAC ¶¶92, 171. But statements that the items could merely "hel[p]" or "alleviat[e]" Plaintiff's symptoms are not plausible allegations of medical necessity. *Id.* The Constitution does not require the medical care to be "'perfect, the best obtainable, or even very good.'" *Keohane*, 952 F.3d at 1266. Officials violate the Eighth Amendment only when the care "'is so grossly incompetent, inadequate, or excessive as to shock the conscience.'" *Id.* *Keohane* controls here and mandates dismissal of this claim in its entirety.

At a minimum, this Court should dismiss Plaintiff's personal-capacity claim because of qualified immunity. *See, e.g.*, *Campbell*, 936 F.3d at 549 (qualified immunity on "requests for electrolysis and makeup" because circuit's "cases offer no indication that denying arguably nonmedical cosmetic accommodations violates the Eighth Amendment"). There is no clearly established law given *Keohane*'s *rejection* of an Eighth Amendment claim for social-transitioning items.

**B. Plaintiff does not plausibly allege Eighth Amendment violations for failure to protect or failure to transfer to a women's prison.**

**1. Plaintiff does not state a failure-to-protect claim.**

To state a failure-to-protect claim, a plaintiff must plausibly allege: the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm"; "the prison official ha[s] a sufficiently culpable state of mind, amounting to deliberate indifference"; and the constitutional violation is causing the plaintiff's injuries. *Cox v. Nobles*, 15 F.4th 1350, 1357-58 (11th Cir. 2021) (cleaned up). Plaintiff's claim (Counts 7 and 8) is limited to Phillips, as Plaintiff names only Jones and Kinte.

**Official Capacity:** For this claim, the issue is whether when the complaint was filed, there is an *ongoing* or *imminent* injury. Plaintiff lacks Article III standing to seek prospective relief for past actions, so the allegations before December 6, 2023, are irrelevant. *See* Op.31.

Plaintiff does not plausibly allege any of the three required elements. Plaintiff describes general conditions at Phillips that affect every offender housed there and not just Plaintiff. SAC ¶¶145-48. But Plaintiff must "poin[t] to specific features of a facility or its population rendering it particularly violent" in relation to Plaintiff. *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019). As this Court explained, "Plaintiff's conclusory assertion that Phillips is unconstitutionally dangerous—without more—is not enough for [Plaintiff] to show that inmates there are exposed to something even approaching the constant threat of violence." Op.30 (cleaned up).

13

And Plaintiff has no specific allegations of harm. As Plaintiff concedes, the cell currently has a functional lock, and the lock was there before this suit. SAC ¶142.

Plaintiff also asserts that a particular prison official harassed Plaintiff. *Id.* ¶¶14-52. Even if true, Plaintiff acknowledges this official no longer works at Phillips. *See* Op.33 ("Plaintiff agrees that the guard who was directly interfacing with Plaintiff and harassing [Plaintiff] no longer works at Phillips." (cleaned up)). So this Court should dismiss the official-capacity claims. SAC ¶¶236-42 (Count 7).

**Personal Capacity:** Plaintiff does not plausibly allege a substantial risk of serious harm due to conditions at Phillips. This element "is assessed objectively and requires the plaintiff to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Marbury*, 936 F.3d at 1233. Plaintiff alleges the conditions were sufficiently extreme because Plaintiff's cell lacked a lock for "18 months" and Plaintiff "has been sexually harassed, sexually assaulted in the shower, robbed at knife point, and threatened." SAC ¶¶240, 242 (footnotes omitted). But these allegations do not plausibly show that Plaintiff was "'exposed to something even approaching the constant threat of violence'" or where "'violence and terror reign.'" *Harrison v. Culliver*, 746 F.3d 1288, 1299-1300 (11th Cir. 2014). That a cell block "housed gang members," "was a dangerous environment involving inmates making weapons and fighting with each other," and was where the plaintiff inmate was "sexually harassed daily and threatened and harassed

14

on a daily basis by inmates demanding sex" is "insufficient to demonstrate that [the prison] was a place where violence and terror reign." *Dozier*, 2022 WL 988315, at *11 (cleaned up). The alleged facts here are equally insufficient.

In all events, Plaintiff does not plausibly allege that Warden Jones had a sufficiently culpable state of mind or acted unreasonably. Plaintiff says Jones "actually knew" of a risk of serious harm to Plaintiff because Plaintiff is transgender-identifying. SAC ¶239. But that alleged knowledge is not enough because "[t]he Eleventh Circuit has made clear that general awareness of possible violence is insufficient to establish liability." *Dozier*, 2022 WL 988315, at *11; *see Marbury*, 936 F.3d at 1234. Rather, "the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff contends that Jones's "long delay in placing a lock on" Plaintiff's "cell constitutes deliberate indifference." SAC ¶237. But the Complaint acknowledges that the lock situation arose because of inmate tampering. *See id.* ¶146 ("men have beat other padlocks off the door with tools"). Tampering is an obvious explanation for cells missing locks for the relevant period. Further, the Complaint acknowledges that the cell currently has a functional lock, and that Jones relocated Plaintiff when there were alleged safety concerns. *Id.* ¶¶142-44. Nor does Plaintiff

plausibly allege that Kinte removing the locks on Plaintiff's cell for about "24 hours" violates the Eighth Amendment by claiming that it exposed Plaintiff to "threat[s] and proposition[s] for sex." SAC ¶¶151, 249. It is implausible that the lack of lock caused the threats and propositions, given that inmates could make the statements regardless of whether Plaintiff had a lock on the cell at the time.

At a minimum, this Court should dismiss the personal-capacity claims because of qualified immunity. No Supreme Court or controlling Eleventh Circuit case shows that "the state of the law on the date of the alleged misconduct makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Washington*, 25 F.4th at 903 (cleaned up).

### 2. Plaintiff does not plausibly allege an Eighth Amendment violation for not transferring Plaintiff to a women's prison.

Plaintiff's claim demanding transfer to a women's prison must be dismissed for the same reasons as the other failure-to-protect allegations, *see supra* 13-16, plus several other independent reasons. SAC ¶¶257-61 (Count 10).

To start, nothing in the Complaint plausibly alleges that Defendants' unwillingness to transfer Plaintiff to a women's prison is unreasonable. As this Court explained, "officials do not act with deliberate indifference when they act based on rational security concerns." Op.23. As explained, there are obvious security concerns with transferring a biological male to a women's prison. *Supra* 6-7.

The Prison Litigation Reform Act also forecloses Plaintiff's transfer request

because the transfer demand, on its face, does not meet the need-narrowness-intrusiveness requirement. 18 U.S.C. §3626(a). Plaintiff does not allege that there is no way to safely house Plaintiff in a male prison that is consistent with the Constitution.

Plaintiff lists Jones and Oliver in their official capacity, but nowhere does Plaintiff allege they have the authority to transfer inmates between prisons. So sovereign immunity bars this official-capacity claim. *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law … at issue.").

Finally, this Court should at least dismiss the personal-capacity claim because of qualified immunity. Plaintiff can point to no authority, let alone clearly established law, for the remarkable idea that a prison official must transfer a biological male to a women's prison to protect the inmate. *See* Op.34 ("Plaintiff has not identified any case in which a court has ordered a corrections department to transfer a pre-operative transgender individual to a facility that houses a different gender.").

### C. Plaintiff does not plausibly allege an Eighth Amendment violation for placement in administrative segregation.

Plaintiff says "four years" of administrative segregation violates the Constitution. SAC ¶253.[3] But "administrative segregation and solitary confinement do not,

---

[3] Plaintiff uses interchangeably "solitary confinement" and "administrative segregation," but there are crucial differences. *E.g.*, SAC ¶252. In administrative segregation, Plaintiff gets, among other things, one hour of outside time and can receive visitors. *See* Ex. E at 11-13. Isolation, by contrast, is used as a form of discipline and

in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir. 1987). Plaintiff alleges no facts about Plaintiff's particular circumstances that require deviating from this rule.

The duration here does not come close to raising a constitutional issue. The Eleventh Circuit has said that a prisoner's "twelve-year confinement in" administrative segregation "raise[d] serious constitutional *questions*." *Id.* at 1429 (emphasis added). Plaintiff's length is "four years," which is not even close to the twelve years that merely raised constitutional questions in *Sheley*. SAC ¶253.

The particular conditions alleged in the Complaint also do not reflect cruel and unusual punishment. While in administrative segregation, Plaintiff has had access to outdoor time, adequate food, visitors, mental-health counselors, and other inmates to talk with. *E.g.*, Ex. E at 11; SAC ¶¶89, 110, 167 (acknowledging some access to "outdoor recreation, mental health counselors, [and] other people" while in segregation). "Because [Plaintiff] apparently has adequate food, clothing, and sanitation, the conditions of his confinement in [administrative segregation] do not on their face violate the Eighth Amendment." *Sheley*, 833 F.2d at 1429; *see LaVergne v. Stutes*, 82 F.4th 433, 437 (5th Cir. 2023) (no violation for similar circumstances).

Further, Plaintiff does not plausibly allege *both* that the segregation is

---

involves restrictions on peer contact and personal property.

"punitive" *and* that it "shocks the conscience, is grossly disproportionate to the of-fense, or is totally without penological justification." *Sheley*, 833 F.2d at 1429. To the contrary, Plaintiff acknowledges being in an "administrative custody cell," which differs from "disciplinary segregation." SAC ¶167. The segregation is thus not pu-nitive.

In any event, the far "more likely explanatio[n]" for Plaintiff's assignment to administrative segregation is to protect the inmate population *from Plaintiff*, not the other way around. *Iqbal*, 556 U.S. at 681; *see* SAC ¶158 ("record showed [Doe] was placed on involuntary administrative protective custody for the safety of the prison and [Doe]"). Plaintiff is in administrative segregation because Plaintiff is extremely dangerous. Plaintiff is serving a life sentence for aggravated sodomy and kidnapping with bodily injury. SAC ¶¶19, 57; Ex. M. Plaintiff had also previously committed a slew of felonies, including sodomizing a 14-year-old boy. Exs. G, K. In 2020, while incarcerated, Plaintiff pleaded guilty to conspiring with a known member of a dan-gerous gang to murder state and federal officials. Ex. H. Plaintiff admitted to making and mailing two bombs to the warden of Georgia State Prison, and two more bombs were found in Plaintiff's cell. Ex. L. And even more recently, the federal government indicted Plaintiff for constructing bombs and mailing them to federal buildings. Exs. I-J. Plaintiff's security profile is an "'obvious alternative explanation'" for Plaintiff's placement in segregation. *Iqbal*, 556 U.S. at 682. The segregation thus does not

"shoc[k] the conscience, is not grossly disproportionate to the offense, or is totally without penological justification." *Sheley*, 833 F.2d at 1429.

Equally fatal to Plaintiff's claim is the lack of non-conclusory allegations against the listed defendants. For Count 9, Plaintiff names Oliver, Lohman, and Jones. SAC at 78. But there are almost no allegations related to these officials' direct actions. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Instead, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014). Mere knowledge of or acquiescence in unlawful conduct is insufficient. *Iqbal*, 556 U.S. at 677.

Plaintiff says Jones was deliberately indifferent because he "was aware that … guards" "prevent[ed] [Doe] from accessing adequate food." SAC ¶254. The only non-conclusory allegation is a single instance when *someone who is not Jones* allegedly tampered with Plaintiff's food. *Id.* ¶149. There is no allegation Jones had anything to do with the alleged food problems. Again, mere knowledge of or acquiescence in unlawful conduct is insufficient. *Iqbal*, 556 U.S. at 677.

Plaintiff also states that "GDC officials often do not feed [Plaintiff] or compromise [Plaintiff's] food somehow." SAC ¶149. That allegation is a "naked

assertio[n] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). Plaintiff does not even say when this occurred (at Phillips or otherwise). In all events, Plaintiff does not allege that any of the defendants listed for this count were aware of this issue or disregarded a serious risk of harm. Nor does Plaintiff plausibly allege "'widespread abuse sufficient to notify the supervising official.'" *Keith*, 749 F.3d at 1048. Regardless, there is no allegation that when this suit was filed, Plaintiff was still getting inadequate food, so Plaintiff cannot state an official-capacity claim.

This Court should at least dismiss the personal-capacity claim because of qualified immunity. "There is a lack of controlling case law on this subject." *Shaw v. Hall*, 2016 WL 1248870, at *3 (M.D. Ga.). Courts have granted qualified immunity for far longer periods of segregation with far worse conditions. *See, e.g.*, *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (20 years); *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 741 (10th Cir. 2014) (30 years).

Finally, Plaintiff lists Oliver and Lohman in their official capacities only, but there are no allegations they have authority to remove Plaintiff from administrative segregation. Sovereign immunity thus bars the official-capacity claims against them. *See Grizzle*, 634 F.3d at 1319.

## III. Plaintiff does not plausibly allege ADA or Rehabilitation Act violations.

To state an ADA or RA claim, Plaintiff must plausibly allege not only a violation of the statutes but also an "actual violation" of the Constitution. *United States*

21

*v. Georgia*, 546 U.S. 151, 159 (2006). Plaintiff has done neither.[4] As explained, Plaintiff does not plausibly allege a violation of the Constitution. Nor does Plaintiff allege a violation of the ADA or the RA. *See* SAC ¶¶207-35 (Counts 4-6). "Under Title II, 'no qualified individual with a disability shall, by reason of such disability, … be denied the benefits of the services, programs, or activities of a public entity.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

### A. Plaintiff is not denied any benefits or discriminated against.

Plaintiff alleges Defendants violated the ADA because Defendants did not provide SRS, adequate cross-sex hormones, social-transitioning items, and transfer to a women's prison. *E.g.*, SAC ¶210 ("denial of its medical services"). But the ADA "'does not create a remedy for medical malpractice.'" *Schiavo v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005). Because Plaintiff's claim is "based upon improper medical treatment decision," it "may not be brought pursuant to either the ADA or the Rehabilitation Act." *Shelton v. Ark. DHS*, 677 F.3d 837, 843 (8th Cir. 2012); *see Jones v. Rutherford*, 546 F. App'x 808, 811-12 (11th Cir. 2013) (same).

Regardless, Plaintiff does not plausibly allege any denial of benefits. Nothing in the Complaint plausibly alleges Defendants are doing anything other than following GDC policy. Standard Operating Procedure 507.04.68 ("Management and

---

[4] Under this Court's prior ruling, the ADA and RA are identical and neither expressly excludes Plaintiff's condition. Op.37, 39-45. Defendants preserve their contrary argument on both grounds. Defendants refer to the ADA and RA interchangeably.

Treatment of Transgender Offenders") states that all offenders "will receive the full range of treatment services necessary to meet contemporary standards in the community." Ex. A at 1. As required by GDC policy, Defendants are providing a "constitutionally appropriate medical and mental health treatment" to Plaintiff. Ex. C at 1. Plaintiff received an individualized assessment and has an individualized treatment plan for gender dysphoria that provides for psychotherapy and hormones. Plaintiff's demand for a different, preferred treatment does not plausibly allege a denial of benefits. And for transfer, Plaintiff does not plausibly allege a denial of medical services because Plaintiff never alleges transfer is related to medical care but an issue of protection.

Plaintiff states that Defendants "denied … Doe the benefits of GDC's services" when it "denied … Doe the surgical evaluation recommended by" Dr. Frady. SAC ¶209. But as the Court already explained, "Dr. Frady's report contains no 'evidence' he 'diagnosed the need for gender-affirming surgery.' Rather, he recommended 'further medical assessment by specialty providers.'" Op.8 n.2 (cleaned up).

**B. Plaintiff's alleged denial is not "because of" any disability.**

**Sex-Reassignment Surgery:** Plaintiff alleges the denial was because of Plaintiff's gender dysphoria because "[p]eople with other disabilities and medical needs do not face the same barriers to accessing surgical care." SAC ¶210. Plaintiff's contention is implausible. All inmates' medical needs, including surgical care, are subject to security, prison-administration, and cost considerations. *See, e.g.*, Ex. B

at 2 (Medical care "must be carried out with regard to administrative and security practices that serve to guide an effective correctional system."); *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1270 (10th Cir. 2018) ("Prison officials have the obligation to consider security and other factors unique to the prison environment.").

**Hormones:** Plaintiff vaguely asserts Defendants "denied" Plaintiff "access to … adequate HRT." SAC ¶209. But Plaintiff does not plausibly allege that any denial is *because of* a claimed disability. To the contrary, Plaintiff is receiving hormones precisely *because of* Plaintiff's gender dysphoria. Ex. C. It is implausible on its face that the very reason Plaintiff is receiving hormones is also somehow the reason Plaintiff is getting inadequate treatment.

**Social-Transitioning Items:** Plaintiff does not plausibly allege that denying access to social-transitioning clothing and cosmetic items was because of Plaintiff's gender dysphoria. Nothing in the Complaint indicates that any purported denial was motivated by anything other than neutral security and prison-administration concerns, which are always relevant in the prison context. *See, e.g.*, Ex. C at 5-7; *Havens*, 897 F.3d at 1270. Nor does Plaintiff plausibly allege animus. *See* Op.47.

**Transfer to Women's Prison:** As to Plaintiff's request for a transfer to women's prison, Plaintiff does not plausibly allege discrimination or denial because of a *disability (gender dysphoria)*. Plaintiff cannot transfer to a women's prison because of Plaintiff's *biological sex*, the privacy and safety concerns such a transfer

presents, and Plaintiff's own security profile—not Plaintiff's gender dysphoria. As the en banc Eleventh Circuit held, "a policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 809 (11th Cir. 2022) (en banc); *see Alabama v. U.S. Sec'y of Educ.*, 2024 WL 3981994, at *4-5 (11th Cir.). Plaintiff's alleged disability thus makes no "difference in the outcome." *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1334 (11th Cir. 1999) (cleaned up).

### C. Plaintiff's proposed accommodations are not reasonable.

Plaintiff contends that Plaintiff's requests are "reasonable accommodations." SAC ¶¶211-14. Quite the opposite. Each "accommodation" Plaintiff seeks is unreasonable and would obviously unduly burden prison administration and security.

"[W]hether accommodations are reasonable must be assessed through the prism of the prison setting." *Havens*, 897 F.3d at 1269. Courts must consider "legitimate penological interests," such as "security and cost." *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc). Courts also "accor[d]" officials "considerable discretion." *Havens*, 897 F.3d at 1270. Plaintiff's requests, on their face, raise grave prison-administration and security concerns. *Supra* 6-7, 11-12.

### CONCLUSION

For these reasons, the Court should grant Defendants' motion to dismiss.

Dated: February 4, 2025

Respectfully submitted,

Christopher M. Carr
  *Attorney General*
  Georgia Bar No. 112505
Stephen J. Petrany
  *Solicitor General*
  Georgia Bar No. 718981
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
spetrany@law.ga.gov

*Attorneys for Defendants Georgia Department of Corrections, Tyrone Oliver, Randy Sauls, Chad I. Lohman, Sharon Lewis, Marlah Mardis, DeShawn Jones, Aaron Pineiro, Jamal Kinte Roberts, and Anthony Mulloy*

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris*
Rachael C.T. Wyrick*
Thomas S. Vaseliou*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

*\*pro hac vice*

*Special Assistant Attorneys General and Attorneys for Defendants Georgia Department of Corrections, Tyrone Oliver, Randy Sauls, Chad I. Lohman, Sharon Lewis, Marlah Mardis, DeShawn Jones, Aaron Pineiro, Jamal Kinte Roberts, and Anthony Mulloy*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C and this Court's subsequent orders. The brief is prepared in 14-point Times New Roman font.

*/s/ Jeffrey M. Harris*

26

## CERTIFICATE OF SERVICE

I certify that on February 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

s/ *Jeffrey M. Harris*