**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-5578-MLB |
| GEORGIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

### NOTICE OF WITHDRAWAL OF UNITED STATES' STATEMENT OF INTEREST

The United States respectfully gives this notice that it is hereby withdrawing

its statement of interest, filed on January 8, 2024 (ECF No. 69) (*Doe* SOI).

The United States has since disavowed the scientific theories on which the

*Doe* SOI was based.  *Id.* (citing World Pro. Ass'n for Transgender Health

(WPATH), Standards of Care for the Health of Transgender and Gender Diverse

People, Version 8, at S106 (Sept 15, 2022)).  It is now the view of the United

States that WPATH Standards of Care lack scientific integrity and should not be

relied upon.  *Cf. Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) (citing

*Kosleck v. Spencer*, 774 F.3d 63, 90-91 (1st Cir. 2014) (en banc)) (describing a

previous version of the WPATH Standards of Care as "hotly contested" and "a

matter of contention within the medical community"); *see also* Executive Order

14187, *Protecting Children from Chemical and Surgical Mutilation* (Jan. 28, 2025)

(recognizing WPATH guidance's lack of scientific integrity).

The United States believes that the WPATH Standards of Care lack

scientific integrity and should not be relied upon for a few reasons.  First, public

reporting indicates that the prior administration manipulated the WPATH guidance

to remove age minima for the provision of chemical or surgical mutilation.[1]

Second, WPATH's unreliability has similarly been highlighted in other litigation,

including revelations that:

- WPATH violated multiple international standards for the creation of clinical guidelines that WPATH itself claimed to follow in Standards of Care 8 ("SOC-8");
- WPATH restricted the ability of SOC-8's evidence review team to publish the systematic evidence reviews finding scant evidence for transitioning treatments;
- WPATH intentionally used SOC-8 as a political and legal document to increase coverage for transitioning treatments and advance WPATH's political goals;
- WPATH caved to outside political pressure by Admiral Rachel Levine and others to remove age minimums for hormones and surgeries in SOC-8; and
- WPATH "muzzle[d]" its own members who tried to inform the public of their concerns over pediatric transitioning treatments.

---

[1] Nava, Victor, "Biden admin official pressured medical experts to nix age limit guidelines for transgender surgery: court doc," NY Post, June 26, 2024, *available at* https://nypost.com/2024/06/26/us-news/biden-administration-official-rachel-levine-pressured-medical-experts-to-remove-age-limit-guidelines-for-transgender-surgery/ (citing Plaintiff-Intervenor United States of America's Brief in Support of Its Motion to Exclude Certain Testimony, Ex. 24, *Boe v. Marshall*, 22-cv-184, M.D. Al., June 24, 2024).

*See* Defendants' Motion for Summary Judgment and Brief in Support, *Boe v. Marshall*, No. 22-cv-00184, ECF No. 619, at 5 (M.D. Ala. June 26, 2024).  Third, a member of the Eleventh Circuit signaled a deep skepticism of WPATH.  *Eknes-Tucker v. Governor*, 114 F.4th 1241, 1261 (11th Cir. 2024) (Lagoa, J., concurring in denial of rehearing *en banc*) ("recent revelations indicate that WPATH's lodestar is ideology, not science").  Because the *Doe* SOI rests its entire foundation on shaky WPATH guidance, it is unreliable.

The prior Doe SOI also wrongly asserted that gender dysphoria necessitated elective care to abate risk of suicide.  A recent comprehensive report in the United Kingdom found that while deaths by suicide in trans-identifying individuals are tragically above the national average, there is "no evidence that gender-affirmative treatments reduce this."  The Cass Review, Independent Review of Gender Identity Services for Children and Young People:  Final Report at 195 (Apr. 2024), perma.cc/D728-LUM8.[2]  The *Doe* SOI was based on inaccurate information and debunked science, and the United States disavows its contents.  Accordingly, this Court should not rely on the *Doe* SOI.

---

[2] *Examining gender-specific mental health risks after gender-affirming surgery: a national database study.*  The Journal of Sexual Medicine (Feb. 2025) ("From 107583 patients, matched cohorts demonstrated that those undergoing surgery were at significantly higher risk for depression, anxiety, suicidal ideation, and substance use disorders than those without surgery.")

Dated: April 25, 2025                    Respectfully submitted,

                                                    HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Acting Senior Counsel
Civil Rights Division

REBECCA B. BOND
Chief, Disability Rights Section

REGAN RUSH
Chief, Special Litigation Section

*/s/ Jennifer K. McDannell*
JENNIFER K. MCDANNELL
Deputy Chief, Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
jennifer.mcdannell@usdoj.gov

*Attorneys for the United States of America*

4

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: April 25, 2025

*/s/ Jennifer K. McDannell*
Jennifer K. McDannell
*Attorney for the United States of America*

# CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send e-mail notification of this filing to counsel of record.

/s/ Jennifer K. McDannell
Jennifer K. McDannell
*Attorney for the United States of America*