# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

JANE DOE,

     Plaintiff,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS *et al.*,

     Defendants.

Civ. Case No. 1:23-cv-5578-MLB

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................2

LEGAL STANDARD...............................................................................10

ARGUMENT ...........................................................................................11

    I.     MS. DOE IS LIKELY TO SUCCEED ON HER EIGHTH
          AMENDMENT CLAIMS.................................................................11

          A.    Ms. Doe has an objectively serious medical need. ...................12

          B.    Defendants are deliberately indifferent to the risk of serious
               harm caused by gender dysphoria and asthma. ........................13

          C.    Ms. Doe's solitary confinement deprives her of basic
               necessities and poses an unreasonable risk of harm. ...............17

    II.    MS. DOE IS LIKELY TO SUCCEED ON HER CLAIMS FOR
          DISABILITY DISCRIMINATION. ....................................................20

    III.   ABSENT COURT INTERVENTION, MS. DOE WILL LIKELY
          SUFFER IRREPARABLE HARM. ....................................................23

    IV.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST
          STRONGLY FAVOR GRANTING AN INJUNCTION. .................24

    V.    THE INJUNCTION SATISFIES THE PLRA..................................24

CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adams v. Poag*,
61 F.3d 1537 (11th Cir. 1995) ...............................................................13

*Allen v. Koenigsmann*,
700 F. Supp. 3d 110 (S.D.N.Y. 2023) ...................................................14

*Bernier v. Allen*,
38 F.4th 1145 (D.C. Cir. 2022)...............................................................13

*Bircoll v. Miami-Dade County*,
480 F.3d 1072 (11th Cir. 2007) ..............................................................21

*Board v. Farnham*,
394 F.3d 469 (7th Cir. 2005) ..........................................................12, 16

*Brennan v. Comm'r, Alabama Dep't of Corr.*,
626 F. App'x 939 (11th Cir. 2015).........................................................14

*Chandler v. Crosby*,
379 F.3d 1278 (11th Cir. 2004) ........................................................17, 19

*Colwell v. Bannister*,
763 F.3d 1060 (9th Cir. 2014) ................................................................14

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000) .....................................................................12

*De'Lonta v. Angelone*,
330 F.3d 630 (4th Cir. 2003) ..................................................................12

*De'lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) ..................................................................14

*Diamond v. Owens*,
131 F. Supp. 3d 1346 (M.D. Ga. 2015)............................................13, 14

*Disability Rights Montana, Inc. v. Batista*,
930 F.3d 1090 (9th Cir. 2019) ............................................................ 18

*Doe v. Georgia Dep't of Corr.*,
No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) ................ 5

*Dream Defs. v. Governor of Fla.*,
57 F.4th 879 (11th Cir. 2023) ............................................................ 11

*E.E.O.C. v. STME, LLC*,
938 F.3d 1305 (11th Cir. 2019) ......................................................... 22

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) ............................................................. 14

*Estelle v. Gamble*,
429 U.S. 97 (1976) ............................................................................. 11

*Farley v. Nationwide Mut. Ins. Co.*,
197 F.3d 1322 (11th Cir. 1999) ......................................................... 23

*Farmer v. Brennan*,
511 U.S. 825 (1994) ........................................................................... 12

*Farrow v. West*,
320 F.3d 1235 (11th Cir. 2003) ......................................................... 12

*Fields v. Smith*,
653 F.3d 550 (7th Cir. 2011) ............................................................. 14

*Finley v. Huss*,
723 F. App'x 294 (6th Cir. 2018) ...................................................... 18

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ............................................................. 24

*Gonzalez v. Governor of Ga.*,
978 F.3d 1266 (11th Cir. 2020) ......................................................... 11

*Hall v. Palmer*,
No. 3:15-CV-824-J-39JRK, 2017 WL 4764345 (M.D. Fla. Oct. 20, 2017)…..20

*Harper v. Lawrence Cty.*
    592 F.3d 1227 (11th Cir. 2010..........................................................................12

*Harris v. Thigpen*,
    941 F.2d 1495 (11th Cir. 1991) .......................................................................11

*Harrison v. Ash*,
    539 F.3d 510 (6th Cir. 2008) ...........................................................................13

*Helling v. McKinney*,
    509 U.S. 25 (1993).............................................................................................20

*Hoffer v. Sec'y, Fla. Dep't of Corr.*,
    973 F.3d 1263 (11th Cir. 2020) ............................................................11, 12, 13

*Isis Benjamin et al. v. Commissioner Oliver*,
    No. 1:25-cv-04470-VMC, ECF No. 50 (N.D. Ga. Aug. 8, 2025)..........1, 8, 9, 16

*Keohane v. Fla. Dep't of Corr. Sec'y*,
    952 F.3d 1257 (11th Cir. 2020) ............................................................12, 13, 14

*Lane v. Philbin*,
    835 F.3d 1302 (11th Cir. 2016) .......................................................................19

*Lee v. Young*,
    533 F.3d 505 (7th Cir. 2008) ...........................................................................13

*Melendez v. Sec'y, Florida Dept. of Corr.*,
    No. 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15, 2022)........................6, 18

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................................................11

*Pyles v. Fahim*,
    771 F.3d 403 (7th Cir. 2014) ...........................................................................14

*Quintanilla v. Bryson*,
    730 F. App'x 738 (11th Cir. 2018)..................................................17, 18, 19, 20

*Rosati v. Igbinoso*,
    791 F.3d 1037 (9th Cir. 2015) .........................................................................14

*Sheley v. Dugger*,
     833 F.2d 1420 (11th Cir. 1987) ...................................................17, 18

*Shotz v. Cates*,
     256 F.3d 1077 (11th Cir. 2001) .........................................................21

*Smith v. County of Los Angeles*,
     535 F. Supp. 2d 1033 (C.D. Cal. 2008) .............................................17

*Swain v. Junior*,
     961 F.3d 1276 (11th Cir. 2020) .........................................................19

*Thomas v. Bryant*,
     614 F.3d 1288 (11th Cir. 2010) .........................................................12

*Williams v. Kincaid*,
     45 F.4th 759 (4th Cir. 2022) ........................................................21, 23

*Winter v. Nat. Res. Def. Council, Inc.*,
     555 U.S. 7 (2008) ..............................................................................23

*Zepeda v. INS*,
     753 F.2d 719 (9th Cir. 1983) .............................................................24

## STATUTES

18 U.S.C. § 3626(a)(2) ..............................................................................24

42 U.S.C. § 12102(1)(A) ...........................................................................22

42 U.S.C. § 12131 .....................................................................................21

## OTHER AUTHORITIES

35 C.F.R. § 104.12(a) ................................................................................21

Plaintiff Jane Doe, a transgender woman with debilitating gender dysphoria, respectfully seeks a temporary restraining order and preliminary injunction requiring Defendants to immediately provide her (1) adequate hormone replacement therapy ("HRT") at 300 mg/day of spironolactone and at least 5 mg/weekly of estradiol, with increased adjustments if Ms. Doe is not experiencing feminizing effects;[1] (2) consistent administration of all medications she is currently prescribed; (3) gender-affirming social transition items, including a wig, facial and body hair removal cream, brassieres, breast and buttock padding; (4) gender-affirming surgery, which Defendants' Gender Dysphoria Committee approved, and (5) reclassification from administrative segregation at Phillips State Prison to a general population unit with other transgender women, such as Building B1.[2]

As described herein, the relief Ms. Doe seeks—essentially, the same medically-necessary treatment and reasonable accommodations she received in

---

[1] Since Ms. Doe has, pretextually, been given a medical reason for this reduction in the spironolactone dosage (allegedly, because her lab results show no testosterone in her system), Plaintiff does not believe that she qualifies as a class member subject to preliminary injunctive relief in *Isis Benjamin v. Commissioner Oliver*, No. 1:25-cv-04470-VMC, Dkt. 50 (N.D. Ga., Aug. 8, 2025). *See* Ex. 3 (Preliminary Injunction Order in *Benjamin* case). As set forth below, however, Ms. Doe's current HRT is inadequate, even in view of the purported medical justification and SB 185.

[2] Though the operative complaint in this case (Dkt. 259) excluded injunctive relief (due to Plaintiff's relocation to federal custody), given the pendency of Plaintiff's Third Amended Complaint (Dkt. 287) reinstating her request for injunctive relief and the ongoing issues with Plaintiff's care, Plaintiff files this motion contingent upon grant of the Motion for Leave to File Third Amended Complaint. Dkt. 287.

federal custody (with the addition of weekly estradiol doses and the approved gender-affirming surgery)—is necessary to mitigate the substantial risk of life-threatening harm she faces from her gender dysphoria and sporadically treated asthma.

## BACKGROUND

This Court is familiar with Ms. Doe and her long history of debilitating gender dysphoria. *See* Ex. 9 (Dkt. 67-3, First Doe Affidavit); Dkt. 125 (Tr. dated February 12, 2024) at 16-71; Dkt. 131 (Order) at 49 ("Plaintiff has on multiple occasions attempted self-castration and suicide, and the Court finds credible her testimony describing her significant and constant psychological distress."). Accordingly, Ms. Doe focuses on the recent developments that necessitate this motion for narrowly tailored relief.

When Ms. Doe initiated this lawsuit in December 2023, she simultaneously moved for a preliminary injunction requiring Defendants to immediately provide her: (1) an evaluation for gender-affirming surgery (and, if indicated, the surgery itself); (2) adequate hormone replacement therapy; (3) gender-affirming commissary items; and (4) a transfer to a women's prison. *See* Dkt. 2 ("Mot."). The Court heard argument and received evidence, including expert and fact testimony, over two days in February 2024. *See* Dkt. 124 (Tr. 02/12/2024); Dkt. 125 (Tr. 02/13/2024).

On April 17, 2024, the Court resolved the following critical issues when it

granted, in part, Ms. Doe's motion for preliminary relief, Dkt. 131:

- Ms. Doe is a qualified individual with debilitating gender dysphoria, which is a disability subject to the protections of the Americans with Disabilities Act ("ADA"). *Id.* at 14-15, 45.

- Without adequate treatment for her disability, Ms. Doe experiences debilitating anxiety, depression, suicidality, and attempts at suicide, self-harm, and self-castration.  *Id.* at 45.

- Absent the Court's intervention, Ms. Doe is at risk of irreparable and severe self-harm. *Id.* at 49.

- Given Ms. Doe's prior attempts at self-castration and suicide, Defendants clearly know the risk of harm she faces from untreated gender dysphoria. *Id.* at 15.

- Ms. Doe has submitted many verbal and written requests, including at Phillips State Prison, for adequate HRT, an evaluation for gender-affirming surgery, and feminizing commissary items like breast and buttock pads, hair removal cream, and a wig. *Id.* at 2-6.

- HRT resulting in feminizing changes to Ms. Doe's body is medically necessary for treatment of her gender dysphoria. *Id.* at 17-18.

- Defendants are obligated to provide Ms. Doe with HRT resulting in feminizing changes to her body. *Id.* at 17.

Based on those findings and others, this Court ordered Defendants to provide

Ms. Doe access to breast and buttock padding and hair removal cream until her HRT

(then, 100 mg/daily of spironolactone and 6 mg/biweekly of estradiol) had the

intended impact on her body. *Id.* at 53. As for the HRT itself, the Court observed

that Ms. Doe "has not experienced the intended changes to her body so as to relieve

her distress." *Id.* at 20. Still, the Court declined to order an increased dosage, finding

3

that Ms. Doe had not been on that dosage of HRT long enough to determine its sufficiency.[3] *Id.* Additionally, this Court credited Defendants' assertion that a wig and makeup might pose a security risk and declined to order that relief. *Id.* at 23-24. Finally, this Court opined that Ms. Doe's request for gender-affirming surgery was "not yet ripe, as Defendants have not completed the decision-making process and denied her that surgery," but required Defendants to provide status updates on this process. Dkt. 131 at 16-17. Thereafter, Defendants reported that on September 20, 2024, Ms. Doe was cleared gender-affirming surgery by a cardiologist. Dkt. 183 at 1-2. On December 24, 2024, Defendants confirmed that its Gender Dysphoria Committee had "medically cleared Ms. Doe for surgery and ha[d] informed the [GDC] that the recommended treatment plan for Ms. Doe is gender reassignment surgery." Dkt. 197. Just days later, on December 30, 2024, Centurion of Georgia, LLC submitted an enigmatic status report stating that GDC's Statewide Medical Director, Dr. Marlah Mardis, sent a letter requiring them to reconvene in January "to carefully consider the questions posed in the letter." Dkt. 211. On February 3, 2025, Centurion reported that it had not responded to the letter. Dkt. 217. Now more than

---

[3] In September 2024, while she was still detained at Phillips State Prison, her HRT dosages increased to 300 mg of spironolactone per day and 10 mg of estradiol biweekly, where it remained through her time in federal custody. *See* Ex. 6 (showing a start date of September 9, 2024 for 300 mg of spironolactone, given via a combination of a 100 mg tablet and a 50 mg tablet twice daily); *see also* Ex. 8 (showing identical dosage in December 2024); Ex. 7 (showing identical dosage in March 2025).

one year later, neither institutional defendant has provided any updates regarding the gender-affirming surgery, despite her repeated requests regarding the same. As a result, Ms. Doe has been denied the care prescribed in her recommended treatment plan.

Ms. Doe was transferred into federal custody at the Laurens County Detention Center on March 4, 2025 to await sentencing on federal charges. *See Doe v. Ga. Dep't of Corr.*, No. 24-11382, 2025 WL 1206229, at *1 (11th Cir. Mar. 6, 2025) (dismissing the appeal as moot because Ms. Doe was no longer in state custody). The 199 days Ms. Doe spent in federal custody were "a gift." Ex. 2 (Second Doe Aff.) ¶ 6. There, she received much of the requested medical and mental healthcare. She continued to receive 300 mg/day of spironolactone and 10 mg/biweekly of estradiol. *Id.* ¶ 8. However, estradiol doses should be given on a weekly basis, so Ms. Doe consistently felt depressed, anxious, and occasionally suicidal during the week between doses. Ex. 1 (Dr. Lowell Decl.) ¶¶ 43, 46. Ms. Doe was given a wig and gender-affirming items like a razor to shave her body and facial hair. Ex. 2 ¶ 16. She was housed—without incident—in a general population unit and had access to legal visits and mail. *Id.* ¶ 21. Correctional officers used her correct pronouns (she/her) and legal name. *Id.* ¶ 27. These conditions provided Ms. Doe immense (albeit incomplete) relief from the symptoms of her disability.

On September 18, 2025, Ms. Doe was sentenced on her federal charges. *Id.* ¶ 6.[4] That day, she was transferred back to state custody and into administrative segregation (i.e., solitary confinement[5]) in Phillips State Prison. Defendants also reduced her spironolactone dosage by *half*, to only 150 mg/daily that day. As a result, the minimal feminizing effects Ms. Doe began to experience are reverting: her testicles have grown, she wakes with erections, her body and facial hair have grown back, and her breasts have reduced in size. Consequently, her anxiety, depression, and distress have worsened. *See* Ex. 4 at 13 (noting the "increased distress" being caused by reduction in HRT regimen).

On October 17, 2025, Dr. Gerald Wynne told Ms. Doe on a Zoom call that GDC would *not* increase her spironolactone dosage and likely would not provide the approved gender-affirming surgery, due to S.B. 185 and her hormone levels being

---

[4] Meanwhile, Ms. Doe's case was administratively closed until April 14, 2025, because of the bankruptcy of then-defendant Wellpath LLC. Dkt. 230; Dkt. 233. Proceedings resumed on June 30, 2025, Dkt. 254, and Ms. Doe filed her second amended complaint on July 29, 2025, Dkt. 259. Since she was then in federal custody, Ms. Doe's second amended complaint omitted her claim for injunctive relief against state prison officials and sought damages only. Since she is now back in state custody, Ms. Doe moved on October 14, 2025 for leave to file a third amended complaint to reallege her claims for injunctive relief, which remains pending. Dkt. 287.

[5] Though not termed as "solitary confinement," Ms. Doe's actual conditions, especially at present, do not differ from solitary confinement in any meaningful way. *See generally Melendez v. Sec'y, Fla. Dept. of Corr.*, 2022 WL 1124753 (11th Cir. Apr. 15, 2022) (per curiam) (referring to "solitary confinement," "administrative confinement status," and "close management" status interchangeably).

"in the target range." Ex. 2 ¶ 12. Dr. Wynne did not conduct a physical examination in order to make these determinations. *Id.* The reduction of Ms. Doe's HRT appears to be a pretextual justification that disregards the positive effects she experienced on higher dosage levels. GDC or MHM Correctional Services, LLC ("MHM") also reached this decision without conducting any lab work. Even if this change were predicated on lab results, such reason alone is not sufficient to justify this change in her treatment. This Court has already opined that labs levels alone are not a sufficient measure of providing adequate "medically necessary care," where the "intended outcome" does not occur:

> "[T]he evidence suggests that Dr. Mulloy is not properly examining whether plaintiff's current HRT regime is providing the changes to her body that defendants agree are medically necessary . . . . If after enough time has passed, plaintiff has not experienced feminizing change to her body sufficient to relieve her stress, the Court will probably find her likely to succeed on her claim that Dr. Mulloy is refusing to provide her medically necessary care by declining to judge the HRT's efficacy based on physical changes to her body."

Dkt. 179 at 34:21-35:7. This is precisely what has occurred. After being on her HRT regimen for sufficient time, Ms. Doe had finally begun to see physical changes in her body which reduced her stress and suggested a more successful therapy regimen. *See* Ex. 2 ¶ 8. Now, without a physical examination and presumably based solely upon lab results irrespective of her physical changes, GDC

or MHM drastically reduced Ms. Doe's hormone dosage, effectively reversing her the feminizing effects she experienced.[6]

Defendants refuse to provide Ms. Doe with body hair removal cream or a razor. When she requested female undergarments like a new brassiere and girdle for buttock padding, Defendants gave her male boxers. *Id.* ¶ 19. Without access to these social transition items, Ms. Doe cannot recognize herself in the mirror.

In addition, Defendants confiscated the wig Ms. Doe was issued at Laurens County Detention Center, found her guilty for "possession of a wig," and sanctioned her for possessing one at all. *Id.* ¶¶ 30-31. As a result of this sanction, from October 7, 2025 through January 30, 2026, Ms. Doe lost access to a phone, mail, packages, recreational spaces, and the commissary. She thus received 120 days of restriction solely for possessing a medically necessary wig.

Defendants continue to classify Ms. Doe into administrative segregation, or solitary confinement, in Building C1, cell 8. *Id.* ¶ 22. There, she has been confined to a tiny cell for almost 24 hours per day, every day, barring certain exceptions such as legal calls. A metal plate covers the window to block any natural light, and the

---

[6] The other significant development which has occurred since this Court's prior decision regarding Ms. Doe's hormone therapy is passage of S.B. 185. However, Plaintiff agrees with Judge Calvert's decision in the *Benjamin* case in which she found that "Defendants' implementation of S.B. 185 was not a medical judgment, it was a policy judgement" and enjoined defendants there from "tapering hormone therapy does to class members for the purpose of S.B. 185 compliance." Ex. 3 at 55, 62 (*Benjamin*, Dkt. 50, Preliminary Injunction Order and Opinion).

door flap is locked closed. *Id*. Ms. Doe has been denied basic human needs like social interaction and, until recently, out-of-cell exercise. *Id.* ¶ 23. The debilitating effects of solitary confinement are compounded by Defendants' decision to sanction her for possessing the wig given to her in federal custody. *See* Ex. 4 at 10-11. Ms. Doe has little, if any, contact with anyone except correctional officers (who refuse to use her correct pronouns and name) and her attorneys. Ex. 2 ¶ 25.

Ms. Doe is not the only transgender woman incarcerated at Phillips State Prison. Defendants house other transgender women in the A and B buildings, including in double-bunked cells in the B1 dorm.[7] *Id.* ¶ 26. However, Defendants refuse to remove Ms. Doe from solitary confinement for cryptic reasons.

Ms. Doe's conditions are tainted by retaliatory conduct by Warden Pineiro and other correctional officers who have, without good cause, shaved all of the hair on her head multiple times, *Id.* ¶ 34, and disciplined her for conduct for which she was not responsible, *Id.* ¶ 32. In October, Warden Pineiro prohibited correctional officers from requesting medical assistance for Ms. Doe's friend, who had compulsively self-harmed by cutting open his abdomen just two cells away from her. *Id.* ¶ 36. GDC left him to fend for himself for three days until he died. *Id*. Ms.

---

[7] Among those housed at Phillips State Prison is Fantasia Horton, a transgender woman, who is one of the named plaintiffs in the class action case of *Isis Benjamin v. Commissioner Oliver*, No. 1:25-cv-04470-VMC, Dkt. 50 (N.D. Ga. Aug. 8, 2025).

Doe fears that if she needs emergency medical attention for any self-harm event in the future, Warden Pineiro will similarly withhold medically necessary care.

Horrifyingly, GDC has already begun withholding medications they have prescribed Ms. Doe on numerous occasions, as detailed in Ms. Doe's affidavit and documented in email exchanges with GDC and MHM counsel, including refusing to give her an estradiol injection for over a month on two separate occasions (resulting in her experiencing severe headaches and vomiting), despite her repeatedly asking prison staff for her missed injections. *Id.* at ¶ 42; Ex. 10 (email exchanges documenting and admitting to withheld medications).

## **LEGAL STANDARD**

Injunctive relief is appropriate where, as here, the movant establishes: (1) "a substantial likelihood of success on the merits," (2) a substantial threat that the plaintiff "will suffer an irreparable injury unless the injunction is granted," (3) that "the harm from the threatened injury outweighs the harm the injunction would cause the opposing party," and (4) that "the injunction would not be adverse to the public interest." *Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 889 (11th Cir. 2023) (citation and internal quotation marks omitted). Where, as here, "the government is the opposing party," "[t]he third and fourth factors merge." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020); *accord Nken v. Holder*, 556 U.S. 418, 435 (2009). Ms. Doe satisfies these requirements.

10

**ARGUMENT**

## I. MS. DOE IS LIKELY TO SUCCEED ON HER EIGHTH AMENDMENT CLAIMS.

The "Eighth Amendment forbids the 'inflict[ion]' of 'cruel and unusual punishments.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting U.S. Const. amend. VIII). "And the Supreme Court has held that because the Cruel and Unusual Punishments Clause prohibits 'the unnecessary and wanton infliction of pain,' it also prohibits 'deliberate indifference to serious medical needs of prisoners.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). "Federal and state governments therefore have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing." *Id.* (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991)).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Hoffer*, 973 F.3d at 1270 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). To meet the first prong, Ms. Doe must demonstrate an "objectively serious medical need." *Id.* "[M]ental health needs are no less serious than physical needs" for Eighth Amendment purposes. *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). The "subjective component" asks whether prison officials showed "deliberate indifference to inmate health or safety," i.e., that they knew of and disregarded an excessive risk to health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

11

(internal quotation marks and citation omitted). A defendant exhibits deliberate indifference if he or she "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Hoffer*, 973 F.3d at 1270 (quoting *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1234 (11th Cir. 2010).

### A. Ms. Doe has an objectively serious medical need.

Ms. Doe easily satisfies the objective component, since "Defendants don't dispute either that Plaintiff has gender dysphoria or that gender dysphoria is an objectively serious medical need." Dkt. 131 at 14; *see also Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265-66 (11th Cir. 2020); *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

Additionally, the Eleventh Circuit and its sister circuits recognize asthma as a serious medical need for purposes of an Eighth Amendment deliberate indifference claim. *Adams v. Poag*, 61 F.3d 1537, 1539-43 (11th Cir. 1995); *Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) ("[A]sthma 'can be and frequently is, a serious medical condition depending on the severity of attacks.'") (quoting *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005)); *Harrison v. Ash*, 539 F.3d 510, 518-19 (6th Cir. 2008) (recognized asthma as serious medical need). Given her history of asthma along with potential comorbidities with chronic obstructive pulmonary disease, Ms. Doe requires consistent access to her inhaler. Ex. 1 ¶ 63-64.

Since there is no question that failing to adequately treat Ms. Doe's gender dysphoria and respiratory conditions poses an unreasonable risk to her health and safety, the objective component is met here. *See Hoffer*, 973 F.3d at 1270.

### B. Defendants are deliberately indifferent to the risk of serious harm caused by gender dysphoria and asthma.

"[R]efusal to provide timely, available, and appropriate treatment for a known, serious medical condition posing excessive risk to an inmate's health or safety [constitutes] deliberate indifference in violation of the Eighth Amendment." *Bernier v. Allen*, 38 F.4th 1145, 1151 (D.C. Cir. 2022). This includes when treatment decisions are "based exclusively on nonmedical considerations . . . rather than any medical justification." *Id*. "[R]esponding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference.'" *Keohane*, 952 F.3d at 1266-67; *see also Diamond v. Owens,* 131 F. Supp. 3d 1346, 1372-75, 1382 (M.D. Ga. 2015) (GDC policy restricting hormone therapy but offering counseling stated an Eighth Amendment claim). Likewise, medical practitioners who discontinue effective medication regimens without justification may harm patients in a manner that can give rise to an inference of deliberate medical indifference. *Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 943-44 (11th Cir. 2015); *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014); *Allen v. Koenigsmann*, 700 F. Supp. 3d 110, 143 (S.D.N.Y. 2023).

13

Like the Eleventh Circuit in *Keohane* and *Diamond*, other courts have repeatedly found the denial of medically necessary gender dysphoria care to be the "paradigm of deliberate indifference." *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015) (blanket surgery ban stated a valid Eighth Amendment claim); *see also Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011) (enjoining blanket ban on hormone therapy and surgery); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (reversing dismissal of Eighth Amendment claim based on failure to provide gender confirmation surgery); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793-94 (9th Cir. 2019) (holding treatment of gender dysphoria to be inadequate when the treatment "stopped short of what was medically necessary").

Here, Defendants are well aware that denying Ms. Doe adequate treatment for gender dysphoria put her at a substantial risk of serious harm. *See* Dkt. 131 at 15 ("Defendants clearly know the risk of harm Plaintiff faces from untreated gender dysphoria."). In fact, this Court has already determined that Ms. Doe is likely to succeed on her claim that Defendants are denying her medically necessary care in refusing to provide certain social transitioning items. *Id.* at 27; *see also* Ex. 5 (order stating that Ms. Doe "[m]ust have access to wig as deemed medical necessity for gender dysphoria"). Yet, Defendants deliberately terminated the medically necessary treatment and reasonable accommodations Ms. Doe was receiving previously in GDC custody and federal custody. Defendants have withheld estradiol

injections and spironolactone for prolonged periods of time without medical justification, causing Ms. Doe to suffer physiological symptoms of HRT withdrawal—such as severe headaches and vomiting—as well as recurring psychological symptoms of depression and suicidal ideation. Ex. 2 ¶¶ 24, 42. Defendants have repeatedly shaved Ms. Doe's head bald on at least three separate occasions since November 2025, even when her hair was shorter than half an inch long, in spite of GDC Standard Operating Procedures allowing inmates to grow their hair to three inches in length. *Id.* ¶ 34. Ms. Doe has repeatedly made her concerns known to Defendants, and yet her reasonable requests are routinely ignored. *Id.* ¶ 45. Additionally, Dr. Lowell has determined it is "imperative and urgent that Ms. Doe's hormone therapy dosages be corrected" to 300 mg of spironolactone daily and at least 5 mg of estradiol weekly (increasing from there as needed), and that she has access to the social transition items she had in federal custody. Ex. 1 ¶¶ 47-48, 56-58. Further, Defendants deliberately disregarded Ms. Doe's treatment plan by failing to administer the gender reassignment surgery for which she was recommended and approved in December 2024. Ms. Doe thus demonstrates a strong likelihood of success on her Eighth Amendment claim for medical deliberate indifference regarding her gender dysphoria treatment. S.B. 185 does not alter the medical necessity of Ms. Doe's treatment. Rather, S.B. 185 reflects a blanket policy decision that only reinforces Defendants' deliberate indifference to Ms. Doe's medical needs,

without any underlying medical justification. *See* Ex. 3 at 34 (finding S.B. 185 to be a "policy judgment" not a "medical judgment" and that its application in the *Benjamin* case "is deliberate indifference.").

Likewise, Defendants know that denying Ms. Doe consistent access to her steroid inhaler creates a substantial risk of serious harm from asthma-related incidents, which is compounded by Defendants also denying her consistent access to a rescue inhaler. Still, Defendants have denied Ms. Doe access to her inhalers on numerous occasions, Ex. 2 ¶ 42, including on more than eight separate occasions in January. Ex. 1 ¶ 62. Given her asthma diagnosis, Ms. Doe must be provided consistent and ready access to a rescue inhaler in case of a sudden asthma attack, particularly with her known night-time breathing issues and history of life-threatening asthmatic episodes. Ex. 2 ¶ 38. Defendants' unwillingness to supply Ms. Doe with an inhaler evinces their disregard of her asthma and places her at a substantial risk of present and future harm. *Farnham*, 394 F.3d at 485 (held plaintiff sufficiently established deliberate indifference based on Defendants' refusal to provide inhaler); *Smith v. Cnty. of L.A.*, 535 F. Supp. 2d 1033, 1038 (C.D. Cal. 2008) (found plaintiff stated Eighth Amendment claim based on denial of rescue inhaler). Thus, Ms. Doe has demonstrated a strong likelihood of success on her Eighth Amendment claim for medical treatment of her asthma. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

**C. Ms. Doe's solitary confinement deprives her of basic necessities and poses an unreasonable risk of harm.**

"[C]onfinement in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Quintanilla v. Bryson*, 730 F. App'x 738, 746 (11th Cir. 2018) (citation omitted) *see also Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir. 1987) (prolonged solitary confinement "raises serious constitutional questions"). A challenge to conditions of confinement involves a two-part demonstration: the plaintiff must show that (1) the conditions of confinement are objectively "serious" or "extreme"; and (2) prison officials subjectively acted with "deliberate indifference" with regard to the conditions at issue. *Crosby*, 379 F.3d at 1289–90 n.21.

First, Ms. Doe will likely prevail in establishing that her conditions of confinement are objectively "serious" or "extreme." *See id.* at 1289. Conditions of confinement are objectively "serious" or "extreme" if there is "unreasonable risk of serious damage to [a prisoner's] future health or safety." *Id.* A primary factor in the "serious" or "extreme" inquiry is "the length of time in isolation." *Sheley*, 833 F.2d at 1429 (reversing denial of petition for writ of habeas corpus where prisoner was kept in solitary confinement for over twelve years); *see also Melendez*, No. 21-13455, 2022 WL 1124753, at *21 (affirming preliminary injunction ordering prisoner's return to general prison population after five years in solitary confinement). Courts also consider the "food, clothing, sanitation, medical care, and

personal safety" afforded to a prisoner in solitary confinement. *Quintanilla*, 730 F. App'x at 746 (quoting *Sheley*, 833 F.2d at 1428–29). Courts have likewise recognized exercise, person-to-person social interaction, and environmental stimulation as basic human needs.

Additionally, every circuit to consider the question has held that the prolonged solitary confinement of individuals with known mental illnesses raises serious Eighth Amendment concerns, particularly where the conditions exacerbate physical and psychological harm. *See Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1098-99 (9th Cir. 2019) (violation where prisoners with mental illnesses were segregated without significant mental health care, substantially worsening their mental health and increased risks of self-harm and suicide); *Finley v. Huss*, 723 F. App'x 294, 295-96 (6th Cir. 2018) (prison officials show deliberate indifference by placing prisoner with psychiatric disorder in prolonged administrative segregation despite risk of dangerously worsening prisoner's mental health).

Defendants have kept Ms. Doe in solitary confinement *for approximately six years* (barring her relatively short stint in federal custody). *See* Ex. 9 ¶ 108 (solitary confinement began in July 2019). Defendants prohibited Ms. Doe from going outside for months at a time, *id.* ¶ 113 (describing three-month, six-month, and ten-month periods without access to outdoors); covered the windows in her cell and locked the door flap, Ex. 2 ¶ 22; and keep her in a cell with no central heat or air, *id.*

These conditions severely burden Ms. Doe's mental and physical health. *Id.* ¶ 24 ("The effects of solitary confinement are severe and debilitating..."); Ex. 9 ¶ 115 ("I feel like I live every day in torture."); *see also* Ex. 4 at 7-8 ("Ms. Doe's current, extreme restrictions while in solitary confinement have seriously negatively impacted her mental health and are placing her at grave risk for another, severe mental health crisis."). Defendants' prolonged solitary confinement of Ms. Doe raises an intolerable risk that she will self-harm, or worse. *Id.* ("She is at risk of additional suicide attempts and further mental health deterioration.").

Second, Ms. Doe will likely prevail in establishing that prison officials subjectively acted with "deliberate indifference" with respect to her "severe" or "extreme" conditions of confinement. *See Quintanilla*, 730 F. App'x at 746. Establishing this prong of deliberate indifference requires showings of: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)). An incarcerated person does not need to await a tragic event before seeking relief, but she must show that "a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety." *Crosby*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Defendants act with deliberate indifference by continuing to keep Ms. Doe in solitary despite her recurring self-

harm and the formal grievances she has filed alerting Defendants of the severe toll of continued isolation. Ex. 9 ¶¶ 33 (describing suicide attempts), 109 (describing grievances), 118 (describing statement from GDC Mental Health Director that Doe "had been on lockdown far too long").

Ms. Doe's solitary confinement is unconstitutionally "arbitrary and 'without penological justification,'" *Quintanilla*, 730 F. App'x at 746-47, particularly since Ms. Doe has a sparse disciplinary record that does not justify seclusion.[8] *See also Hall v. Palmer*, No. 3:15-CV-824-J-39JRK, 2017 WL 4764345, at *13-14 (M.D. Fla. Oct. 20, 2017) (prisoner adequately presented Eighth Amendment violation without penological justification when held in solitary confinement without disciplinary infractions on his part). Furthermore, Ms. Doe meets the diagnostic criteria for Acute Stress Disorder, which will likely continue and manifest as Post Traumatic Stress Disorder. Ex. 1 ¶ 75. According to Dr. Lowell, GDC's retaliation and solitary confinement are "further exacerbating the harm to [Ms. Doe's] mental health at a time when she is already experiencing significant distress due to GDC's inadequate treatment of her gender dysphoria." *Id.* ¶ 69.

## II. MS. DOE IS LIKELY TO SUCCEED ON HER CLAIMS FOR DISABILITY DISCRIMINATION.

---

[8] Even taking her most recent "disciplinary" actions since returning to GDC custody into account (and assuming these are not merely retaliatory), each of these actions were for non-violent offenses related to Ms. Doe's possession of a wig (which has been deemed a medical necessity for her gender dysphoria), which do not justify continued "extreme" confinement conditions.

Defendants' refusal to adequately treat Ms. Doe's gender dysphoria violates Titles II and III of the ADA and Section 504 of the Rehabilitation Act.[9]  To prevail on a discrimination claim under Title II of the ADA, a plaintiff must show: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001); 42 U.S.C. § 12132; *see also* 42 U.S.C. § 12131. Ms. Doe easily satisfies each element.

*First*, Ms. Doe is a qualified individual with a disability under the terms of the ADA. Dkt. 131 at 45. As this Court has explained, "the ADA defines the statutory term 'disability,'" to mean, among other things, "'a physical or mental impairment that substantially limits one or more major life activities of such individual[.]'" *E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019) (quoting 42 U.S.C.

---

[9] The Rehabilitation Act does not require a separate analysis from the ADA "because the two statutes provide identical protection . . . ." *Williams v. Kincaid*, 45 F.4th 759, 765 n.1 (4th Cir. 2022). Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination on the basis of disability in any program or activity receiving federal assistance. Section 504 also requires covered parties to provide reasonable accommodations to individuals with disabilities so they can fully participate in the benefits administered by those covered parties. 35 C.F.R. § 104.12(a).

§ 12102(1)(A)). This court already determined that gender dysphoria qualifies as a disability under the ADA. *See* Dkt. 131 at 44 (collecting cases) ("the ADA does not exclude gender dysphoria from its protection").

*Second*, by depriving Ms. Doe of accommodations for her gender dysphoria and by isolating her in solitary confinement, Defendants exclude her from programs, services, and activities offered to incarcerated people. Ex. 2 ¶ 23. Ms. Doe has requested services and accommodations that would alleviate the symptoms of her disability, including gender-affirming surgery; HRT that results in feminizing changes to her body; social transition items like a wig, hair removal cream, undergarments, and makeup; and transfer out of administrative segregation and into the general population with other transgender women. *See also* Ex. 4 at 8 (recommending provision of "medically necessary gender-affirming medical care" and "communication with family, books and activities for intellectual nourishment and time outside of her cell"). Defendants' denial of these services exposes Ms. Doe to a serious risk of psychological and physical harm. *Williams,* 45 F.4th at 768 (internal citation omitted); *see* Ex. 4 at 24.

*Finally*, to constitute actionable discrimination under the ADA and Rehabilitation Act, a plaintiff's disability need only be a "motivating factor" in her exclusion—that is, "a factor that 'made a difference in the outcome.'" *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999) (citation omitted).

That is the case here. Defendants have denied Ms. Doe's many requests for accommodations because her disability is gender dysphoria. Because Ms. Doe is likely to prevail on her ADA and Rehabilitation Act claims, preliminary injunctive relief is appropriate.

## III.    ABSENT COURT INTERVENTION, MS. DOE WILL LIKELY SUFFER IRREPARABLE HARM.

A plaintiff seeking preliminary injunctive relief must show "that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Physical and psychological injury can constitute irreparable harm warranting injunctive relief. Dkt. 131 at 48-49.

For Ms. Doe, the risk of permanent injury caused by Defendants' deprivation of her constitutional rights is a self-evident example of irreparable harm. *See id.* at 49 ("Plaintiff has shown that—absent the Court's intervention—she is at risk of irreparable harm, namely severe self-harm. Plaintiff has on multiple occasions attempted self-castration and suicide, and the Court finds credible her testimony describing her significant and constant psychological distress."); *see also* Ex. 1 ¶ 70 ("Ms. Doe is at significant risk of self-harm or suicide, and I am very concerned that her condition will continue to deteriorate without prompt intervention."). Ms. Doe's life remains in peril so long as Defendants refuse to provide her medically necessary care.

23

## IV.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR GRANTING AN INJUNCTION.

Defendants "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Dkt. 131 at 51-52 (citing *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). The cost of compliance cannot justify Defendants' unconstitutional and incompetent care for Ms. Doe. *Id.* at 52 (collecting cases). Finally, "upholding constitutional rights surely serves the public interest." *Id.* (citing *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)). Each factor weighs in favor of injunctive relief, as they did before.

## V.   THE INJUNCTION SATISFIES THE PLRA.

The PLRA requires that proposed preliminary injunctive relief be "narrowly drawn," "extend no further than necessary to correct the harm," and be "the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The requested injunction satisfies all three requirements. First, it is critical to protect Ms. Doe from unconstitutional and unacceptable levels of risk, including self-harm and harm from arbitrarily denying her prescribed medications. Second, the injunction is narrowly tailored to achieve similar medical treatment and reasonable accommodations previously provided to Ms. Doe that mitigated many symptoms of her disability, as well as the gender-affirming surgery Defendants' doctors determined is necessary to alleviate her gender dysphoria. Finally, the requested relief is minimally intrusive. For instance, Defendants already house transgender

24

women in the general population at Phillips State Prison. Ms. Doe simply seeks to join them.

## **CONCLUSION**

Having established that a temporary restraining order and preliminary injunctive relief are necessary, Ms. Doe respectfully asks this Court to order Defendants to provide her (1) adequate hormone replacement therapy at 300 mg/day of spironolactone and at least 5 mg/weekly of estradiol, with increased adjustments if Ms. Doe is not experiencing feminizing effects; (2) consistent administration and access of all medications GDC has currently prescribed her; (3) gender-affirming surgery, which has been approved by Defendants' Gender Dysphoria Committee; (4) gender-affirming social transition items, including a wig, facial and body hair removal cream, brassieres, breast and buttock padding; and (5) reclassification from segregation into a general population unit with other transgender women, such as Building B1.

Respectfully submitted this 4th day of March, 2026.

*/s/ Scott Novak*

Lydia Wright
Derrick Luster
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C. 20033
(202) 455-4399
lydia@rightsbehindbars.org
derrick@rightsbehindbars.org

Will Claiborne
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com

Katherine E. Jeffress *

BAKER BOTTS L.L.P.
401 S 1st Street Suite 1300
Austin, Texas 78704
(512) 322-2672
katie.jeffress@bakerbotts.com

Nicholas F. Palmieri *
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2640
nick.palmieri@bakerbotts.com

Sterling Marchand *
Scott Novak *
BAKER BOTTS L.L.P.
700 K St NW
Washington, DC 20001
(202) 639-1316
sterling.marchand@bakerbotts.com
scott.novak@bakerbotts.com

Shelby Saxon *
BAKER BOTTS L.L.P.
2001 Ross Avenue
Suite 600
Dallas, TX 75201-2980
shelby.saxon@bakerbotts.com

Christopher J. Murell
Georgia Bar Number: 195116
Meghan Matt*
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law
meghan@murell.law
*Admitted *pro hac vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing conforms to the requirements of L.R. 5.1 and 7.1. The brief is prepared as double-spaced between lines and in 14-point Times New Roman font.

*<u>/s/ Scott Novak</u>*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on March 4, 2025, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsel of record are registered ECF users.

*/s/ Scott Novak*