# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Jane Doe,<br><br>    *Plaintiff*,<br><br>v.<br><br>Georgia Department of Corrections, et al.,<br>    *Defendants*. | Civ. Case No. 1:23-cv-05578-MLB |

## SECOND AFFIDAVIT OF JANE DOE

I, Jane Doe, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge:

1. I first filed a sworn affidavit in this case on November 18, 2023. ECF 67-3.

2. On February 12, 2024, I testified in open court and subject to cross-examination in support of my first Motion for a Preliminary Injunction. *See* ECF 124 (Tr. Feb. 12, 2024) at 16-71. At that time, I was held in GDC custody at the Phillips State Prison, an all-male correctional facility in Buford, Georgia.

3. In my first affidavit and February 2024 testimony, I detailed my experiences as a transgender woman in the custody of the Georgia Department of

1

Corrections. I explained how my gender dysphoria, left untreated, causes such severe emotional and psychological pain that I have resorted, many times, to self-harm, self-mutilation, attempted self-castration, and attempted suicide. *See, e.g.*, Ex. 9 (Tr.) at 68:13-70:3; 68:16-17 ("I am plagued almost daily with self-castration attempts and suicide ideation.").

4. As one example, I described the debilitating harm I suffered in 2019, when Defendants chose to stop providing me with medically necessary hormone replacement therapy. *See* Ex. 9 (Tr.) at 21:17-22-19; *id.* at 15-19 ("The deep, dark, all-consuming depression that led me to the suicide attempt related to my gender dysphoric stress, it was unbearable, the pain, the emotional pain was simply unbearable.").

5. I have also explained how my body responds quickly and significantly when my dosages of hormone replacement therapy are increased, decreased, or stopped altogether. Ex. 9 (Tr.) at 70:9-71:16; esp. 71:5-9 ("At six milligrams [of Estradiol], Your Honor, it's doing nothing. I mean, my breasts are not growing. My testicles are still the same size. The hair on my face and body are still growing at a rapid rate. I might as well --they must be shooting water in me. It's just not enough.")

6. On March 3, 2025, I was transferred from State custody into the custody of the U.S. Marshal Service at Laurens County Detention Center, pending sentencing on federal charges. I remained in federal custody until September 18, 2025, when I

was sentenced on those charges and transferred back to State custody at Phillips State Prison. As detailed below, the 199 days I spent in federal custody were a gift.

<u>*Hormone Replacement Therapy*</u>

7.  Starting around September 2024, when I was still in State custody, I was prescribed and received 300 mg daily of spironolactone (a testosterone blocker) and 10 mg every two weeks of estradiol (estrogen). I continued to receive those same HRT dosages during my entire time in federal custody (approximately March 3, to September 18, 2025).

8.  Throughout my time in both state and federal custody, during the week after the estradiol injection, I often feel irritated and experience hot flashes. By the middle of the second week, I often feel anxious and occasionally suicidal. In federal custody, none of these symptoms occurred during the first week after the injection. I have consistently felt poorly during the second week after my estradiol injection.

9.  Back in State custody, I am prescribed and receive the same estradiol dosage, but only 150 mg of spironolactone per day, when it is administered. The minimal feminizing effects I gained are now reverting. My testicles have grown. I wake with erections. My body and facial hair have grown back. My breasts have reduced in size. This is devastating.

3

10. I have requested that Defendants return my HRT to the dosages I received from September 2024 (i.e., while in State custody) through September 2025. That is, 300 mg daily of spironolactone and 10 mg biweekly of estradiol.

11. On October 17, 2025, I had a telemedicine appointment with Dr. Gerald Wynne, the Statewide Medical Director for Centurion Health. Over Zoom, Dr. Wynne refused to increase my spironolactone dosage.

12. Dr. Wynne read me the text of SB 185 and said I would be taken off HRT at the end of November 2025 because of the law. He also said that my hormones were "in the target range" and that increased spironolactone would have no physical impact on my body. Because the appointment was by Zoom, Dr. Wynne did not conduct a physical examination of my body.

13. I asked Dr. Wynne for a treatment plan to accommodate my gender dysphoria and suggested increased HRT dosages, social transitioning items like a wig, and gender-affirming surgery. He said, "There's nothing we can do."

14. I still have not had a physical examination or in-person appointment with a medical doctor since returning to State custody on September 18, 2025.

### *Gender-Affirming Items*

15. On June 18, 2024, while I was in State custody at Phillips State Prison, Nurse Practitioner Gina Feriola issued a Provider Treatment Order (PTO)

4

confirming that for me, a wig is "a medical necessity for gender dysphoria." The PTO, which includes no expiration date, states as follows:

> Must have access to wig as deemed a medical necessity for gender dysphoria; per policy Facility/Center Barber/Cosmetology Shops #228.02, effective date 6/22/2023 page 10/11, subsection H. Inmate has been informed of policy and is able to provide her own wig. Item will be mailed to provider in medical department directly to be provided to inmate. Providing this transitioning tool will significantly decrease stress related SIB.

16. In federal custody, I was permitted to have two high-quality wigs. I also had access to a razor and could shave my face or body any time. I rarely needed to, since the 300 mg/daily dosage of spironolactone effectively reduced my hair growth. As Nurse Feriola apparently understood, these transitioning tools indeed significantly decreased my debilitating symptoms of gender dysphoria.

17. When I returned to GDC custody, correctional officers confiscated my wig and refused to provide a new or different one. In fact, as described below, I have been sanctioned in disciplinary court for possessing the wig at all, despite Nurse Feriola's PTO stating that a wig is medically necessary for me.

18. In GDC custody, I was given one tube of Magic Shave and instructed to purchase any additional hair removal cream from commissary. That cream is not effective for body hair and it burned my face when I used it to remove my facial hair. I am not allowed to purchase batteries to use my battery-operated razor, and I have no access to any other razor or hair removal system.

5

19. I used to wear padding to feminize my shape, but I cannot wear that padding anymore because it has worn down beyond use. I have been issued male boxers, but my requests for female undergarments and replacement padding have been ignored.

20. Without a wig, female undergarments, or any way to remove facial and body hair, I do not recognize myself in the mirror.

*Solitary Confinement*

21. In federal custody, I was housed in general population without incident. I had my own cell but was able to socialize with others in the dorm and in the yard and build a sense of community. I also had access to legal visits, phone calls, and mail.

22. Back in GDC custody, I am held in Building C1, Cell 8, a segregation/solitary confinement cell that is approximately 8 by 12 feet. A metal plate covers the window to block any natural light, and the door flap is locked closed. There is no central heat or air.

23. I am denied basic human needs like social interaction and out-of-cell exercise. I was not permitted out of the cell at all until January 31, 2026, except to attend legal visits and mental health counseling appointments. Until recently, Unit Manager Kirby did not even permit me to leave my cell for mental health counseling. I am still excluded from participating in group activities, classes, certificate

programs, and counseling. Unlike my peers, I am excluded from accessing the library, walking with others on the yard, eating in the chow hall, or having contact visits with my family.

24. The effects of solitary confinement are severe and debilitating. Cut off from the outside world, I feel isolated and alone. My anxiety and depression are worse than ever.

25. This was particularly exacerbated by GDC's decision to restrict my access to the phone, mail, packages (catalogue orders), visitation, and store, which were only recently lifted on January 31, 2026. I have no contact with anyone except correctional officers (who refuse to use my correct pronouns and name) and my attorneys.

26. I know other transgender women incarcerated at Phillips State Prison. They are housed in general population in the A Building and/or the B Building, not in solitary confinement. For instance, I am friends with a transgender woman housed in a double-bunked cell in B1 Dorm. I am aware of no legitimate reason preventing GDC from housing me with my friend in the B1 Dorm.

<em>Treatment by Officers and Retaliation</em>

27. In federal custody, the correctional officers almost always permitted to move without shackles or handcuffs, without incident. They also used my correct

pronouns (she/her) and name, which I legally changed on May 8, 2025, to match my gender identity. I felt respected and safe.

28. In GDC custody, correctional officers handcuff me routinely, including when escorted to shower in the dorm. Beginning in January 2026, correctional officers started leaving me handcuffed during legal calls without explanation. They refuse to use or recognize my correct pronouns or legal name.

29. I received no disciplinary writeups for six years, including during those 199 days in federal custody, until I returned to Phillips State Prison in September 2025. I believe these writeups are in retaliation for this lawsuit and my continued requests for reasonable accommodations for my gender dysphoria.

30. When I returned to State custody, I was written up on three charges: (1) lying to staff (about having permission to possess a wig); (2) possession of escape material (my wig); and (3) possession of a wig. All three charges related to the wig I brought with me from federal custody because of Nurse Feriola's PTO stating that a wig is medically necessary treatment for my gender dysphoria. The federal holding facility bought me the wig that GDC confiscated.

31. The disciplinary board found me not guilty of the first two charges and guilty of the third. This was over the objections of my advocate, Sgt. Martin, and without regard to Nurse Feriola's PTO from June 2024. My 30-day sentence for the third charge started on October 7, 2025. A few days later, Warden Pineiro reversed

the first two "not guilty" findings. As a result, I was found guilty for *three* disciplinary charges related to possession of my wig and my 30-day sentence was extended to 120 days.

32. Warden Pineiro wrote me up again on Friday, October 4, 2025. This time, he was investigating flooding in the lockdown unit and came to my cell, which (like every other lockdown cell I've ever seen) has graffiti on the walls. I did not place the graffiti there. Nonetheless, Warden Pineiro wrote me up for "effacing or altering state property," even after other correctional officers explained that the prior resident of my cell had *already* been disciplined a few months prior for leaving those markings on the walls of my cell.

33. Because of these additional writeups, Warden Pineiro restricted my access to phone, mail, visitation, out-of-cell time, and the store until January 30, 2026.

34. GDC typically allows inmates to grow their hair to three inches in length. However, on at least three separate occasions now—on November 20, 2025, on January 8, 2026, and on February 10, 2026—Warden Pineiro ordered GDC corrections officers to shave my head bald, which they did even though my hair was shorter than half an inch long. My attorneys asked Defendants' counsel why this action outside of prison policy is being taken against me and have not received an

answer informing them for why GDC officials are repeatedly shaving my head, which they know significantly exacerbates my gender dysphoria.

35. I believe Warden Pineiro's actions are in retaliation for this lawsuit and/or my continued requests for reasonable accommodations for my gender dysphoria. His actions cause me to fear for my safety and well-being.

36. In October, a friend of mine, who was being detained just two cells away from me, cut open his abdomen. Instead of calling for medical attention immediately, GDC left him in his cell to fend for himself for three days. When I walked by his cell, I could see his guts hanging out. I could even smell his blood from my cell. Warden Pineiro specifically instructed the nurses and other staff not to tend to him. Warden Pineiro placed an extra padlock on his cell to ensure that GDC staff could not help him. My friend explained that he knew he was dying but that there was nothing he could do to change that. He asked me to stay up with him so that he would not die alone, which I did. I found out the next morning that he had died. I fear that if I need emergency medical attention going forward, GDC and Warden Pineiro will similarly withhold medically necessary care.

*Medical and Mental Health Care*

37. In federal custody, I had regular access to medical and mental healthcare. For instance, I spent several hours, multiple times weekly, in the medical

unit at Laurens County Detention Center to receive medical treatment. I was never handcuffed or shackled before, during, or after those appointments.

38. Back in GDC custody, I am still waiting for an in-person appointment and physical examination with a medical doctor. As I described above, I had telemedicine appointments with Dr. Wynne on Friday, October 17, 2025, and on Wednesday, December 10, 2025. However, Dr. Wynne said the December 10, 2025 appointment was mistakenly scheduled, and the only thing we talked about was conducting a sleep study to examine my breathing issues because I wake up in the middle of the night feeling like I am not able to breathe. No sleep study has been conducted yet, even though I was told by a nurse practitioner that it had been approved. Dr. Wynne has not talked to me about my labs or endocrinology appointments since October 17, 2025.

39. Because I have not been examined by a medical doctor or registered nurse since my return to Phillips State Prison, no medical professional has conducted a physical examination to determine whether the current HRT dosage is having the intended feminizing impact on my body (it is not).

40. From September 19, 2025, until around October 10, 2025, I saw a mental health counselor, Ms. Walker, for only about fifteen minutes, twice a week. She would come into the lockdown unit to meet with me. If these superficial meetings are intended to address my debilitating symptoms of gender dysphoria,

11

which grow worse every day here, they have not succeeded. On October 10, 2025, Dr. Skibinski told Ms. Walker that in the future, she will remove me from Suicide Prevention status, which would reduce my contact with Ms. Walker to only twice a month.

41. On November 13, 2025, Ms. Walker attempted to meet with me outside of my cell, as we typically did. However, Unit Manager Kirby instructed Ms. Walker that I could not leave my cell because I have a Disciplinary Report. Until recently, I was only allowed to discuss my private counseling matters with Ms. Walker from my cell, within earshot of other inmates and corrections officers. As a result, I was deprived of proper mental healthcare for months.

42. I have had radically inconsistent access to prescription medications in GDC custody. To the best of my recollection, I was denied access to:

    a. Estradiol injections, as scheduled: on October 21 and 22, 2025; between October 24, 2025 and November 19, 2025; and between multiple weeks spanning sometime in January through February 12, 2026—I suffered severe headaches and vomiting as a result of these numerous missed injections; and February 26, 2026 through the present.

    b. Spironolactone pills: on December 6 and 7, 2025; from January 17, 2026 through January 21, 2026; on February 9, 2026, and on February 15, 2026. On February 20 and 22, 2026, I received only 50 mg of spironolactone.

      c.      A steroid inhaler for asthma: on October 6, 2025, October 10, 2025, October 11, 2025, October 13, 2025, November 20, 2025, January 17, 2026, and January 18, 2026; on the nights of December 6, 2025, December 7, 2025, and December 16, 2025; on the mornings of December 8, 2025 and January 16, 2026; on January 24, 2026; on February 9, 2026; on February 15, 2026; and on February 21, 2026.

      d.      A pill for my mental health treatment on February 16, 2026.

      e.      A rescue inhaler for asthma until I have an asthma attack, even though I should have constant access in case of an emergency.

43.    On numerous occasions, I was not given any prescription pain medication when I needed it or any medication to regulate my blood pressure. I have lost hope that GDC and MHM are willing to respond to my medical needs.

44.    Additionally, I often receive medications and my inhaler at infrequent times that interferes with the timing of dosages. For example, I frequently (approximately three times a week) receive my medication/inhaler at 11:30 pm or later, and then again for the morning dosage very early in the morning between 3:00-4:00 am. In my previous experience in state custody, I received my medications at regular intervals between 7:00-8:00 a.m. for the morning dosage and 4:00-5:00 p.m. in the afternoon for the evening dosage.

*Requests for Reasonable Accommodations*

45. I have requested, verbally and in writing, services and accommodations that would alleviate the symptoms of my disability. These include the gender-affirming surgery I was approved for; consistent hormone replacement therapy that results in feminizing changes to my body; social transition items like a wig, hair removal cream, undergarments, and makeup; transfer out of administrative segregation and into the general population with other transgender women; and transfer to a women's prison. GDC and MHM have not meaningfully responded to any of these requests.

46. I, Jane Doe, declare that due to time constraints and technological inabilities given my incarceration, I could not personally sign this affidavit. On this day, March 3, 2026, I spoke with my attorneys Scott Novak and Derrick Luster via video call and I authorized them to e-sign this on my behalf because I was unable to provide a written signature by the time of filing.

47. I declare under penalty of perjury that the foregoing is true and correct.

                                                   */s/ Jane Doe*
                                                   Jane Doe
                                                   March 3, 2026