**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE, <br><br>        Plaintiff, <br><br> v. <br><br> GEORGIA DEPARTMENT OF CORRECTIONS, *et al.*, <br><br>        Defendants. | Case No. 1:23-cv-5578-MLB |

---

**MHM DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FINAL AMENDED COMPLAINT**

---

MHM Correctional Services, LLC ("MHM"), Centurion of Georgia, LLC ("Centurion"), Rhonda Billings, Dr. Sherri Skibinski, Dr. Cathleen Cleary, Dr. Donald Bowling, Sidney Moore, Dr. Wil Ausborn, and Jeremy Lane (collectively, "the MHM Defendants"), Defendants in the above-styled action, by and through their undersigned counsel, respectfully file this Motion to Dismiss Counts 1, 4, and 5 of Plaintiff's Final Amended Complaint as to these defendants based on the failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Plaintiff Jane Doe (an incarcerated transgender woman) asserts that the MHM Defendants (mental health care providers)[1] were deliberately indifferent to her medical needs by denying her requests for surgical intervention and gender-affirming care. Plaintiff's claims against the MHM Defendants include an Eighth Amendment violation, a violation of Section 504 of the Rehabilitation Act, and a violation of Title III of the Americans with Disabilities Act. But Plaintiff's allegations fail to support these claims. She fails to plausibly allege that these defendants have denied her medically necessary care or, if they have, that they did so with the subjective recklessness necessary to support a claim of deliberate indifference. The Court should dismiss the Plaintiff's claims against the MHM Defendants.

## BACKGROUND

Plaintiff filed her original complaint on December 6, 2023, against the Georgia Department of Corrections ("GDC"), state officials, and medical and mental-health providers for violating the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. Plaintiff alleges that the defendants failed to provide her with necessary gender-affirming surgery, other forms of gender-affirming care, and accommodations for her gender dysphoria. [*See*

---

[1] Except for Centurion of Georgia, LLC, which is a company which took over the medical contract from WellPath in July 2024. It is a contract-holding entity only and has no employees.

2

*generally*, Doc. 1.] Plaintiff has since filed multiple amended complaints, and on April 16, 2026, with leave of the Court, Plaintiff filed a Final Amended Complaint. [Doc. 315.]

**Factual allegations.** MHM holds a contract with GDC to provide mental health services to GDC patients pursuant to a contract. [*Id.* at ¶ 9.] Centurion has held the medical contract with the GDC since July 1, 2024. [*Id.* at ¶ 10.] The MHM Defendants are alleged to have served on Plaintiff's treatment team, or to have evaluated her for gender-affirming surgery. [*Id.* at ¶ 11.] Plaintiff alleges that when she was transferred back to GDC custody from federal custody in September 2025, "all Defendants, but especially GDC Defendants, immediately ceased the reasonable accommodations provider to her in federal custody." [*Id.* at ¶ 86.] She alleges that GDC Defendants confiscated her federally provided wig and refused to provide reasonable accommodations such as gender-affirming social transition items. [*Id.* at ¶¶ 87-88.] As to the MHM Defendants, Plaintiff alleges that her hormone therapy dosage schedule has been inconsistent, and that she either misses doses entirely or receives doses late. [*Id.* at ¶ 90.]

***Plaintiff's claims.*** Plaintiff's Final Amended Complaint asserts six counts, three of which relate to the MHM Defendants.[2]

Count 1 asserts a claim under 42 U.S.C. § 1983, alleging a violation of the Eighth Amendment based on deliberate medical indifference by the MHM Defendants (as well as several GDC Defendants). [*Id*. at ¶¶ 114-124.] Plaintiff alleges that these defendants have been deliberately indifferent by denying gender-affirming care (including surgery) to her. [*Id*.]

Count 4 asserts a violation of Section 504 of the Rehabilitation Act, alleging that Plaintiff has been denied access to treatment for gender dysphoria, including hormone therapy and gender-affirming surgery. [*Id*. at ¶¶ 149-159.]

Finally, Count 5 asserts that the MHM Defendants violated Title III of the Americans with Disability Act. [*Id*. at ¶¶ 160-168.] Plaintiff alleges that MHM owns, leases, or operates a "place of public accommodation" within Phillips State Prison. She further alleges that the MHM Defendants have discriminated against Plaintiff on the basis of her gender dysphoria by denying her access to services such as necessary gender-affirming care. [*Id*.]

---

[2] In accordance with the Court's directive, these defendants address only the allegations relating to them in order to streamline arguments and reduce overlapping briefing with the State Defendants. To the extent any arguments in the State Defendants' brief apply to these defendants, such arguments are incorporated and adopted.

Plaintiff is seeking injunctive relief, including (1) allowing Plaintiff to meet with physicians who can perform gender-affirming surgery; (2) allowing Plaintiff to receive such surgery; (3) directing the defendants to maintain Plaintiff's hormone therapy; (4) directing the defendants to provide Plaintiff regular mental health treatment in a private setting; and (5) requiring the defendants to modify their policies and procedures to ensure compliance with Title II and Title III of the Americans with Disabilities Act.

## ARGUMENT

The Court should dismiss Counts 1, 4 and 5 as to the MHM Defendants because Plaintiff fails to state claims for relief. To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Though this standard does not necessarily require "detailed factual allegations," the complaint must be specific enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Further, a court need not accept legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

I.      **Plaintiff fails to plausibly plead claims of deliberate indifference against the MHM Defendants.**

Plaintiff's claims against the MHM Defendants assert violations of her Eighth Amendment rights based on deliberate medical indifference. Such claims are subject to a "high standard" and a "steep hill . . . to climb," as an inmate's claim must satisfy both an objective and subjective component. *Bayse v. Ward*, 147 F.4th 1304, 1311-12 (11th Cir. 2025). For the objective component, an inmate must demonstrate that they "suffered a deprivation that was, objectively, sufficiently serious." *Id*. And for the subjective component, an inmate must prove that a defendant had subjective knowledge of a risk of serious harm and disregarded that risk. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1275 (11th Cir. 2020).

As the Eleventh Circuit has clarified, this means that an inmate "must prove that the defendant acted with subjective recklessness as used in the criminal law," such that the defendant "was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1256 (2024). Such subjective awareness arises only where the defendant both is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and has actually "drawn the inference." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008); *see also Farmer v. Brennan*, 511 U.S. 825, 826 (1994) ("[T]he failure to alleviate a significant risk that an official should have perceived but did not . . . cannot be condemned as the infliction of punishment.").

6

"[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment fails to support a claim of cruel and unusual punishment." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1273 (11th Cir. 2020). Thus, "whether governmental actors should have employed . . . [certain] forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). Rather, "a denial of medical care constitutes deliberate indifference only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Bayse*, 147 F.4th at 1312; *see also Keohane*, 952 F.3d at 1277 ("For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good.").

A.    **Count 1 fails to state a plausible claim against the MHM Defendants based on the care provided.**

In Count 1, Plaintiff asserts deliberate indifference in the denial of gender-affirming care by both the MHM Defendants and the GDC Defendants. Plaintiff alleges that the defendants denied gender-affirming care including hormones, surgery, and/or accommodations. But Plaintiff does not plausibly allege that the MHM Defendants denied her medically necessary care. Regarding the need for accommodations, Plaintiff alleges that in 2025, upon her return to GDC custody, "GDC Defendants confiscated [Plaintiff's] federally issued wig." [Doc. 315, ¶ 87.]

7

Plaintiff further contends that the GDC Defendants are refusing to provide accommodations such as gender affirming social transition items. There are no allegations that the MHM Defendants have any role in providing or not providing such accommodations.

Plaintiff instead alleges that the MHM Defendants have "failed to consistently provide [Plaintiff] with her required estradiol injections, including four separate lapses." [*Id.*, ¶ 90.] She further alleges that some of her medication doses were changed. [*Id.*, ¶ 93.] But this is not a claim that Plaintiff was *denied* medication, and instead is an indication that Plaintiff disagrees with the medical judgment of the MHM Defendants. Again, a difference in opinion regarding medical treatment between an inmate and medical staff fails to support a claim of cruel and unusual punishment. *Hoffer*, 973 F.3d at 1273.

Plaintiff has added a claim for injunctive relief to Count 1 of her Final Amended Complaint, requesting "an injunction requiring Defendants to provide the necessary medical accommodations for her gender dysphoria." [Doc. 315, ¶ 122.] The gender affirming care that Plaintiff alleges is necessary includes hormones, surgery, and accommodations. But as to the MHM Defendants, this request for relief is futile. In the Final Amended Complaint, only the GDC Defendants are alleged to have refused to provide social transition items that Plaintiff is requesting as accommodations. Further, Plaintiff does not plausibly allege that the MHM

8

Defendants denied her hormone treatments, rather that the treatment provided differed from what Plaintiff wanted, which is an insufficient basis to find that the MHM Defendants were deliberately indifferent to Plaintiff's alleged serious medical needs. As for gender affirming surgery, O.C.G.A. § 42-5-2(e)(1) states that "no state funds or resources shall be used for the following treatments for state inmates: (A) Sex reassignment surgeries or any other surgical procedures that are performed for the purpose of altering primary or secondary sexual characteristics; (B) Hormone replacement therapies; and (C) Cosmetic procedures or prosthetics intended to alter the appearance of primary or secondary sexual characteristics."

In *Benjamin v. Oliver*, there was an injunction issued by this court for S.B. 185 as it pertained to O.C.G.A. § 42-5-2(e)(1)'s preclusion of "state funds or resources from being used for hormone replacement therapies to treat gender dysphoria." *Benjamin v. Oliver*, 812 F. Supp. 3d 1322, 1337 (N.D. Ga. 2025). Thus, O.C.G.A. § 42-5-2(e)(1)'s ban on sex reassignment surgery and cosmetics related to gender affirming care remains in effect.

Therefore, to the extent Plaintiff seeks injunctive relief for sex reassignment surgery, O.C.G.A. § 42-5-2(e)(1) bars this treatment. If Plaintiff seeks to challenge this state law, such challenge would need to occur as a prospective class member in *Benjamin* pursuant to Fed. R. Civ. P. 19.

**B.    Count 4 fails to state a plausible claim against the MHM Defendants under the Rehabilitation Act.**

Plaintiff alleges that the MHM Defendants have denied her access to necessary medical treatment for gender dysphoria, including adequate hormone therapy and gender affirming surgery, in violation of Section 504 of the Rehabilitation Act that prohibits discrimination on the basis of disability in any program or activity receiving federal funding. [Doc., ¶¶ 149-159.] But as argued above, hormone therapy was provided, and the Georgia legislature has barred the surgery Plaintiff seeks for state inmates.

Moreover, the Rehabilitation Act does not apply to the MHM Defendants. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance...." 29 U.S.C. § 794.  The general rule is that "federal financial assistance" is the payment or transfer of funds as a subsidy or gift. *Mullins v. Crowell*, 74 F.Supp.2d 1067, 1135 (N.D. Ala. 1999). Courts have consistently declined to extend the definition of federal financial assistance to include procurement contracts. *Jones v. Alabama Power Company*, No. CV94-PT-0094-S, 1995 WL238338 at *19 (N.D. Ala. Jan. 3, 1995). Instead, federal financial assistance has been construed to mean the federal government's provision of a subsidy, not compensation for services

10

provided, including medical services provided in a correctional facility. *Abdus-Sabur v. Hope Village, Inc.*, 221 F.Supp.3d. 3, 10 (D.D.C 2016). As such, the Rehabilitation Act does not apply to private medical contractors receiving payment from counties under service contracts rather than directly from federal sources. *Wehby v. Springer Equipment Company, Inc.*, No. 2:15-cv-01005-RDP, 2018 WL1182607 at *4 (N.D. Ala. March 7, 2018). The Rehabilitation Act does not apply to the MHM Defendants and Court 4 should be dismissed as to them.

**II.  Count 5 fails to state a plausible claim against the MHM Defendants based on Title III of the Americans with Disabilities Act.**

Plaintiff alleges in Count 5 that MHM violated Title III of the ADA. [Doc. 315, ¶¶ 160-168.] Her claim fails, however, because MHM does not own, lease, or operate a place of public accommodation.

"Title III prohibits discrimination against the disabled by private entities at 'any place of public accommodation.'" *Price v. City of Ocala, Fla.*, 375 F.Supp.3d 1264, 1269 (M.D. Fla. 2019) (quoting 42 U.S.C. § 12182). To state a claim under Title III, a plaintiff must allege that (1) he "is a disabled individual;" (2) "the defendant owns, leases, or operates a place of public accommodation;" and (3) "the defendant discriminated against the plaintiff within the meaning of the ADA." *Gomez v. Gen. Nutrition Corp.*, 323 F. Supp. 3d 1368, 1374 (S.D. Fla. 2018).

However, MHM does not own, lease, or operate a place of public accommodation. *See Spradlin v. Toby*, No. 5:23-CV-328 (MTT), 2024 WL 3881483,

at *9 (M.D. Ga. Aug. 19, 2024) (dismissing inmate claims under Title III of the ADA because MHM did not own, lease, or operate a place of public accommodation at Hancock State Prison). Correctional facilities are not listed in the statutory definition of public accommodation. 42 U.S.C. § 12181(7). Additionally, Plaintiff does not cite any authority "in which a jail or correctional institution has been held subject to the provisions of Title III." *Kendrick v. Faircloth*, 2010 U.S. Dist. LEXIS 3908, at *41 (M.D. Fla. Jan. 19, 2010). Rather, existing "legal authority . . . suggest[s] that a jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions." *Id.* (citing *Morgan v. Mississippi*, 2008 WL 44981 *5-6 (S.D. Miss. 2008); *Brown v. King Cty. Dep't of Adult Corr.*, 1998 U.S. Dist. LEXIS 20152, at *16, 1998 WL 1120381 (W.D. Wash. Dec. 9, 1998)).

Further, Plaintiff is seeking a declaratory judgment that the MHM Defendants are in violation of Title III of the ADA for enforcing what she alleges is GDC's "blanket ban" on gender affirming care. [Doc. 315, 166.] But it is GDC's alleged policy that Plaintiff seeks to change, not any policy of MHM or Centurion. MHM/Centurion cannot be held liable for the alleged acts of GDC.

Plaintiff's claim under Title III of the ADA brought against the MHM Defendants in Count 5 of her Final Amended Complaint should be dismissed.

12

## CONCLUSION

For the foregoing reasons, the MHM Defendants ask that the Court dismiss all claims in Plaintiff's Final Amended Complaint asserted against the MHM Defendants.

Respectfully submitted this 1st day of June, 2026.

HUFF, POWELL & BAILEY, LLC

s/ *Lindsey Cassimus*
MICHAEL G. FRANKSON
Ga. Bar No. 173835
LINDSEY L. CASSIMUS
Ga. Bar No. 301862
KARIAN N. CHARD
Ga. Bar No. 954576

999 Peachtree Street
Suite 950
Atlanta, Georgia 30309
(404) 892-4022
(404) 892-4033 (Fax)
mfrankson@huffpowellbailey.com
lcassimus@huffpowellbailey.com
kchard@huffpowellbailey.com

*Counsel for Defendants MHM Correctional Services, LLC, Centurion of Georgia, LLC, Rhonda Billings, Dr. Sherri Skibinski, Dr. Cathleen Cleary, Dr. Donald Bowling, Sidney Moore, Dr. Wil Ausborn, and Jeremy Lane*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C and this Court's subsequent orders. The brief is prepared in 14-point Times New Roman font.

/s/ Lindsey Cassimus

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

HUFF, POWELL & BAILEY, LLC

s/ *Lindsey Cassimus*
MICHAEL G. FRANKSON
Ga. Bar No. 173835
LINDSEY L. CASSIMUS
Ga. Bar No. 301862
KARIAN N. CHARD
Ga. Bar No. 954576

999 Peachtree Street
Suite 950
Atlanta, Georgia 30309
(404) 892-4022
(404) 892-4033 (Fax)
mfrankson@huffpowellbailey.com
lcassimus@huffpowellbailey.com
kchard@huffpowellbailey.com

*Counsel for Defendants MHM Correctional Services, LLC, Centurion of Georgia, LLC, Rhonda Billings, Dr. Sherri Skibinski, Dr. Cathleen Cleary, Dr. Donald Bowling, Sidney Moore, Dr. Wil Ausborn, and Jeremy Lane*