**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE,<br><br>         Plaintiff,<br><br>v.<br><br>GEORGIA DEPARTMENT OF<br>CORRECTIONS *et al.*,<br><br>         Defendants. | Civ. Case No. 1:23-cv-5578-MLB |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MHM DEFENDANTS'
MOTION TO DISMISS THE FINAL AMENDED COMPLAINT**

**INTRODUCTION**

Before the Court is a Motion to Dismiss and a Brief in Support of said Motion to Dismiss filed by Defendants MHM Correctional Services, LLC ("MHM"), Centurion of Georgia, LLC ("Centurion"), Rhonda Billings, Sherri Skibinski, Cathleen Cleary, Donald Bowling, Sidney Moore, Wil Ausborn and Jeremy Lane (collectively, "MHM Defendants"). Dkt. 319 & 319-1.

Through misapplication and misinterpretation of the law, Defendants allege that Plaintiff's Final Amended Complaint should be dismissed for (i) failure to state an Eighth Amendment claim for which relief can be granted, (ii) failure to state a plausible claim against the MHM Defendants under the Section 504 of the Rehabilitation Act, and (iii) likewise allege that Plaintiff failed to state a plausible

1

claim against the MHM Defendants under Title III of the Americans with Disabilities Act ("ADA"). Moreover, MHM Defendants move to dismiss Plaintiff's claims on grounds directly countering what this Court has already decided in prior stages of the proceedings—specifically that Plaintiff is a qualified individual with a disability under the ADA, Dkt. 131, at 43-45, and that Title III of the ADA covers private healthcare operations in prisons as a type of public accommodation. *Id.* at 37-39. *See Doe v. Ga. Dep't of Corr.*, 730 F. Supp. 3d 1327, 1346-48 (N.D. Ga. 2024), *appeal dismissed as moot*, No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025).

Because Plaintiff pleads specific, clear allegations that state a plausible Eighth Amendment claim, and plausible claims under the Rehabilitation Act and Title III of the ADA, MHM Defendants' motion to dismiss should be denied.

## BACKGROUND

Plaintiff Jane Doe is a transgender woman with gender dysphoria in Georgia Department of Corrections ("GDC") custody, currently housed at Phillips State Prison, a medium-security prison for men located in Buford, Gwinnett County, Georgia. Final Amended Complaint, Dkt. 315 (hereinafter, "FAC") ¶¶ 1, 6.

Defendant MHM Correctional Services, LLC ("MHM") is a private limited liability company which currently holds a contract with GDC to provide medical and mental health services to patients housed within GDC facilities. Dkt. 319-1.  MHM

operates as a subsidiary of Centene Corporation. FAC ¶ 9. MHM operates the prison medical unit within Phillips State Prison. *Id*. Centurion is a private limited liability company which also operates as a subsidiary of Centene Corporation and has held the contract for medical services with GDC since July 1, 2024. *Id*. ¶ 10. Centurion is responsible for various aspects of Ms. Doe's treatment plan. Prior to Centurion, WellPath, a now-bankrupt entity, held the contract for medical services with the GDC. *Id*. Centurion operates the prison medical center at Phillips State Prison. *Id*.

In her FAC, Plaintiff demonstrates a continuous string of abuse, neglect, and outright denial of medical necessary care by MHM and its medical personnel within GDC walls that continues to this day.

## I.    Statement of Facts

MHM, through its employees, became directly involved in mental health services and medical care pertaining to Ms. Doe's gender dysphoria in 2016; in particular, Dr. Wil Ausborn assessed Ms. Doe's candidacy for gender-affirming surgical procedures. *Id*. ¶¶ 27-29. Following an institutional disregard of the assessment by both MHM and GDC Defendants, Ms. Doe attempted suicide by asphyxiation. *Id*. ¶¶ 30-31.

In 2022, MHM Defendants—and specifically Dr. Wil Ausborn, Dr. Cathleen Cleary, Dr. Jeremy Lane, Dr. Donald Bowling, and Nurse Practitioner Sidney Moore—would go on to participate as part of Ms. Doe's treatment team and once

again denied or outright ignored Ms. Doe's continued requests for a mental health evaluation for gender-affirming surgery. *Id.* ¶¶ 39-45, 47, 49. Ms. Doe's request for a mental health evaluation was only granted after she attempted self-castration on July 17, 2022—an act of self-mutilation that occurred after Dr. Bowling advised her that "[i]f [she] was to attempt self-castration again, maybe while at the hospital, they'll just go ahead and cut [her] gonads out." *Id.* ¶¶ 49-52. This request was granted, and the evaluation performed, by the named MHM Defendants and MHM psychiatrists, *Id.* ¶¶ 52-53, even though MHM Defendants had previously denied such requests on the basis of GDC's then-existing blanket ban on gender-affirming surgical procedures. *Id.* ¶¶ 42-44, 46. As a result of this evaluation, both of MHM's psychiatrists recommended that Ms. Doe receive gender-affirming surgery. *Id.* ¶ 53-54.

In January 2023, Ms. Doe's treatment committee—which included MHM Defendants Dr. Rhonda Billings and Dr. Sherri Skibinski—denied Ms. Doe's request for gender-affirming surgery, even after such surgery was recommended by MHM's own psychiatrists, on the basis of GDC's then-existing blanket ban on such procedures. *Id.* ¶¶ 55-59, 62. Around this time, Dr. Cleary informed Ms. Doe that, in relation to the provision of gender-affirming care, she was warned by MHM administrators to "follow [MHM's] rules or find somewhere else to work." *Id.* ¶ 63.

4

Ms. Doe initiated this lawsuit in December 2023, leading to the resolution of several critical issues[1] when this Court granted, in part, her motion for preliminary relief. Dkt. 131. This Court further opined that Ms. Doe's request for gender-affirming surgery was "not yet ripe, as Defendants have not completed the decision-making process and denied her that surgery," but required Defendants to provide status updates on this process. *Id*. at 16-17. Per MHM's status report, a cardiologist "determined that Ms. Doe can proceed" with gender-affirming surgery "from a cardiac perspective." Dkt. 183 at 1-2. On November 1, 2024, Centurion's Gender Dysphoria Committee convened to medically clear Ms. Doe for surgery and likewise "informed the [GDC] that the recommended treatment plan for Ms. Doe is 'gender reassignment surgery.'" Dkt. 197. On December 30, 2024, MHM informed the Court that GDC's Statewide Medical Director, Dr. Marlah Mardis, sent a letter requiring them to reconvene in January "to carefully consider the questions posed in the letter," Dkt. 211, at 1, but nevertheless failed to respond to said letter for many months after. *See* Dkt. 217. Since December 30, 2024, MHM Defendants have not

---

[1] This Court found *inter alia*: (i) Ms. Doe to be a qualified individual with debilitating gender dysphoria, which is a disability subject to the protections of the Americans with Disabilities Act ("ADA"), Dkt 131, at 14-15, 45; (ii) without adequate treatment for her disability, Ms. Doe experiences debilitating anxiety, depression, suicidality, and attempts at suicide, self-harm, and self-castration, *id*. at 45; and (iii) Defendants clearly know the risk of harm Ms. Doe faced from untreated gender dysphoria based on her prior attempts at self-castration and suicide, *id*. at 15.

provided any updates to the Court regarding the gender-affirming surgery, despite Ms. Doe's repeated requests regarding the same.

From March 3 through September 18, 2025, Ms. Doe was held in the custody of the U.S. Marshalls Service at Laurens County Detention Center, where she received dosages of hormones and testosterone blockers that caused her to experience feminizing changes to her body. *Id.* ¶¶ 81-85, 94. Ms. Doe also received frequent mental healthcare pertaining to her gender dysphoria which in combination with her federal hormone replacement therapy treatment, lessened her gender dysphoria symptoms considerably. *Id.* ¶ 83-85.

On September 18, 2025, Plaintiff was transferred back into State custody at Phillips State Prison and placed in "administrative segregation" once again. *Id.* ¶ 86, 98-99. Since then, Ms. Doe has been subjected to the denial of adequate medical treatment for her gender dysphoria, including three consecutive 40+ day periods from early October 2025 to mid-February 2026 and a nearly three-week period in February-March 2026 where Ms. Doe did not receive her medically necessary estradiol injections. *Id.* ¶¶ 86, 90, 92-93. As a result of these prolonged periods without estradiol, Ms. Doe experienced severe physical symptoms associated with hormonal withdrawal as well as recurrent psychological harm. *Id.* ¶ 91, 94. Crucially, the minimal yet immensely beneficial feminizing effects Ms. Doe

6

experienced in federal custody reverted as a consequence of these periods of prolonged denial, aggregating her psychological and physiological distress. *Id*. ¶ 94.

Moreover, Ms. Doe has received inadequate mental health care from MHM Defendants for her gender dysphoria-associated psychological distress while housed in prolonged isolation at Phillips State Prison. *Id*. ¶¶ 96-100. Because of the distressful masculinizing symptoms over the last few months in combination with Defendants' continued refusal to provide her the medically recommended gender-affirming surgery, Ms. Doe's symptoms of gender dysphoria, including her depression, extreme anxiety, suicidal ideation, and self-harming behaviors, continue to be debilitating.

## LEGAL STANDARD

In ruling on a motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In addition, the court must draw all reasonable inferences in favor of the plaintiff. *See Estate of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018). As such, Plaintiff need only plead facts that are sufficient to "raise

a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.

## ARGUMENT

Through her FAC, it is unquestionable that Ms. Doe has sufficiently plead violations of the Eighth Amendment, the ADA, and the Rehabilitation Act against MHM Defendants. MHM Defendants have been deliberately indifferent to Ms. Doe's gender dysphoria and her mental health needs based upon the demonstrated pattern of delayed and denied care, even with their knowledge of the grave risks of self-injurious behavior and suicidality. *Infra* Sec. II.A. MHM Defendants' further attempts to avoid Eighth Amendment liability are incompatible with controlling circuit precedent, *infra* Sec. II.B, and faultily apply a decision from another section of this district court. *Infra* Sec. II.C. Furthermore, Ms. Doe has plausibly alleged violations of Rehabilitation Act by the corporate healthcare defendants, *infra* Sec. III, and violations of Title III of the ADA based upon MHM Defendants' operations at Phillips State Prison, *infra* Sec. IV. Under the proper legal standard at this stage, MHM Defendants' motion must be denied in its entirety.

## I.    Plaintiff Plausibly Alleges that MHM Defendants Violated Her Eighth Amendment Rights.

### A. Plaintiff Sufficiently Pleads that MHM Defendants Demonstrate Deliberate Indifference to Her Gender Dysphoria.

The Eighth Amendment plainly prohibits "deliberate indifference to serious medical needs of prisoners[.]" *Estelle v.* Gamble, 429 U.S. 97, 104 (1976); *see also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). To state a claim for deliberate indifference, a plaintiff must show they have (1) a serious medical need;[2] (2) that a defendant was deliberately indifferent to said need; and (3) causation between that indifference and the plaintiff's actual or imminent injury. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). For the second prong of deliberate indifference, a plaintiff must plausibly allege the defendant (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with subjective recklessness as used in criminal law[.]" *Wade*, 106 F.4th at 1255 (internal quotation marks and citations omitted). To show that a particular defendant acted with "subjective recklessness as used in the criminal law," the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious

---

[2] MHM Defendants do not dispute that Ms. Doe's gender dysphoria is an objectively serious medical need in either of their Motion to Dismiss filings. *See* Dkt. 319 & Dkt. 319-1.

harm[.]" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). Whether a given defendant was subjectively aware of a risk of serious harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted).

Deliberate indifference to a plaintiff's serious medical needs is shown "when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (quoting *Ramos v. Lam*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)); *accord Stalley v. Cumbie*, 124 F.4th 1273, 1286 (11th Cir. 2024). "[S]ystemic deficiencies can provide the basis for a finding of deliberate indifference ... [and] [r]epeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results." *Davies v. Israel*, 342 F. Supp. 3d 1302, 1309 (S.D. Fla. 2018) (quoting *Keather v. Armor Corr. Health Servs., Inc.*, No. 16-cv-62950-CIV-ZLOCH/HUNT, 2018 WL 1981133, at *6 (S.D. Fla. Apr. 26, 2018) (citations omitted)).

This Circuit has likewise recognized a delay in access to medical care to constitute deliberate indifference. *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir.

10

1995); *see also Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (per curiam) (recognized "a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference.") (citation omitted); *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1240 (M.D. Fla. 2022) (same). Further, an Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment. *See*, *e.g.*, *Bingham*, 654 F.3d at 1176; *Moody v. Church*, No. 1:11-CV-926-AT-JSA, 2013 WL 2456261, at *4-*5 (N.D. Ga. June 6, 2013); *Gates v. McKenzie*, No. 5:23-cv-25 (MTT), 2024 WL 4818328, at *5-*6 (M.D. Ga. Nov. 18, 2024).  The factual record here plainly establishes that the MHM Defendants have failed to provide services acknowledged to be necessary, resulting in the unnecessary suffering of Ms. Doe, the worsening of her gender dysphoria-associated physiological and psychological symptoms, and a reversal of the feminizing effects she was able to experience due to her improved care in federal custody.

While it is generally the case that "a simple difference in medical opinion between the prison's medical staff and inmate as to . . . course of treatment [cannot] support a claim of cruel and unusual punishment," *Keohane v. Florida. Department of Corrections Secretary*, 952 F.3d 1257, 1274 (11th Cir. 2020), the Eleventh Circuit and the Northern District of Georgia have both recognized that "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging

11

refusal even to consider whether a particular course of treatment is appropriate is the *very definition* of 'deliberate indifference . . . .'" *Id*. at 1266-67 (emphasis added); *Doe*, 730 F.Supp.3d at 1338; *Benjamin v. Oliver*, 800 F. Supp. 3d 1314, 1334 (N.D. Ga. 2025), *appeal dismissed as moot sub nom*. *Benjamin v. Comm'r, Ga. Dep't of Corr*., No. 25-13060, 2025 WL 4481260 (11th Cir. Dec. 18, 2025).

Here, the MHM Defendants acted with the requisite subjective recklessness, as they were subjectively aware that their conduct put Ms. Doe at substantial risk of self-harm and suicidal ideation and still failed to respond in a reasonable manner and provide necessary care. FAC ¶¶ 118-20. MHM Defendants clearly knew, by way of Ms. Doe's previous attempts at suicide and self-mutilation associated with the harmful psychological toll of untreated gender dysphoria, the risks of serious harm that Ms. Doe faced. *See Maree v. Igou*, No. 7:19-CV-00046 (WLS), 2019 WL 13175555, at *6 (M.D. Ga. Oct. 24, 2019) ("[A] detainee with suicidal tendencies, a condition known or which should have been known by [prison personnel], requires such protective action.") (quoting Lewis v. Par. Of Terrebonne, 894 F.2d 142, 145-46 (5th Cir. 1990)). Yet, the same defendants continuously failed to respond to said risks appropriately, and have exacerbated said risks through the consecutive months-long periods of no treatment at all—despite knowledge of Ms. Doe's previous suicidal episodes and self-mutilation resulting from systemic denial to gender-affirming care. *See*, *e.g., Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)

(stating in dicta that deliberate indifference standard is met if there is a strong likelihood that self-infliction of harm would result from failure to act).

Indeed, Ms. Doe, like all other inmates, possesses an Eighth Amendment right to be protected from self-inflicted injuries. *See*, *e.g.*, *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *Watson v. White*, No. 3:24cv265-MCR-HTC, 2024 WL 5691297, at \*2 (N.D. Fla. Dec. 30, 2024). To be deliberately indifferent to a strong likelihood that the prisoner will harm themselves, the official must be subjectively aware that the combination of the prisoner's self-harm tendencies and the feasibility of self-harm in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will self-inflict harm. *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1369 (N.D. Fla. 2015); *see Gish v. Thomas*, 516 F.3d 952, 954-55 (11th Cir. 2008). While such risk to an inmate's health must be cognizable, the consequences of that risk need not yet have materialized as it is "the defendant's action or inaction before the risk is realized [that] remains relevant to the analysis of deliberate indifference." *See Gobert v. Caldwell*, 463 F.3d 339, 349 n.30 (5th Cir. 2006); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (held that Plaintiff "need not await a tragic event[]" before suffering harm violative of the Eighth Amendment).

The final prong—causation—simply requires "a defendant to have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327

13

(11th Cir. 2007) (citation omitted). Ms. Doe states that she suffers from numerous serious psychological and physical consequence, including recurrent suicidal ideation and episodes of life-endangering, self-injurious behavior, as a direct result of Defendants' denial of both mental healthcare and medical treatment related to her gender dysphoria.

After MHM Defendant Dr. Bowling advised Ms. Doe that if she were to attempt self-castration again, the medical staff at the hospital could "cut [her] gonads out," Ms. Doe attempted to do just that. FAC ¶¶ 49-51.

At the pleading stage, a plaintiff does not need to prove their Eighth Amendment claim; she only needs to allege sufficient facts to make that claim "plausible on its face." *Iqbal*, 556 U.S. at 678. At this stage of the case, Ms. Doe has alleged sufficient facts to allow her Eighth Amendment deliberate indifference to serious medical needs claim to go forward against the MHM Defendants.

B. Plaintiff Sufficiently Pleads *Monell* Liability Against Defendants MHM and Centurion.

MHM Defendants attempt to muddy the waters by arguing that their actions are dictated by the state's legislative enactments and by GDC itself, that "it is GDC's alleged policy that Plaintiff seeks to change, not any policy of MHM or Centurion." *See* Dkt. 319-1, at 12. MHM Defendants even go as far to state that they cannot be

14

held liable for the actions of its state actor co-defendant, making this bold assertion without any citation or authority or precedent in this Circuit or in others. *Id.*

The MHM Defendants assert these arguments even though they are readily aware that "when private entit[ies] like [Defendants MHM and Centurion] contract[] with a [state] to provide medical services to inmates, [they] perform[] a function traditionally within the exclusive prerogative of the state[]" and as such, they can be subject to *Monell* liability liable for constitutional injuries. *Oliver v. Ga. Dep't of Corr.*, No. 7:25-cv-120-WLS-ALS, 2026 WL 709896, at *7 (M.D. Ga. Mar. 13, 2026), *report and recommendation adopted*, No. 7:25-cv-120 WLS-ALS, 2026 WL 1064797 (M.D. Ga. Apr. 8, 2026) (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see also Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1346, 1351 (D. Idaho 2024) (enjoining Centurion affiliate from enforcing state law "prohibition on the use of state funds for purposes of providing hormone therapy").

Indeed, a private entity can be subject to liability under § 1983 when it "performs a function traditionally within the exclusive prerogative of the state," which includes contracting with the state, county, or respective municipality to provide medical services to people detained in jail. *See, e.g., Craig v. Floyd Cnty.,*

15

*Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).[3] Further, any assertion by the MHM Defendants that they cannot be held liable for deliberate indifference because of their compliance with S.B. 185 is meritless and fails as a matter of law, as MHM Defendants can be held liable on "a policy or custom that [they] established or utilized[.]" *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).

To state a *Monell* claim, a plaintiff must show "(1) that [her] constitutional rights were violated; (2) that the municipality [or a contracted entity performing similar health care functions,] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom for § 1983 purposes is "a longstanding and widespread practice [that is] deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Craig*, 643 F.3d at 1311 (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1482 (11th Cir. 1991)). A policy is "a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (citations omitted).

---

[3] The Eleventh Circuit also recognizes that a private party acting as a state actor may be subject to liability under §1983 when "the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Nat'l Broad. Co., Inc. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) (citations omitted).

As for causation, a plaintiff must show that the unofficial custom or practice identified was the "moving force" behind the violation. *Heath v. Miami-Dade Cnty.*, 736 F. Supp. 3d 1149, 1166 (S.D. Fla. 2024) (citations omitted). In her FAC, Ms. Doe has presented enough evidence to demonstrate that MHM Defendants' adherence to a policy of prolonged delay and denial of gender-affirming care is the root cause of the violations to her Eighth Amendment constitutional rights to medical care. *See generally* FAC ¶¶ 19-80, 86-97. Viewed collectively, Ms. Doe's pleadings establish the pervasiveness of MHM's conduct and support an inference that the delay and denial of gender-affirming care was part of a broader policy, practice, or custom. *See Ingram v. Fla. Dep't. of Corr.*, --- F. Supp. 3d ---, No. 23-24058-CIV-SINGHAL, 2026 WL 1427656, at *11-*13 (S.D. Fla. Feb. 10, 2026) (finding plaintiff plausibly alleged deliberate indifference claim against private medical provider contracted with the state).

Further, MHM Defendants have provided Ms. Doe no consistent access to meaningful mental health services while in administrative segregation, despite the immense strains of these isolating conditions upon her pre-existing psychological conditions.

Thus, Ms. Doe has stated sufficient facts to allow her Eighth Amendment deliberate indifference to serious medical needs claim to go forward against Defendants MHM and Centurion for further factual development.

C. MHM Defendants' Reference to the *Benjamin v. Oliver* Class Action is Inapplicable.

MHM Defendants further argue that Georgia Senate Bill 185 (S.B. 185), which amended O.C.G.A. 45.5.2(e) to preclude "state funds and resources" from being used for certain gender-affirming care, precludes Plaintiff's claims here. *See* Dkt. 319-1, at 9. MHM then summarily states that Ms. Doe must pursue any injunctive relief for "sex reassignment surgery" through the *Benjamin* class, even though Defendants have long denied Ms. Doe gender-affirming surgery since before the existence of the *Benjamin* class or S.B. 185. Dkt. 319-1, at 9. Thus, the voiding of S.B. 185 would not resolve Ms. Doe's claims regarding her need for gender-affirming surgery.

In any event, MHM acknowledges that this Court *can* issue injunctive relief to provide gender-affirming care to transgender individuals in GDC custody, notwithstanding S.B. 185. Indeed, that is precisely what another section of this district court did in the *Benjamin v. Oliver* class action referenced in MHM Defendants' Motion to Dismiss. 800 F. Supp. 3d at 1345 (ordering GDC "to immediately cease tapering hormone therapy doses to class members for the purpose of S.B. 185 compliance[]" and "to evaluate class members for hormone therapy according to the applicable standard of care without regard to S.B. 185 compliance."); *see also Benjamin v. Oliver*, 812 F. Supp. 3d 1322, 1335 (N.D. Ga. 2025) ("Plaintiffs are entitled to summary judgment on their claims for injunctive

18

relief as to deliberate indifference for blanket denial of access or consideration of hormone therapy for the same reasons the Court gave in its Preliminary Injunction Order.") (citing *Benjamin*, 800 F. Supp. 3d at 1333-39).

## II.    Plaintiff Plausibly Alleges Violations of the Rehabilitation Act against MHM and Centurion.

To establish a case for liability under Section 504 of the Rehabilitation Act, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) who was either excluded from participation in or denied benefits of a covered entity's services, programs, or activities, or was otherwise discriminated against; and (3) that the exclusion or denial "was by reason of the plaintiff's disability." *Mugaburu v. Akima Glob. Servs., LLC*, No-20-CIV-24462-WILLIAMS, 2022 WL 22989026, at *4 (S.D. Fla. Sept. 27, 2022) (quoting *Owens v. Sec'y, Fla. Dep't Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015); *see also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq. ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act.").

A plaintiff is entitled to damages for a Section 504 violation when intentional discrimination is proved, which requires a showing of at least deliberate indifference to the plaintiff's statutory rights. *Estate of Schultz v. Bd. of Regents of Univ. Sys. of Georgia*, 554 F. Supp. 3d 1274, 1279 (N.D. Ga. 2021). In the Section 504 context,

19

deliberate indifference requires "proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012) (citations omitted).

Section 504 of the Rehabilitation Act protects disabled individuals from discrimination in federally conducted or assisted programs. Similar to the language found in the ADA, Section 504 states: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A "program or activity" is defined by Section 504 as "mean[ing] all of the operations of ... an entire corporation ... (i) if assistance is extended to such corporation ... as a whole; or ... (ii) which is principally engaged in the business of providing education, *health care*, housing, social services, or parks and recreation" *Id*. § 794 (b)(3)(A)(i)-(ii). (emphasis added).[4]

_____

[4] Section 504's definition of "program or activity" likewise includes all operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government." *Id*. § 794 (b)(1)(A)-(B).

20

Section 504 defines a "recipient" of Federal Financial Assistance broadly, as a "corporation . . . or other private organization . . . which is principally engaged in the business of providing . . . health care" is prohibited from disability discrimination in "all of [its] operations" if it *directly or indirectly* receives any "Federal financial assistance" *Id*. § 794(b)(3)(A)(ii); *see also* 28 C.F.R. § 42.540(e) ("Recipient [of Federal financial assistance] means any State or unit of local government, any instrumentality of a State or unit of local government, any public or private agency, institution, organization, or *other public or private entity*, or any person to which Federal financial assistance is extended directly or through another recipient . . . ."). Indeed, Section 504 "covers those who receive aid" directly from the federal government or indirectly through another recipient of that aid. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 606-07 (1986); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217 (2022).

"Federal financial assistance" is defined by statute to mean "any grant, cooperative agreement, loan, contract (other than a direct Federal procurement contract or a contract of insurance or guaranty), subgrant, contract under a grant or any other arrangement by which the Department provides or otherwise makes available assistance in the form of: (1) Funds... (3) Any other thing of value by way of grant, loan, contract, or cooperative agreement." 28 C.F.R. § 42.540(f) (emphasis added). Further, the purposes for which that financial assistance was intended is

irrelevant because a recipient of federal financial assistance must comply with Section 504 in "all of [their] operations," not just the program or activity receiving the funding. 29 U.S.C. § 794(b) (emphasis added); *see* Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, § 4, 102 Stat. 28, 29-30 (1988).

Relying on dicta, MHM Defendants incorrectly state that the "general rule" of the Rehabilitation Act limits "federal financial assistance" to the narrow categorization of "the payment or transfer of funds as a subsidy or gift." Dkt. 319-1. *See Mugaburu*, 2022 WL 22989026, at *4 (identifying defendant's assertion that "general rule is that federal financial assistance is the payment or transfer of funds as a subsidy or gift[]" as an incorrect reliance on dicta in contesting Section 504's coverage of a private entity) (citations omitted). This assertion likewise ignores well-established Eleventh Circuit precedent that "[Section 504] applies to programs receiving federal financial aid of any kind." *Arline v. Sch. Bd. of Nassau Cnty.*, 772 F.2d 759, 762 (11th Cir. 1995) (quoting *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1379 (11th Cir. 1982), *cert. denied*, 465 U.S. 1099 (1984) (emphasis added)).

To more accurately state an applicable "general rule" of how private healthcare entities become subject to the Rehabilitation Act, "[c]ourts have almost uniformly held that a healthcare provider's receipt of Medicare and Medicaid payments subjects it to the Rehabilitation Act." *See*, *Futrell v. Southeastrans, Inc.*,

No. 1:20-CV-04674-WMR-RDC, 2021 WL 12299454, at *8 (N.D. Ga. Dec. 30, 2021) (collecting cases); *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830 (11th Cir. 2017) (holding that two private hospitals and its parent organization was "obligated to follow the mandates of the ADA and [Rehabilitation Act]" as a recipient of federal Medicaid funds); *Cummings*, 596 U.S. at 217 (acknowledging a private medical provider is subject to § 504 when it received reimbursement through Medicare and Medicaid for provision of some of its services).

As stated in her pleadings and recognized by this Court, Ms. Doe is a qualified individual with a recognized disability under the Rehabilitation Act. FAC ¶¶ 3, 151. MHM Defendants do not attempt to contest Ms. Doe's status as a qualified individual under the Rehabilitation Act. *See* Dkt. 319 & Dkt. 319-1.

In the FAC, Ms. Doe alleges that "MHM/Centurion is a private entity that receives federal financial assistance, including but not limited to federal funds for healthcare services, grants, or participation in federally funded programs through its contract with the Georgia Department of Corrections," FAC ¶ 152, and that MHM and Centurion contract with the State to provide medical and mental health services to Department of Corrections inmates, functions traditionally reserved for the State. *Id.* ¶¶ 9-10. Liberally construed, Plaintiff's FAC alleges that both MHM and Centurion are recipients of federal funds. Further, Centene, the parent company of both MHM and Centurion, is a healthcare management company that sells and

23

manages healthcare plans subsidized by the federal government. And as a corporate or private organization receiving federal funds which is "principally engaged in the business of providing ... health care," Centene must refrain from disability discrimination in "all of [its] operations," including the operations of MHM Correctional Services and Centurion of Georgia LLC.

Unless and until discovery establishes otherwise, Defendants MHM and Centurion of Georgia LLC remain proper defendants for Ms. Doe's Section 504 claim. *See Montanez v. Price*, 154 F.4th 127, 145-46 (3d Cir. 2025) (denying dismissal of Section 504 claim against a private medical contractor for a state prison, as whether it was a recipient of federal funds could not be resolved at the motion-to-dismiss stage, "where [the court] must accept the allegations as true"); *Aponte v. Akima Glob. Servs., LLC*, No. 17-24184-CIV-MARTINEZ-OTAZO-REYES, 2019 WL 451797, at *6 (S.D. Fla. Jan. 18, 2019) (denying a motion to dismiss where a plaintiff alleged that the defendant "receive[d] federal funding"); *Mugaburu*, 2022 WL 22989026, at *4 (same).

Further, Ms. Doe asserts that the deficiencies in the MHM Defendants' medical services and the outright denial of certain gender-affirming procedures were not a result of medical judgment but were plainly motivated by reason of Ms. Doe's gender dysphoria. FAC ¶¶ 154-157. For more than a decade now, Ms. Doe has repeatedly made requests to begin the formalized process of obtaining gender-

24

affirming surgery, specifically requiring a mental health evaluation by MHM Defendants. *Id.* ¶¶ 27-29, 39-47. From 2015 through 2023, MHM Defendants denied these requests based upon MHM's company prohibitions on any such mental health evaluations related to gender-affirming procedures. *Id.* ¶¶ 39-41, 43-44. MHM Defendant Dr. Cleary, a member of her 2022 treatment, informed Ms. Doe that such denials were premised on MHM's administrative prohibition on performing mental health evaluations, despite the fact such mental health evaluations were given to others in the past. *Id.* ¶¶ 43, 49. Other MHM Defendants—Dr. Skibinski and Dr. Bowling—informed Ms. Doe that they were not qualified to provide such evaluations. *Id.* ¶¶ 46, 49 MHM Defendants nevertheless granted Ms. Doe's request for a mental health evaluation by MHM psychiatrists (after Ms. Doe attempted self-castration following her conversation with MHM Dr. Bowling), who recommended gender-affirming surgery as a treatment plan. *Id.* ¶¶ 49-54; *see id.* ¶ 58. However, MHM Defendants continued their denial of Ms. Doe's requests for surgery, with members of her 2023 treatment team continuing to state a reliance upon MHM policy which adhered to GDC's Blanket Ban. *Id.* ¶ 62. Around that same time, MHM Defendant Dr. Cleary told Ms. Doe that MHM higher-ups warned her that she "must follow [their] rules or find somewhere else to work." *Id* ¶ 63. Nevertheless, Ms. Doe was granted medical clearance for gender-affirming surgery by Centurion's Gender

25

Dysphoria Committee following this Court's decision on Ms. Doe's motion for preliminary injunction. Dkt. 197.

Construed liberally, Ms. Doe sufficiently alleges that her disability is a "motivating factor" in the MHM Defendants' decisions to exclude her from reasonable medical care and other necessary accommodations for her gender dysphoria. At the pleading stage, intentional discrimination under the Rehabilitation Act may be established by showing deliberate indifference to the rights of disabled persons. *See*, *e.g.*, *Liese*, 701 F.3d at 344 (affirming that a violation of the Rehabilitation Act allows for an inference of intentional discrimination upon a showing a defendant's deliberate indifference).

As this Court must accept Plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in her favor at this juncture, *Twombly*, 550 U.S. at 570, Defendants' motion to dismiss Plaintiff's Rehabilitation Act claim must be denied at this time.

## III. Plaintiff Plausibly Alleges Violations of Title III of the ADA against MHM.

Title III of the Americans with Disabilities Act prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Within the section of the ADA

26

regarding Congress's findings and purpose, Congress stated its intent to "reach all 'critical areas' of society where persons with disabilities face discrimination, two of which [institutionalization and health services] are involved in the instant case[.]" *Hernandez v. Cnty. of Monterey*, 70 F. Supp. 3d 963, 977 (N.D. Cal. 2014); *see also Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) ("Congress did not intend to limit the ADA to the specific examples listed in each category of public accommodations."). Further, an entity may not directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that "(i) have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12182(b)(1)(D).

To state a claim under Title III of the ADA, a plaintiff must prove (1) that she is disabled; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA. *Reaves v. Immediate Med. Care, P.A.*, 770 F. Supp. 3d 1322, 1326 (M.D. Fla. 2025). The parties here have not disputed that Ms. Doe is a disabled individual within the meaning of the ADA, and the Court here has likewise recognized Ms. Doe's gender dysphoria to be a disability under the ADA. *Doe*, 730 F. Supp. 3d at 1348.

27

MHM argues, futilely, that it does not own, lease, or operate a "place of public accommodation" under Title III of the ADA. Dkt. 319-1. MHM is wrong. This Court has already explained that "Title III . . . covers private healthcare operations in jails as a type of 'public accommodation.'" Dkt. 131 at 38. Further, this legal conclusion is supported and echoed by other courts. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679 (2001) ("[Title III of the ADA] prohibit[s] public accommodations from discriminating against a disabled 'individual or class of individuals' . . . Either directly or indirectly through contractual arrangements with other entities."); *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872-73 (9th Cir. 2004) (finding that "the purposes and history of Title III, the DOJ's implementing regulations, and the Supreme Court's guidance" favor applying Title III to a private entity operating within a publicly owned facility); *Bernard v. Ill. Dep't of Corr.*, No. 3:20-CV-50412, 2022 WL 17338154 (N.D. Ill. Nov. 30, 2022) (finding private prison healthcare entity to be a proper defendant under Title III); *Stafford v. Wexford of Ind., LLC*, No. 1:17-cv-00289-JMS-MJD, 2017 WL 4517506, at *3 (S.D. Ind. Oct. 10, 2017) (same); *Saldana v. Crane*, No. 12-573 (DWF/TNL), 2013 WL 4747961, at *9 (D. Minn. Sept. 4, 2013) (same); *Whitehurst v. Lackawanna Cnty.*, No. 3:17-cv-00903, 2020 WL 6106616, at *11 n.9 (M.D. Pa. Mar. 5, 2020) (recognizing independent contractor providing healthcare services to inmates is an operator of a public place of accommodation subject to Title III).

MHM administers private healthcare operations in Phillips State Prison and other GDC facilities, pursuant to its contract with GDC and under Georgia state law. *See* GA. Comp. R. & Regs. R.: 125-4-4-.03; GA. Comp. R. & Regs. R. 125-4-4-.01 (b). MHM is therefore subject to liability under Title III.

## CONCLUSION

For these reasons, the Court should deny MHM Defendant's motion to dismiss in its entirety.

Respectfully submitted this 15th day of July, 2026,

/s/ Scott Novak

Scott Novak *
BAKER BOTTS L.L.P.
700 K St N.W.
Washington, D.C. 20001
(202) 639-1316
scott.novak@bakerbotts.com

Nicholas F. Palmieri *
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2640
nick.palmieri@bakerbotts.com

Sterling Marchand *
BAKER BOTTS L.L.P.
700 K St N.W.
Washington, D.C. 20001
(202) 639-1113
sterling.marchand@bakerbotts.com

Derrick Luster *
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C. 20033
derrick@rightsbehindbars.org

Christopher J. Murell
Georgia Bar Number: 195116
Meghan Matt*
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297 Telephone
(504) 233-6691 Facsimile
chris@murell.law
meghan@murell.law

*Admitted *pro hac vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief conforms to the requirements of L.R. 5.1 and 7.1. The brief is prepared as double-spaced between lines and in 14-point Times New Roman font.

*/s/ Scott Novak*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 15, 2026, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsels of record are registered ECF users.

*/s/ Scott Novak*