**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JANE DOE,

                *Plaintiff*,

v.

GEORGIA DEPARTMENT OF COR-
RECTIONS, *et al.*,

                *Defendants*.

Case No. 1:23-cv-5578-MLB

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S FINAL AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Table of Authorities.................................................................................... ii

Introduction .............................................................................................. 1

Argument.................................................................................................. 1

    I.     Plaintiff does not plausibly allege a violation of the Eighth Amendment. 2

          A.     Plaintiff does not plausibly allege the medical-related claims. ...... 5

               1.     Plaintiff has no right to sex-reassignment surgery. .................. 5

               2.     Neither lower nor occasional missed doses of hormones constitute cruel and unusual punishment................................. 7

          B.     Plaintiff does not plausibly allege unconstitutional confinement... 8

          C.     Qualified immunity bars Plaintiff's damages claims.................... 10

    II.    Plaintiff does not plausibly allege ADA or RA violations...................... 12

    III.   The continuing violation doctrine does not apply................................. 13

    IV.   The Court should not grant Plaintiff leave to amend yet again. ............. 14

Conclusion............................................................................................... 15

Certificate of Compliance........................................................................... 17

Certificate of Service................................................................................. 18

**TABLE OF AUTHORITIES**

**Cases**

*A.W. v. Coweta Cnty. Sch. Dist.*,
110 F.4th 1309 (11th Cir. 2024) .......................................................... 15

*Albritton v. Centurion of Fla.*,
2023 WL 34703 (M.D. Fla. Jan. 4)...................................................... 14

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ............................................................ 5

*Ancata v. Prison Health Services*,
769 F.2d 700 (11th Cir. 1985) ......................................................... 2, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................... 4, 5, 10

*Baker v. Sanford*,
484 F. App'x 291 (11th Cir. 2012) ...................................................... 13

*Cox v. Nobles*,
15 F.4th 1350 (11th Cir. 2021) ............................................................. 5

*Crenshaw v. Antokol*,
206 F. App'x 560 (7th Cir. 2006) ........................................................ 15

*Ctr. for Biological Diversity v. Hamilton*,
453 F.3d 1331 (11th Cir. 2006) .......................................................... 13

*D.C. v. Wesby*,
583 U.S. 48 (2018).................................................................... 10, 11

*Diaz v. Miami-Dade Cnty.*,
849 F. App'x 787 (11th Cir. 2021) ...................................................... 15

*DiPietro v. Barron*,
2023 WL 1770364 (11th Cir.) ....................................................... 13, 14

*DiPietro v. Lockhart*,
2021 WL 9794746 (M.D. Ga. Mar. 8).................................................. 13

*Donald v. Norris*,
131 F.4th 1255 (11th Cir. 2025) ..................................................... 3, 11

*Edwards v. Clark*,
2018 WL 2323465 (S.D. Ga. May 22) ................................................. 13

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ............................................................... 2, 4, 5, 11

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................... 15

*Frazier v. Mylan Inc.*,
  911 F. Supp. 2d 1285 (N.D. Ga. 2012) ......................................... 15

*Frazier-White v. Gee*,
  818 F.3d 1249 (11th Cir. 2016) ................................................... 13

*Gardner v. Bottoms*,
  2023 WL 5596400 (N.D. Ga. July 21) ........................................... 15

*Gardner v. Bottoms*,
  2025 WL 799282 (11th Cir. Mar. 13) ........................................... 15

*Gibson v. Collier*,
  920 F.3d 212 (5th Cir. 2019) ......................................................... 6

*Gregg v. Georgia*,
  428 U.S. 153 (1976) ................................................................... 11

*Hoffer v. FDC*,
  973 F.3d 1263 (11th Cir. 2020) ................................................. 5, 6

*Keohane v. FDC*,
  952 F.3d 1257 (11th Cir. 2020) ....................................... 3, 6, 8, 11

*Krupski v. Costa Crociere S.p.A.*,
  560 U.S. 538 (2010) ................................................................... 14

*Lange v. Houston County*,
  101 F.4th 793 (11th Cir. 2024) ................................................... 12

*Lange v. Houston County*,
  152 F.4th 1245 (11th Cir. 2025) (en banc) ................................... 13

*Liese v. Indian River Cnty. Hosp. Dist.*,
  701 F.3d 334 (11th Cir. 2012) ................................................... 12

*Mandala v. Tire Stickers, LLC*,
  829 F. App'x 896 (11th Cir. 2020) ............................................. 15

*McGugan v. Aldana-Bernier*,
  752 F.3d 224 (2d Cir. 2014) ....................................................... 13

*Melendez v. FDC*,
  2022 WL 1124753 (11th Cir. Apr. 15) ........................................ 8, 9

*Pop v. LuliFama.com LLC*,
   145 F.4th 1285 (11th Cir. 2025) ........................................................................ 14

*Quintanilla v. Bryson*,
   730 F. App'x 738 (11th Cir. 2018) .................................................................... 11

*Robinson v. United States*,
   327 F. App'x 816 (11th Cir. 2007) .................................................................... 13

*Roy v. Ivy*,
   53 F.4th 1338 (11th Cir. 2022) ........................................................................... 5

*Sheley v. Dugger*,
   833 F.2d 1420 (11th Cir. 1987) ..................................................................... 9, 10

*United States v. Skrmetti*,
   605 U.S. 495 (2025).............................................................................................. 4

*Wade v. McDade*,
   106 F.4th 1251 (11th Cir. 2024) (en banc) ......................................................... 4

*Washington v. Howard*,
   25 F.4th 891 (11th Cir. 2022) ........................................................................... 11

*West Virginia v. B.P.J.*,
   2026 WL 1868739 (U.S.) ................................................................................ 3, 4

*Whitaker v. Hill*,
   2024 WL 454952 (N.D. Ga. Feb. 6) ................................................................. 14

*Williams v. Birmingham Bd. of Educ.*,
   904 F.3d 1248 (11th Cir. 2018) ........................................................................ 11

*Youmans v. Gagnon*,
   626 F.3d 557 (11th Cir. 2010) .......................................................................... 11

iv

**INTRODUCTION**

Plaintiff misapplies both the legal standards governing motions to dismiss and those governing the Eighth Amendment. Plaintiff does not plausibly allege a violation of either the Constitution or the ADA. And because Plaintiff points to no controlling precedent, Plaintiff's damages claims are also barred by qualified immunity. Finally, Plaintiff no longer seeks cosmetic items and concedes that Counts 4 and 6 fail to state a claim. The complaint should be dismissed in full.

**ARGUMENT**

Plaintiff's response is most notable for what it does *not* contest, including: Plaintiff lacks standing to seek an injunction against Jones and Lewis (MTD.10); GDC is entitled to sovereign immunity on Counts 2-3 in the absence of a constitutional violation, and Count 6 (MTD.6-8; Resp.28, 37); the deliberate-indifference standard is at least as deferential as rational-basis review (MTD.3-4, 11-13); "there is no controlling … precedent holding that the Eighth Amendment requires prison officials to provide sex-change interventions" (MTD.9; Resp.13); SB185 is not discriminatory (MTD.39-40; Resp.33); WPATH "standards" are contested and based on low-quality evidence (MTD.17-20, 25-26); experts debate the efficacy and necessity of sex-change interventions (MTD.4, 12-13, 17; Resp.15); prisons disagree on providing SRS and refusing it is not "unusual" (MTD.20); Plaintiff receives hormones (MTD.2, 21); Plaintiff consented to pausing hormones (MTD.22-23, 25.n.4);

1

isolated missed doses are not deliberate indifference (MTD.23-24); Plaintiff has visitation privileges and adequate food and clothing (MTD.29-31); and Plaintiff is "extremely dangerous" with a "violent, extensive, and recent criminal history" (MTD.5, 31-32). The Court can dismiss the FAC based on the above alone.

## I.   Plaintiff does not plausibly allege a violation of the Eighth Amendment.

The arguments Plaintiff does raise cannot save the FAC. ***First,*** Plaintiff cites cases that state general standards or otherwise fail to support the FAC. For example, Plaintiff asserts "*Estelle v. Gamble* governs this case, and the Stat[e] … wholly fails to apply that precedent." Resp.7. But *Estelle* simply stated the deliberate-indifference standard—it did not even find a constitutional violation. 429 U.S. 97, 107-08 (1976). Nor has Plaintiff plausibly alleged "intentiona[l] interfer[ence]" with prescribed treatment. *Id.* at 104-05. State Defendants never "prescribed" surgery, and Plaintiff fails to allege Defendants had knowledge of missed doses. MTD.22-24.[1]

*Ancata v. Prison Health Services* is no more helpful. This was not an Eighth Amendment case. *See* 769 F.2d 700, 703 n.5 (11th Cir. 1985). Regardless, the Eleventh Circuit recently confirmed *Ancata* did not hold that categorical restrictions are

---

[1] Plaintiff repeatedly claims State Defendants "prescribed," "recommended," or "acknowledged" surgery as "medically necessary." Resp.15-18, 23, 26. But Plaintiff has no response to State Defendants' discussion of the relevant documents, which show no such thing. *See* MTD.17.n.2. Plaintiff also claims State Defendants do not dispute knowing the risk of harm that could result from the denials. Resp.7. That is incorrect. *E.g.*, MTD.17.n.2 (no surgery recommendation); *id.* at 22-24 (no knowledge of impact of missed doses).

*per se* unconstitutional, or that inmates suffer constitutional injury any time they are denied an evaluation: "[I]n *Ancata*, the plaintiff alleged that prison employees (1) failed to provide care they subjectively believed was necessary, (2) intentionally failed to provide care because the inmate couldn't pay for it, and (3) provided cursory medical treatment for a serious medical condition." *Donald v. Norris*, 131 F.4th 1255, 1267 (11th Cir. 2025). Here, by contrast, the FAC "confirms Plaintiff was and is receiving extensive treatment for gender dysphoria." MTD.15 (citing FAC).

*Keohane v. FDC*, 952 F.3d 1257 (11th Cir. 2020) likewise fails to support Plaintiff. The majority stated: "It seems to us that responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if you will." *Id.* at 1266-67. The panel—in dicta, *id.* at 1267—took issue with arbitrary bans that have never considered whether a treatment is appropriate. That is a far cry from providing extensive care but denying specific interventions subject to "serious debate and disagreement." *West Virginia v. B.P.J.*, 2026 WL 1868739, at \*15 (U.S.). In areas of "medical and scientific uncertainty," state officials or legislatures may "scrutiniz[e] the medical evidence and scientific data" and come to their own "reasoned decision." *Id.* (cleaned up). Indeed, *Keohane* itself emphasized that the Constitution does not "prohibit prison authorities from making a prophylactic judgment." 952 F.3d at 1278-79.

3

***Second,*** Plaintiff argues that SB185 is irrelevant, that adherence to the statute proves a constitutional violation, and that Plaintiff is not required to "preemptively rebut every potential affirmative defense." Resp.12, 34. But criminal recklessness and lack of a reasonable response are *elements* of a deliberate-indifference claim. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc). It is neither criminally reckless nor unreasonable for Defendants to comply with a duly enacted state law barring funding for certain unproven and controversial interventions.

Plaintiff does not allege that Defendants believe SB185 to be unlawful, or a "mere pretex[t] designed to effect an invidious discrimination." *United States v. Skrmetti*, 605 U.S. 495, 519 (2025). The "more likely explanatio[n]," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), is that Defendants (as they must) are following the duly enacted laws of the Georgia General Assembly, which has "scrutinized the medical evidence and scientific data" in an area of "inherent complexity," and "medical and scientific uncertainty," *B.P.J.*, 2026 WL 1868739 at *15 (cleaned up).

***Third,*** Plaintiff repeatedly argues that whether there has been an Eighth Amendment violation is a fact-bound issue that cannot be decided on a motion to dismiss. *E.g.*, Resp.16, 18-22, 30-32. But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

4

serious medical needs." *Id.* at 106. *Estelle* itself found the plaintiff had failed to state a claim against a medical director. *Id.* at 106-08 & n.16. Courts routinely grant motions to dismiss Eighth Amendment claims. *See, e.g.*, *Roy v. Ivy*, 53 F.4th 1338, 1351-52 (11th Cir. 2022); *Cox v. Nobles*, 15 F.4th 1350, 1361-62 (11th Cir. 2021).

Relatedly, Plaintiff contends the Court may not consider Defendants' legitimate penological and security rationales. Resp.22, 30. But "Plaintiff bears the burden of showing 'all aspects of [Plaintiff's] Eighth Amendment claim[s].'" MTD.28 (quoting *Hoffer v. FDC*, 973 F.3d 1263, 1274 (11th Cir. 2020)). So Plaintiff must plausibly allege State Defendants failed to reasonably respond to a known risk. Moreover, Plaintiff's criminal record is judicially noticeable, Dkt.322 at 3-4,[2] and "courts may infer from the … complaint obvious alternative explanations which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer," *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (cleaned up). "[J]udicial experience and common sense," *Iqbal*, 556 U.S. at 679, confirm Defendants' legitimate security concerns here. *E.g.*, MTD.20, 31-32, 37-39.

### A. Plaintiff does not plausibly allege the medical-related claims.
#### 1. Plaintiff has no right to sex-reassignment surgery.

Plaintiff concedes "there is no controlling Supreme Court or Eleventh prece-

---

[2] Much of Plaintiff's record is also in Dr. Frady's report, which Plaintiff concedes is incorporated by reference. Dkt.327; Ex.M at 1 (life sentences and past incarceration for aggravated sodomies); *id.* at 2 (making bombs in Plaintiff's cell and mailing them to government officials); *id.* (involvement with "Ghost Face gang").

dent holding that the Eighth Amendment requires prison officials to provide sex-change interventions" and does not dispute that SRS is debated by experts. *See* Resp.13, 15. That is fatal. "[W]hen the medical community can't agree on the appropriate … care, there is simply no legal basis for concluding that the treatment provided is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Keohane*, 952 F.3d at 1275.

Plaintiff argues that the many cases upholding state laws banning the same interventions at issue here "appl[y] different legal standards in completely different contexts." Resp.13. But Plaintiff never disputes the critical point that the deliberate-indifference standard is *at least as deferential* as rational basis review. MTD.3-4, 11, 13. Plaintiff also argues *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) is distinguishable because "the *Gibson* plaintiff's claim did not arise from an individualized determination that surgery was medically necessary" and the FAC alleges Defendants knew "'they were withholding medically necessary care.'" Resp.16. The first argument concedes there is no constitutional requirement to perform an individualized assessment for every demanded intervention. The second is factually incorrect; the FAC alleges only that Dr. Mardis "responded with several questions" to Centurion's "recommendation." FAC ¶77. That does not show that Dr. Mardis—or any other State Defendant—knew or believed SRS was medically necessary.

Finally, Plaintiff argues the *Hoffer* and *Keohane* defendants "created treat-

6

ment plans that responded to each plaintiff's medical needs and … followed them." Resp.17. The FAC confirms Plaintiff also had a treatment plan responding to Plaintiff's medical needs. MTD.15-16. That the plan did not include Plaintiff's specific preferred course of treatment (SRS) does not render it unconstitutional.

### 2. Neither lower nor occasional missed doses of hormones constitute cruel and unusual punishment.

Plaintiff does not contest that the four-year pause in hormones was due to Plaintiff's medical risk factors and done with Plaintiff's consent. *See* MTD.22. Plaintiff nonetheless argues that "[t]o the extent GDC Defendants treat [Plaintiff's] gender dysphoria with HRT, they do so without concern for how and whether the HRT addresses [Plaintiff's] serious medical needs." Resp.18 (citing FAC ¶¶3, 67-73, 90-96). But Paragraphs 67-73 "merely alleg[e] 'a treatment provider' stopped administering," MTD.23, and that "a GDC pharmacist refused to administer … any dosage above 10mg every other week," FAC ¶73. The only State Defendant mentioned is Dr. Mulloy, and the FAC does not allege he knew or believed that feminizing effects or higher doses were medically necessary for Plaintiff. *See also* MTD.25.n.4. As for paragraphs 90-96, the unnamed pharmacist is not a defendant, and Plaintiff does not allege facts showing the missed doses "led to an objectively serious deprivation—or that State Defendants knew about a potential risk of serious harm from a few missed doses and still failed to reasonably respond." *Id.* at 23. Regardless, Plaintiff also does not dispute that "'[t]he law is clear that isolated incidents of missed medication do

7

not establish deliberate indifference.'" *Id.* at 24.

Finally, Plaintiff does not dispute that Plaintiff is currently receiving hormones pursuant to a separate court injunction. *Id.* at 2. It does not matter that Plaintiff would prefer a higher dose now, or more than what Dr. Mulloy previously prescribed: "A simple difference in medical opinion … cannot support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1274 (cleaned up).

## B. Plaintiff does not plausibly allege unconstitutional confinement.

Plaintiff cites *Melendez v. FDC*, 2022 WL 1124753 (11th Cir. Apr. 15), an unpublished opinion reviewing a preliminary injunction for abuse of discretion. Resp.19. But what *Melendez* "reaffirmed," *id.*, is that "in determining whether an Eighth Amendment violation has occurred, [courts] must balance the conditions inflicting unnecessary pain or suffering … against competing penological goals," 2022 WL 1124753 at *12. The court distinguished a case involving violent inmates: "Melendez … has not engaged in the pervasive violent conduct we found penologically justified … complete deprivation of out-of-cell recreation." *Id.* at *13. Under *Melendez*, Plaintiff's "pervasive violent conduct" (including extensive criminal conduct *while incarcerated*) dooms Plaintiff's claim because the "competing penological goals" plainly outweigh any burdens. *Id.* at *12-*13 (emphasis added).[3]

---

[3] Nor has Plaintiff pled *Melendez*-level facts. Melendez spent nearly five years in solitary, received outdoor recreation 20 times in seven years, and developed a

Plaintiff next argues that the *Sheley v. Dugger*, 833 F.2d 1420 (11th Cir. 1987) factors "cannot be weighed on a bare record." Resp.20. But the Court must determine whether the allegations as pleaded rise to an Eighth Amendment violation. *Supra* 4-5. Relatedly, Plaintiff argues the Court cannot consider GDC's SOPs—despite the many references in the FAC (SOP 209.06 is specifically cited) and the parties introducing and relying on them, without objection, for years. FAC.9-10, 24-26; Dkts.149, 160, 219, 240, 281. The Court may judicially notice the SOPs. Dkt.322 at 2-3. And Plaintiff cites no authority for the novel theory that incorporated documents can be considered only for the plaintiff's benefit. *See* Resp.20 ("GDC cannot rely on its SOPs as evidence" to "inappropriately … contradict the FAC.").

The SOPs are relevant because Plaintiff does not allege that GDC administrative segregation is *per se* unconstitutional, that "Plaintiff's confinement differs from that of any other inmate in GDC administrative segregation," MTD.30, or that GDC is generally flouting the SOPs. Instead, Plaintiff alleges GDC has violated SOP by depriving Plaintiff of exercise "without any … security or safety considerations" and failing to "continually determine whether [Plaintiff] should remain in … segregation." FAC ¶¶110, 112. Plaintiff's record justifies any withheld exercise and makes

---

staph infection after missing the requisite number of showers in 166 different weeks—despite no one being able to explain why the housing was "currently justified" and an assistant statewide psychiatric director testifying he (unlike Plaintiff here) was "able to … follow the rules." 2022 WL 1124753 at *5-*6, *11.

9

it implausible Plaintiff's segregation is the result of GDC skipping 30-day reviews.

Plaintiff then asserts Defendants "trea[t] 'totally without penological justification' as the only path to an Eighth Amendment violation." Resp.21. But Defendants correctly stated: "Plaintiff does not plausibly allege that the confinement is 'punitive' *and* 'shocks the conscience, is grossly disproportionate to the offense, or is totally without penological justification.'" MTD.31 (quoting *Sheley*, 833 F.2d at 1429). Plaintiff never alleges the segregation is punitive; rather, it is "to *protect* Plaintiff." *Id.* at 40. And Plaintiff fails to plausibly allege the segregation is conscience-shocking, grossly disproportionate, *or* totally without penological justification—because Plaintiff has a recent and extensive violent criminal record and the segregation is warranted to protect other inmates *from Plaintiff. Id.* at 31.

Finally, Plaintiff argues the Court cannot yet weigh security interests. Resp. 21-22. Again, the Court may consider Plaintiff's criminal record. *Supra* 5&n.2. And because the far "more likely explanatio[n]," *Iqbal*, 556 U.S. at 681, for Plaintiff's segregation is Plaintiff's security profile, there is no plausible claim under *Sheley*.[4]

### C. Qualified immunity bars Plaintiff's damages claims.

Plaintiff defines the rights at too "high [a] level of generality." *D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018) (cleaned up). Resp.22-23 (rights to "necessary medical

---

[4] Plaintiff now claims there is a memo stating Plaintiff is not a threat to anyone. Resp.5.n.2. The Court should ignore this and other allegations absent from the FAC.

treatment" and "be free from placement in solitary confinement that is 'arbitrary and without penological justification'"). That cannot satisfy Plaintiff's burden. *See Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022). The Supreme Court has stressed "courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 583 U.S. at 63-64.

**Sex-Change Interventions:** *Estelle*, *Ancata*, and *Keohane* are all inapposite for the reasons given above. *Supra* 2-3. Indeed, Plaintiff concedes "there is no controlling Supreme Court or Eleventh Circuit precedent holding that the Eighth Amendment requires prison officials to provide sex-change interventions." Resp.13. And Plaintiff does not contest that a circuit split precludes clearly established law. MTD.21, 25-26 (citing *Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010)).

**Administrative Segregation**: Plaintiff points to two cases—*Quintanilla v. Bryson*, 730 F. App'x 738 (11th Cir. 2018) and *Gregg v. Georgia*, 428 U.S. 153 (1976). *Quintanilla* is unpublished and cannot clearly establish law. *Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018). *Gregg* reaffirmed the death penalty's constitutionality. 428 U.S. at 169, 206-07. So Plaintiff has not "point[ed] to any materially similar precedent that clearly establishes a violation of … constitutional rights 'under similar circumstances.'" *Donald*, 131 F.4th at 1266.

11

## II. Plaintiff does not plausibly allege ADA or RA violations.[5]

Because Plaintiff fails to plead an Eighth Amendment violation, Plaintiff fails to state an ADA claim. For the same reason, it is irrelevant that other plaintiffs may prove discriminatory intent "through a showing of deliberate indifference," *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012). Resp.33.

In response to the cases holding that inadequate-medical-treatment claims cannot be brought under the ADA, Plaintiff asserts that Dr. Frady recommended SRS. Resp.27. Even if he had, however, this would still be an impermissible attempt to repackage a medical malpractice claim as an ADA claim. In any case, "Dr. Frady's report contains no evidence he diagnosed the need for gender-affirming surgery." MTD.17.n.2 (quoting Dkt.131 at 8 n.2) (cleaned up).

**"Because of" Disability**[6]: Citing the now-vacated panel opinion in *Lange v. Houston County*, 101 F.4th 793 (11th Cir. 2024), Plaintiff argues the alleged denials are discriminatory because "[n]o person without gender dysphoria would seek, or could be denied, this care." Resp.29. As the full Eleventh Circuit later held, laws such as SB185 do "not facially discriminate based on transgender status" but rather on medical use. *Lange v. Houston Cnty.*, 152 F.4th 1245, 1253 (11th Cir. 2025) (en

---

[5] The only RA claim is Count 4, which Plaintiff concedes is deficient. Resp.37.

[6] Plaintiff claims it is "frivolous" to argue gender dysphoria is not covered by the ADA/RA. Resp.25. Multiple judges and Supreme Court Justices disagree. *See* MTD.34. Again, this court is not bound by its preliminary ruling. *Id.* at 26.n.5.

banc). And the FAC does not challenge SB185, let alone allege it does not reflect "'medical appropriateness'" and "'medical knowledge.'" Resp.30 (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014)).

**Accommodations**: Plaintiff "does not dispute that prison interests are relevant to the reasonableness inquiry" but argues they cannot be weighed at the pleading stage. Resp.32. Yet Plaintiff "has the burden of identifying an accommodation and demonstrating that it is reasonable." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). And Plaintiff has made only conclusory statements that the accommodations are reasonable—not alleged facts showing that they are reasonable for a prisoner with Plaintiff's security profile. *E.g.*, FAC ¶¶ 1, 88, 129-30, 155.

## III.    The continuing violation doctrine does not apply.

The Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred.'" *DiPietro v. Barron*, 2023 WL 1770364, at *3 (11th Cir.) (quoting *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006)). As Plaintiff's cited magistrate recommendation explains, *Baker v. Sanford*, 484 F. App'x 291 (11th Cir. 2012) failed to discuss this limitation. *DiPietro v. Lockhart*, 2021 WL 9794746 at *4 (M.D. Ga. Mar. 8). So did *Robinson v. United States*, 327 F. App'x 816 (11th Cir. 2007) and *Edwards v. Clark*, 2018 WL 2323465 (S.D. Ga. May 22). Other plaintiffs discovered their injuries later. *See Al-*

*britton v. Centurion of Fla.*, 2023 WL 34703, at \*1-2, 9 (M.D. Fla. Jan. 4); *Whitaker v. Hill*, 2024 WL 454952, at \*2 (N.D. Ga. Feb. 6). In *DiPietro*, the Eleventh Circuit found no error in concluding the statute of limitations began to run once plaintiff experienced severe pain and "repeatedly complained … he needed additional treatment." 2023 WL 1770364 at \*3. As Plaintiff has always known about Plaintiff's administrative segregation and "has requested … surgery repeatedly since … 2015" and hormones since 2019, FAC ¶¶27, 32-33, the continuing violation doctrine does not apply, and claims arising from conduct prior to December 6, 2021 are barred.

## IV.    The Court should not grant Plaintiff leave to amend yet again.

Because Plaintiff's request is "'imbedded within an opposition memorandum, it ha[s] 'no legal effect,'" and the court is "free to dismiss [the] complaint with prejudice." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1298 (11th Cir. 2025). Any request should also be denied on the merits. Rule 15(c) deals with relation-back, and Plaintiff did not "erroneously believ[e]" GDC was Jones and Pineiro, or "misunderstan[d] the[ir] roles." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010). "[S]uing one party instead of another while fully understanding the … differences between the two parties is the antithesis of making a mistake concerning a proper party's identify." *Id.* Nor can the Request for Relief and catch-all request save Count 4. The Request for Relief also fails to seek specific relief from GDC. And Count 4 did not request an "improper remedy" from GDC, *A.W. v. Coweta Cnty.*

14

*Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024); it requested *no* remedy from GDC.

Finally, Plaintiff argues leave to amend should be granted "when justice so requires." Resp.40. Justice does not require allowing yet another amendment to fix problems of Plaintiff's own making. *See* Dkts.1, 105, 200, 206, 209, 259, 287, 315. A court may deny leave to amend for "undue delay," "repeated failure to cure deficiencies," "undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, amendment is futile because Plaintiff would still fail to state a claim. It would also cause undue delay and prejudice Defendants. After two-and-a-half years, repeated amendments, and four motions to dismiss, Defendants "have a right to have their position put to the test of the law." Tr. of Mar. 17 Hearing (Dkt.320) at 34. The Court should deny any motion for leave to amend the Final Amended Complaint.[7]

## CONCLUSION

For these reasons, the Court should grant State Defendants' motion to dismiss.

---

[7] *See*, *e.g.*, *Diaz v. Miami-Dady Cnty.*, 849 F. App'x 787, 794 (11th Cir. 2021) ("no merit" in claim court abused discretion in denying amendment "for a *third* time"); *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("two opportunities to amend" enough for *pro se* plaintiff); *Frazier v. Mylan Inc.*, 911 F. Supp. 2d 1285, 1303 n.15 (N.D. Ga. 2012) (plaintiff had "a chance to amend" and would not get "perpetual bites at the apple"); *Gardner v. Bottoms*, 2023 WL 5596400, at *11 n.12 (N.D. Ga. July 21) (court would not "continually grant amendment in response to every motion to dismiss"), *aff'd*, 2025 WL 799282 (11th Cir. Mar. 13); *Crenshaw v. Antokol*, 206 F. App'x 560, 563 (7th Cir. 2006) (third complaint unduly prejudicial after two years and three motions to dismiss).

Dated: July 29, 2026

Christopher M. Carr
  *Attorney General*
  Georgia Bar No. 112505
John Henry Thompson
  *Solicitor General*
  Georgia Bar No. 603321
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
jhthompson@law.ga.gov

*Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Aaron Pineiro, Sharon Lewis, Marlah Mardis, and Anthony Mulloy*

Respectfully submitted,

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris*
Rachael C. T. Wyrick*
Julius Kairey*
Zachary P. Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

**pro hac vice*

*Special Assistant Attorneys General and Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Aaron Pineiro, Sharon Lewis, Marlah Mardis, and Anthony Mulloy*

16

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C and this Court's subsequent orders. The brief is prepared in 14-point Times New Roman font.

*/s/ Jeffrey M. Harris*

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

s/ *Jeffrey M. Harris*

18