IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE,

        *Plaintiff*,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS, *et al.*,

        *Defendants*.

Case No. 1:23-cv-5578-MLB

**STATE DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR
JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS
INCORPORATED BY REFERENCE**

The parties agree that the Court can consider five exhibits—Exhibit D, the World Professional Association for Transgender Health's "Standards of Care," and Exhibits M-P, evaluations of Plaintiff by various medical and mental-health officials. Opp. (Dkt.327) at 1-2 & nn.1-2. The only dispute is whether the Court may also consider Exhibits A-C, E-L, and Q.[1]

**Exhibits A-C:** State Defendants ask that the Court take judicial notice of three Georgia Department of Corrections Standard Operating Procedures: SOP 507.07.01

---

[1] Plaintiff's brief initially challenges only "Defendants' request as to Exhibits E-L and Q." Opp.2. However, Plaintiff later argues that "State Defendants' SOPs Cannot Be Incorporated By Reference." *Id.* at 4. State Defendants thus address Plaintiff's incorporation-by-reference argument with respect to Exhibits A-C. *See infra* at 3-4.

1

(Ex.A), SOP 209.03 (Ex.B), and SOP 209.06 (Ex.C). *See* Mot. for Judicial Notice (Dkt.322) at 1 & n.1, 2-3. Alternatively, State Defendants ask the Court to consider Exhibit C under the incorporation-by-reference doctrine because SOP 209.06 is "expressly mentioned and cited in the Final Amended Complaint." *Id.* at 2-3.

It should be noted at the outset that the parties have cited and relied on GDC's SOPs—including SOP 209.06 specifically—for years. *See* FAC.9-10, 24-26; Dkts.149, 160, 219, 240, 281. And at no point did Plaintiff contest their authenticity or otherwise object to their being considered. Indeed, Plaintiff *still* does not dispute the SOPs' authenticity. Opp.5. Moreover, Plaintiff nowhere responds to State Defendants' judicial notice argument. *See id.* at 4 ("State Defendants' SOPs Cannot Be Incorporated By Reference"). Because Plaintiff "fail[ed] to respond" to State Defendants' argument for judicial notice of Exhibits A-C, Plaintiff has "abandoned" any response to this argument. *Hudson v. Norfolk S. Ry.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining that a party "fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it").

The Court should take judicial notice of Exhibits A-C in any event. GDC's SOPs are "documents made publicly available by a government entity." *Henderson v. Sun Pharms. Indus.*, 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011). Thus, their content "can be accurately and readily determined from sources whose accuracy

cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, when there is no dispute that the policies "provided are both accurate and current," other courts in this State have taken judicial notice of many such policies. *See Smith v. Dozier*, 2018 WL 11711835, at *3 (M.D. Ga. May 21), *report and recommendation adopted*, 2018 WL 11711836 (M.D. Ga. Aug. 3) (taking judicial notice of prison grooming policies from 39 states, the District of Columbia, and the Federal Bureau of Prisons).

In the alternative, this Court can consider Exhibit C because SOP 209.06 is "expressly mentioned and cited in the Final Amended Complaint." Mot.2-3 (citing FAC ¶¶110 & n.18, 112). Plaintiff previously conceded that any SOPs Plaintiff "alleged … awareness of," "cited," and "argu[ed] that GDC and its agents have violated"—including SOP 209.06—were incorporated by reference. Dkt.149 at 1 n.1, Dkt.160 at 1 n.1. Plaintiff now argues that the incorporation-by-reference doctrine should not apply, citing *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). Opp.2-3, 5. But the *Baker* test is no longer good law. Now, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298-1300 (11th Cir. 2024).

This Court can consider Exhibit C under either test. The FAC specifically references the SOP, alleging that GDC has a "detailed protocol" governing "whether

3

an individual should remain in administrative segregation." FAC ¶112. Plaintiff's only support for this factual allegation is SOP 209.06. *Id.* Plaintiff also cites SOP 209.06 as support for the allegation that Defendant Pineiro violated "GDC's own policies." *Id.* ¶110 & n.18 (citing SOP 209.06(IV)(H)(19)). Thus, Exhibit C is both "referred to" in the FAC and "central" to at least some of Plaintiff's claims. *Johnson*, 107 F.4th at 1300. Given that Plaintiff does not dispute the authenticity of GDC's standard operating procedures, Opp.5, this Court can consider Exhibit C. *Johnson*, 107 F.4th at 1300.

**Exhibits E-L:** Plaintiff does not dispute the accuracy and authenticity of Exhibits E-L or argue that Plaintiff's criminal record is subject to reasonable dispute. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (setting out the standard for judicial notice); Fed. R. Evid. 201; Mot.2. Rather, Plaintiff argues Exhibits E-L are not judicially noticeable because they are "not 'relevant to the determination of the claims'" in this case and are being offered for "improper purposes." Opp.6, 8.

As Plaintiff acknowledges, relevancy is "a low threshold.'" Opp.6 (cleaned up). Evidence is relevant if it has "any tendency" to make a fact of consequence "more or less probable than it would be without the evidence" Fed. R. Evid. 401. Plaintiff's criminal and disciplinary records easily clear that low hurdle because Plaintiff's criminal record before and during incarceration bears on whether Plaintiff

has plausibly alleged Defendants lacked rational security and prison-administration concerns. *See* Opp.8 ("Defendants seem to argue … [Plaintiff's] entire criminal history is relevant to establish that … prolonged solitary confinement and other security restrictions are justified."). Security and prison-administration concerns are central to both Plaintiff's Eighth Amendment claims and Plaintiff's claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA).

As the Court explained in its preliminary-injunction order, "officials do not act with deliberate indifference when they act based on rational security concerns." PI Order (Dkt.131) at 23 (cleaned up); *accord Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1276 (11th Cir. 2020) ("[E]ven an outright 'denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prisoner safety and institutional security.'"). Defendants argue that Plaintiff has not plausibly alleged claims of deliberate indifference regarding inadequate medical care and administrative segregation, including because Plaintiff has failed to plausibly allege Defendants acted without a rational security concern. *See, e.g.*, Mot. to Dismiss (Dkt.321-1) at 11, 20, 37 (arguing that Plaintiff does not state a deliberate-indifference or ADA claim for failure to provide surgery because Defendants have a rational security justification); *id.* at 5, 31-32, 38 (same for administrative segregation claim). This Court denied Plaintiff's requests for a preliminary injunction transferring Plaintiff to a women's prison and providing

5

access to some social-transitioning items because of Plaintiff's security profile, which is based on Plaintiff's criminal record. Dkt.131 at 23-24, 34-37. Plaintiff's criminal record is not any less relevant at the motion-to-dismiss stage for Plaintiff's remaining claims.

Security and prison-administration concerns are also relevant to whether Plaintiff has stated an ADA claim. As State Defendants argue in their motion to dismiss, the ADA abrogates sovereign immunity only for conduct that "*actually* violates the Fourteenth Amendment." MTD.7 (cleaned up); *accord* Dkt.131 at 39 n.14. Because security and prison administration are relevant to the Eighth Amendment claims, they are also relevant to the ADA claims. These concerns are also independently relevant to the ADA because they show it is implausible that Defendants discriminated "because of" Plaintiff's disability and that the proposed accommodations were reasonable. *See* MTD.36-39. Indeed, Plaintiff concedes in Plaintiff's motion-to-dismiss response that "prison interests are relevant to the reasonableness" of Plaintiff's requested accommodations. Dkt.328 at 32.

The Prison Litigation Reform Act only confirms the relevance of Plaintiff's criminal record. Plaintiff is seeking prospective relief, and the PLRA requires courts to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. §3626(a)(1)(A). All of Plaintiff's claims are subject to the PLRA. *See Keohane*, 952 F.3d at 1265 n.3

(deliberate indifference); *Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023) (ADA and RA).

Plaintiff next argues that the criminal records "serve no purpose at this stage, where the Court's only concern is the sufficiency of the pleadings." Opp.8. But documents that are judicially noticed or incorporated by reference *are* part of the pleadings. In other words, Plaintiff's argument goes to whether the Court should grant State Defendants' motions to dismiss—not whether taking judicial notice of these documents is appropriate. Whether a public record is judicially noticeable cannot hinge on whether it ultimately contributes to a successful motion to dismiss.

Similarly, the fact that Plaintiff does not expressly mention Plaintiff's string of violent criminal convictions or disciplinary record, *see* Opp.6, does not make them any less relevant or judicially noticeable. Courts need not blind themselves to relevant information that is subject to judicial notice. *See Hamilton v. Pallozzi*, 848 F.3d 614, 618 n.1 (4th Cir. 2017) (taking judicial notice of a litigant's guilty plea and probation period even though the complaint made "no mention" of anything but being "convicted"), *abrogated in part on other grounds by NYSPRA v. Bruen*, 597 U.S. 1 (2022).

Next, Plaintiff contends judicial notice of criminal records is limited to "post-conviction federal habeas action[s]." *See* Opp.7. But Plaintiff provides no authority for this proposed limitation, and courts in this circuit and around the country

regularly take judicial notice of litigants' relevant criminal history outside the habeas context. *See, e.g.*, *Cromartie v. Shealy*, 941 F.3d 1244, 1247 n.1 (11th Cir. 2019) (taking judicial notice of criminal records while deciding an emergency motion for a stay of execution in a §1983 case); *Balarezo Fam. Chiropractic, LLC v. State Farm Mut. Auto. Ins.*, 2024 WL 1343178, at *2 n.3 (S.D. Fla. Feb. 12), *report and recommendation adopted*, 2024 WL 4201986 (S.D. Fla. Aug. 5) (taking judicial notice of a litigant's "federal felony criminal record" in a declaratory judgment suit); *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1180 & n.2 (9th Cir. 2020) (taking judicial notice of a conviction in an immigration case).[2] In short, this Court may properly consider Plaintiff's criminal history in deciding the motion to dismiss.

Plaintiff claims that State Defendants' truthful observation that Plaintiff is a "sex offender" means that Exhibits E-L are being offered for "the truth of the matters asserted in the other litigation." Opp.8-9 (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)). But the exhibits show that Plaintiff was convicted of, among other things, aggravated sodomy. *See* Exs.E, J, L. The parties do not need to relitigate the facts underlying Plaintiff's many criminal proceedings to confirm that that makes Plaintiff a sex offender under Georgia law. *See* Ga. Code Ann. §42-1-

---

[2] *See also, e.g.*, *Teamer v. Guy*, 2025 WL 3490625, at *3 & n.3 (N.D. Fla. Nov. 3), *report and recommendation adopted*, 2025 WL 3488772 (N.D. Fla. Dec. 4); *Harvey v. Dixon*, 2025 WL 2992925, at *8 & n.13 (N.D. Fla. July 8), *report and recommendation adopted*, 2025 WL 2681940 (N.D. Fla. Sept. 18).

12(a)(10)(A)(iii) (defining aggravated sodomy as a "Dangerous sexual offense"). Moreover, even if the allegations underlying the convictions were somehow untrue, prison officials could of course still reasonably rely on those convictions in making security determinations.

Lastly, Plaintiff accuses State Defendants of seeking to use Plaintiff's criminal history "to establish [Plaintiff's] purported bad character." Opp.9-11. Federal Rule of Evidence 404(b) does generally prohibit "[e]vidence of any other crime, wrong, or act"—but only if it is "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In other words, it bans propensity evidence. *See also id.* at 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

But the Rule expressly permits using evidence of other crimes and wrongs for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2). That is the case here. To violate the Eighth Amendment, a prison official must act with "'subjective recklessness as used in the criminal law'" and fail to reasonably respond to a substantial risk of serious harm. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc). So the records in question are not being offered to show that on a particular occasion, Plaintiff acted in accordance with those convictions. Rather,

they are offered to show that the much more likely explanation for State Defendants'

actions (such as placing Plaintiff in administrative segregation) is that they

reasonably believe Plaintiff is dangerous. Thus, taking judicial notice of Plaintiff's

criminal history does not violate the Federal Rules of Evidence.

**Exhibit Q:** Taking judicial notice of the Statement of Interest filed in *Fuller*

*v. GDC*, No. 1:25-cv-246 (N.D. Ga. Apr. 25, 2025) is warranted under the rule that

"a court may take judicial notice of its own records." *United States v. Munoz*, 112

F.4th 923, 931 n.3 (11th Cir. 2024) (cleaned up); *accord* Graham, Jr. and Blinka,

21B Fed. Prac. & Proc. Evid. §5106.4 (2d ed. Apr. 2026 update) ("[S]ince the

enactment of Rule 201 federal courts notice the records of any court, state or

federal."). It is common for federal courts to take judicial notice of statements of

interest filed by the United States, even those filed in other cases. *E.g.*, *In re Papa*

*John's Emp. & Franchisee Emp. Antitrust Litig.*, 2019 WL 5386484, at *5 (W.D.

Ky. Oct. 21) (taking judicial notice of statements of interest filed by the United States

in previous antitrust cases).[3] Because "there is no dispute that the [Justice

---

[3] *See also Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 546 (N.D. Cal. 2021); *Thomas v. Century Villa, Inc.*, 2021 WL 2400970, at *1 n.1 (C.D. Cal. June 10); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, at *2 (C.D. Cal. Jan. 24); *Herships v. Cantil-Sakauye*, 2017 WL 2311394, at *2 (N.D. Cal. May 26), *aff'd*, 710 F. App'x 331 (9th Cir. 2018); *United States v. State Farm Fire & Cas. Co.*, 2016 WL 3034326, at *4 (S.D. Miss. May 27); *Cal. Pharmacists Assoc. v. Maxwell-Jolly*, 2010 WL 11523634, at *1 n.1 (C.D. Cal. July 6).

Department] filed [the Statement of Interest in *Fuller*] … on behalf of the United States," this Court may take judicial notice of the Statement and its contents without "abdicat[ing] its duty to apply the law to the facts of this case…." *Id.*

Indeed, taking judicial notice of the Statement of Interest is appropriate under Plaintiff's own cited standards: it "establishes the fact of … litigation" and "what happened in the course of a proceeding, such as what claims were argued and adjudicated, and so on." Opp.11-12 (cleaned up). The claim that State Defendants offer the Statement "for the improper purpose of establishing the truth of the assertions contained [therein]" or to "cajole the Court," Opp.12, is absurd. Whether "'the ADA and RA both exclude gender dysphoria'" is a legal question, not an evidentiary dispute on which the parties must present adjudicative facts. *Contra id.* at 12-13. Of course, this Court must determine the "single, best meaning" of any federal statutes at issue in this case. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). But that does not make it inappropriate for State Defendants to apprise the Court of the United States' considered view of a contested legal question, especially when that position has evolved. *Contra* Opp.13. There is nothing improper about acknowledging the Department of Justice's Statement of Interest in *Fuller*.

11

## CONCLUSION

For these reasons, the Court should grant Defendants' request and consider Exhibits A-Q in deciding the motion to dismiss.

Dated: July 29, 2026

Respectfully submitted,

Christopher M. Carr
  *Attorney General*
  Georgia Bar No. 112505
John Henry Thompson
  *Solicitor General*
  Georgia Bar No. 603321
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
jhthompson@law.ga.gov

*Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Aaron Pineiro, Sharon Lewis, Marlah Mardis, and Anthony Mulloy*

/s/ *Jeffrey M. Harris*
Jeffrey M. Harris*
Rachael C.T. Wyrick*
Julius Kairey*
Zachary P. Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

*pro hac vice

*Special Assistant Attorneys General and Attorneys for Defendants Georgia Department of Corrections, DeShawn Jones, Aaron Pineiro, Sharon Lewis, Marlah Mardis, and Anthony Mulloy*

12

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing reply conforms to the requirements of L.R. 5.1C and this Court's subsequent orders. The reply is prepared in 14-point Times New Roman font.

*/s/ Jeffrey M. Harris*

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

s/ *Jeffrey M. Harris*

14